**Simmons Hanly Conroy LLC**
Crystal Foley (SBN 224627)
cfoley@simmonsfirm.com
100 N. Sepulveda Blvd., Suite 1350
Los Angeles, CA 90245
Phone: (310) 322-3555

Mitchel M. Breit (*pro hac vice*
forthcoming)
mbreit@simmonsfirm.com
112 Madison Avenue
New York, New York 10016-7416
Phone: (212) 784-6400

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

THOMAS BAILEY on behalf of himself and all others similarly situated,

                 Plaintiff,

     v.

RITE AID CORPORATION,

           Defendant.

Case No.: __3:18-cv-6926_____

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

Plaintiff Thomas Bailey individually and on behalf of all others similarly situated, brings this action against Defendant Rite Aid ("Rite Aid"). The following allegations are based upon personal knowledge as to Plaintiff's own conduct, the investigation of counsel, and upon information and belief as to the acts of others.

## **INTRODUCTION**

1.      Defendant Rite Aid is the third largest drugstore chain in the United States.

2.      It sells a variety of health and wellness products, including over-the counter-pharmaceuticals.

3.      In addition to selling brand name over-the-counter drugs, it also produces, manufactures, markets, distributes, and sells a generic version of certain over-the-counter drugs under the Rite Aid brand to families, children, and other consumers, including analgesic or pain-relieving medicines using acetaminophen.

4.      In 2005, Johnson & Johnson Consumer Inc. introduced the name brand Tylenol® Extra Strength Rapid Release Gels to the American public as "specially designed" gelcaps "with holes to allow [for] the release of powerful medicine *even faster than before*."[1] Three years later, Tylenol® PM Rapid Release Gels were launched with the same promises.[2]

5.      Rite Aid then introduced its own version of the Tylenol® Extra Strength Rapid Release Gels called Rite Aid Acetaminophen Rapid Release Gelcaps.

[3]

---

[1] https://www.tylenol.com/news/about-us (last accessed 11.15.2018) (emphasis added).
[2] *Id.*
[3] https://www.riteaid.com/shop/rite-aid-extra-strength-acetaminophen-rapid-release-gelcaps-100-ct-0304125  (last accessed 11.15.2018).

CLASS ACTION COMPLAINT

6.      Rite Aid also introduced its own version of the Tylenol® Extra Strength PM Rapid Release Gels called Rite Aid Acetaminophen PM Rapid Release Gelcaps.



7.      Since the release of its generic versions of the rapid release gelcaps, Defendant Rite Aid has misled and continues to mislead consumers about the nature, quality, and effectiveness of its so-called rapid release Rite Aid products through its advertising and labeling.

8.      In particular, the Rite Aid brand rapid release gelcaps ("Class Rapid Release Gelcaps") are marketed as comparable to Tylenol® Extra Strength Rapid Release Gels even though, on information and belief, they do not contain the unique laser drilled holes of Tylenol® Extra Strength Rapid Release Gels. The Rite Aid version of the rapid release gels are nonetheless labeled and advertised as a "rapid release" product.

9.      Despite the technology used for the Class Rapid Relief Gelcaps and despite what Rite Aid's labeling and advertising would have consumers believe, the term "rapid release" does not actually mean that the drug works faster for consumers than non-rapid release products. This is also true of the brand name Tylenol® rapid release products.

---

[4]https://www.google.com/search?q=rite+aid+acetaminophen+rapid+release+pm&source=lnms&tbm=isch&sa=X&ved=0ahUKEwiR_c2q1tTeAhVmxYMKHRyeCkIQ_AUIEygB&biw=1368&bih=795#imgrc=gwVpAnvheTnp3M (last accessed 11.15.2018).

10.     Rite Aid has long known or should have known that traditional, non-rapid release acetaminophen products can be equally effective in the same, if not faster, time period than its Rite Aid rapid release products.

11.     In fact, a new study demonstrates that Rite Aid Acetaminophen Rapid Release Gelcaps dissolve *slower* than the Rite Aid non-rapid release products.[5]

12.     Yet, Rite Aid charges a premium for its rapid release gelcaps.

13.     Rite Aid sells its rapid release gelcaps with false, misleading, unfair, deceptive labeling and marketing in an effort to dupe consumers into purchasing these gelcaps for prices that exceed their true value. Rite Aid has pursued and continues to pursue this course of conduct in order to profit off of unassuming, unwitting consumers looking for the fastest pain-relief possible from an over-the-counter acetaminophen product.

14.     Plaintiff and Class Members are consumers who were misled or deceived by Rite Aid's false, misleading, unfair, and deceiving representations and as a result purchased the Rite Aid brand rapid release gelcaps.

15.     Plaintiff and Class Members would not have purchased the Class Rapid Release Gelcaps had Rite Aid disclosed accurate information about the products and not misled them into believing that the Class Rapid Release Gelcaps would provide faster relief than other, cheaper acetaminophen products, such as the traditional Rite Aid tablets.

16.     Plaintiff and Class Members, thus, bring this class action against Rite Aid on behalf of themselves and on behalf of all individuals who purchased the Class Rapid Release Gelcaps (the "Class") seeking damages and appropriate equitable relief given that Rite Aid's conduct violated well-established contract, tort, and consumer protection laws of California and the United States.

---

[5] Kucera, Jessop, Alvarez, Gortler, Light, *Rapid and Fast-Release Acetaminophen Gelcaps Dissolve Slower Than Acetaminophen Tablets*, Adv Inv Pha The Medic, 1:63-71 (Nov. 12, 2018) accessible at http://www.kenkyugroup.org/article/8/173/Rapid-and-Fast-Release-Acetaminophen-Gelcaps-Dissolve-Slower-Than-Acetaminophen-Tablets (last accessed 11.15.2018).

CLASS ACTION COMPLAINT

## PARTIES

17.     Plaintiff Thomas Bailey is a citizen and resident of Freemont, Alameda County, California.

18.     Defendant Rite Aid Corporation is a Delaware corporation that maintains its headquarters at 30 Hunter Lane, Cumberland County, Camp Hill, Pennsylvania 17011.

## JURISDICTION AND VENUE

19.     This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d), because at least one member of the proposed class is a citizen of a state different from Rite Aid; the amount in controversy exceeds $5,000,000, exclusive of interests and costs; the proposed class consists of more than 100 members; and none of the exceptions under the subsection apply to this action.

20.     This Court has jurisdiction over Rite Aid because it has sufficient minimum contacts in California and otherwise intentionally avails itself of the markets within California through the operation of several Rite Aid stores within the state as well as the promotion, sale, marketing, and distribution of its products, such that exercise of jurisdiction by this Court is proper and necessary.

21.     Venue is proper in this District under 28 U.S.C. § 1391 because Rite Aid conducts substantial business in this District and a substantial part of Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

## ACETAMINOPHEN GENERALLY

22.     Acetaminophen, also called paracetamol or N-acetyl-para-aminophenol (APAP), is an over-the-counter pain reliever and fever reducer that comes in a variety of forms: liquid suspension, tablets, capsules, and gelcaps.[6]

---

[6] *Id.*

23.     In any form, acetaminophen is used to treat a variety of common conditions including headaches, muscle aches, arthritis, backaches, toothaches, colds, fevers, acute pain,[7] chronic pain,[8] etc.

24.     Typically, it is the first treatment recommended for *any* mild to moderate pain.[9] Therefore, acetaminophen is one of the most commonly used drugs in the world when it comes to pain mitigation representing an estimated global market value of over $350 million annually.[10] It is even included on the World Health Organization List of Essential Medicines.[11]

25.     Given the wide-spread use of acetaminophen, both the *quality* and *value* of acetaminophen products present important public health, consumer safety, and economic concerns.[12]

**RITE AID SEEKS TO CAPITALIZE OFF OF JOHNSON & JOHNSON'S SUCCESS OF TYLENOL® NAME BRAND ACETAMINOPHIN PRODUCTS BY CREATING GENERICS**

26.     Tylenol® is the well-recognized brand name of acetaminophen[13] produced, manufactured, and distributed by Johnson & Johnson.

27.     Johnson & Johnson currently lists 27 Tylenol® products on its Tylenol® website, including: 5 oral suspension products, 6 liquid products, 1 chewable product, 1 tablet product, 1 coated tablet product, 11 caplet products, and 2 gelcap products.[14] All but one of the 27 products

---

[7] https://www.drugs.com/acetaminophen.html (last accessed 11.15.2018).

[8] https://www.mayoclinic.org/chronic-pain-medication-decisions/art-20360371 (last accessed 11.15.2018).

[9] *Id.*

[10] Kucera, Jessop, Alvarez, Gortler, Light, *supra* n.5.

[11] WHO. World Health Organization Model List of Essential Medicines. August 2017 ed. http://www.who.int/medicines/publications/essentialmedicines/en/2017 (last accessed 11.15.2018).

[12] Kucera, Jessop, Alvarez, Gortler, Light, *supra* n.5.

[13] https://www.mayoclinic.org/chronic-pain-medication-decisions/art-20360371 (last accessed 11.15.2018).

[14] https://www.tylenol.com/products (last accessed 11.15.2018).

CLASS ACTION COMPLAINT

contain acetaminophen.[15] Johnson & Johnson has profited and continues to profit greatly from this Tylenol® product line.

28.     Generic brands, like Rite Aid, thus, seek to mimic the product offerings of Johnson & Johnson selling the generic version of the Tylenol® products for a price less than the name brand equivalent.

29.     Rite Aid has done this with several Tylenol® products, including Tylenol® Extra Strength Rapid Release gels and the generic versions are profitable for Rite Aid.

30.     But the profitability on the Class Rapid Release Gelcaps comes at much too high a price, both figuratively and literally: consumer deception about the true nature, quality, and value of the product.

### THE DECEPTIVE MARKETING OF RAPID RELEASE TYLENOL®

31.     Johnson & Johnson introduced Tylenol® Extra Strength Rapid Release Gels in 2005 claiming that these rapid release gelcaps are "specially designed…to allow the release of powerful medicine *even faster than before*."[16] In 2008, Tylenol® PM Rapid Release Gels launched utilizing the same "rapid release" technology and the same or similar advertising.

32.     This claim – that these rapid release gelcaps worked even faster than before – became associated with the regular and PM versions of Tylenol® Extra Strength Rapid Release Gels.

33.     In 2009, the rapid release gels were recalled and were not re-released until 2017.[17]

34.     The national return to the market of the rapid release gels represented Tylenol's "biggest product launch in years" and, thus, the marketing campaign "involved triple the

---

[15] *Id*. Tylenol® PM Simply Sleep Nighttime Sleep Aid does not contain acetaminophen.
[16] https://www.tylenol.com/news/about-us (last accessed 11.15.2018) (emphasis added).
[17] https://shoppermarketingmag.com/headache-sufferers-directed-walgreens (last accessed 11.15.2018).

investment" that Johnson & Johnson would normally spend all to encourage consumers to find "fast working pain relief."[18]

35.    "In the first month, [the campaign] reached over 25 million shoppers on their mobile device across five key markets, resulting in both category and Tylenol share growth at Walgreens."[19] Consumers were inundated with the campaign messaging in stores and online.[20]

36.    With its marketing, product labeling, and affirmative representations, Johnson & Johnson sought and continues to seek to further the falsehood: that rapid release Tylenol® actually provides faster relief than other cheaper acetaminophen products.

37.    It did this not only by explicitly making the claim, but also by using buzz words that emphasized the speed, fast-acting nature, and unique laser-drilled holes of the rapid release gelcaps.

38.    For example, Johnson & Johnson advertised the rapid release gelcaps claiming it:

WORKS AT THE
**SPEED OF LIFE**

**Only TYLENOL® Rapid Release Gels**

HAVE LASER-DRILLED HOLES. THEY RELEASE MEDICINE FAST FOR FAST PAIN RELIEF[21]

39.    Other marketing statements include, but are not limited to, the following:

(a) "Tylenol® Rapid Release Gels start to dissolve in seconds and effectively relieve pain at rapid speed"[22]

(b)  "Rapid release. Rapid relief."[23]

---

[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] https://www.ebay.com/itm/Tylenol-Extra-Strength-290-Rapid-Release-Liquid-Gels-FAST-SHIPPING-/232796445534 (last accessed 11.15.2018).
[22] https://www.youtube.com/watch?v=_bZcPNyYu1o (last accessed 11.15.2018).
[23] https://cargocollective.com/jeremybernstein/The-Feel-Better-Fast-Show        (last        accessed 11.15.2018).

CLASS ACTION COMPLAINT

(c) "Only Tylenol® Rapid Release Gels have laser drilled holes. They release medicine fast for fast pain relief. Fast enough to keep up with you, so you can keep up with life."[24]

(d) "Fast Working Pain Relief"[25]

(e) "New Tylenol® Rapid Release Gels. Gelcaps with specially designed holes to release powerful medicine even faster than before."[26]

(f) "When you have pain from a pounding headache and you need relief, trust Tylenol® Rapid Release… Tylenol® Rapid Release Gelcaps dissolve quickly and relieve your headache pain fast."[27]

40.     Johnson & Johnson's marketing campaign has been successful in getting the public to believe that the rapid release gelcaps are faster acting than other Tylenol® products, when in fact they are *slower*.

41.     Consumer reviews and comments indicate that consumers have been deceived and confused by Johnson & Johnson's representations; and some even notice after purchase that Tylenol® Rapid Release Gelcaps do not work faster than regular, non-rapid release, acetaminophen Tylenol® products that are cheaper.[28]

42.     Despite the fact that the "rapid release" gels are not rapid release and do not work faster than other, traditional acetaminophen products, Johnson & Johnson sells its rapid release

---

[24] https://www.youtube.com/watch?v=DzczfGN0NB4 (last accessed 11.15.2018).
[25] https://www.effie.org/case_database/case/SME_2018_E-375-981 (last accessed 11.15.2018).
[26] https://www.youtube.com/watch?v=cKp4xPNTrPY (last accessed 11.15.2018).
[27] https://www.youtube.com/watch?v=LN0GeRuMouk (last accessed 11.15.2018).
[28] *See e.g.,* http://www.paininthehead.org/2006/04/13/rapid-release-does-not-equal-rapid-relief/comment-page-1/ (last accessed 11.15.2018); https://www.tylenol.com/products/tylenol-rapid-release-gels#bv-product-reviews (last accessed
11.15.2018);https://www.tylenol.com/products/tylenol-rapid-release-gels (last accessed
11.15.2018); https://answers.yahoo.com/question/index?qid=1006050815308&page=1 (last accessed 11.15.2018); https://answers.yahoo.com/question/index?qid=1006050815308&page=2 (last accessed 11.15.2018); https://www.reviewstream.com/reviews/?p=46385 (last accessed 11.15.2018); https://prawntail.com/do-tylenol-rapid-release-gelcaps-really-work-faster-than-regular-tylenol/ (last accessed 11.15.2018).

gelcap products at a higher price than its other equally effective and equally fast-acting acetaminophen products that are not classified as "rapid release."

### RITE AID'S FALSE, MISLEADING, UNFAIR AND DECEPTIVE MARKETING AND LABELING OF THE CLASS RAPID RELEASE GELCAPS

43.   Other companies followed Johnson & Johnson's labeling, marketing, advertising, and pricing lead and now, in general, acetaminophen products labeled, advertised, or marketed as "rapid release" or "fast-release" are sold on average at a price 23% higher than those acetaminophen products not making these rapid or fast-release representations.[29]

44.   Rite Aid is one of the companies that has followed Johnson & Johnson's lead.

45.   Rite Aid sells its Class Rapid Release Gelcaps at a higher price than its other equally effective and equally fast-acting acetaminophen products that are not classified as "rapid release."

46.   Rite Aid currently lists 5 Class Rapid Release Gelcap products on its website, including: Rite Aid Extra Strength Acetaminophem Rapid Release Gelcaps in quantities of 50, 100, 150, and 225 gelcaps; and Rite Aid Sinus & Congestion Pain Relief, Day time, Rapid Release Gelcaps in a quantity of 24 gelcaps.[30]

47.   Not all caplets and tablets are offered in the same quantities as the Class Rapid Release Gelcaps. However, a comparison of the prices of the Class Rapid Release Gelcaps to the equivalent caplets and tablets in the same counts demonstrates that Rite Aid does charge more for the Class Rapid Release Gelcaps than their equivalent non-rapid release acetaminophen products.

48.   Currently at Rite Aid, a regularly priced 100 count bottle of Rite Aid Extra Strength Acetaminophen Rapid Release Gelcaps costs $8.99, while a regularly priced 100 count bottle of Rite Aid Extra Strength Acetaminophen caplets costs $6.99 and a regularly priced 100

---

[29] Kucera, Jessop, Alvarez, Gortler, Light, *supra* n.5.
[30] https://www.riteaid.com/shop/catalogsearch/result/?q=rite+aid+rapid+release (last accessed 11.15.2018).

CLASS ACTION COMPLAINT

count bottle of Rite Aid Extra Strength Acetaminophen tablets costs $6.99.[31] There is a $2 price difference between the Class Rapid Release Gelcaps and the non-rapid release Rite Aid products in this count.

49.     The 50 count bottles have a $1 price difference. A regularly priced 50 count bottle of Rite Aid Extra Strength Acetaminophen Rapid Release Gelcaps costs $6.79, while regularly priced 50 count bottles of both Rite Aid Extra Strength Acetaminophen caplets and Rite Aid Extra Strength Acetaminophen tablets cost only $5.79.[32] There is a $1 price difference between the Class Rapid Release Gelcaps and the non-rapid release Rite Aid products in this count.

50.     Consumers have been willing to and continue to pay this premium because, as a result of false, misleading, unfair, and/or deceptive labeling and other advertising, they believe the Class Rapid Release Gelcaps work faster than other, cheaper acetaminophen products when in fact, they do not.

51.     As a generic brand, Rite Aid prices are still lower than their Tylenol® counterparts because Rite Aid did not have the expense of researching, developing, marketing, and promoting the drugs when they were new.

52.     Instead, Rite Aid introduces its counter parts to Tylenol® products after the public is familiar with the Tylenol® product.

53.     In the case of the Class Rapid Release Gelcaps, Rite Aid relied on Johnson & Johnson's massive marketing campaign and the success of its rapid release products before entering the market.

54.     Then Rite Aid produced the Class Rapid Release Gelcaps to look the same as or similar to the Tylenol® rapid release products.

---

[31] https://www.riteaid.com/shop/catalogsearch/result/?q=rite%20aid%20acetaminophen (last accessed 11.15.2018).
[32] https://www.riteaid.com/shop/catalogsearch/result/?q=rite%20aid%20acetaminophen (last accessed 11.15.2018).

CLASS ACTION COMPLAINT

55.    For the regular, non-PM, product, Rite Aid's gelcaps are approximately the same size and shape as the Tylenol® product and they utilize the same distinct color pattern – red on one end, blue on the other end, and a bit of white in the middle.





33                                    34

33 https://www.riteaid.com/shop/rite-aid-acetaminophen-rapid-release-gelcaps-150ct-0351132 (last accessed 11.15.2018).
34 https://adexchanger.com/advertiser/tylenol-feeling-good-mobile-strategy/ (last accessed 11.15.2018).

56.     The same is true for the PM product, Rite Aid's gelcaps are approximately the same size and shape as the Tylenol® product and they utilize the same distinct color pattern – darker blue on one end, a lighter blue on the other end, and a bit of white in the middle.



57.     Consumers were already accustomed to the look of the Tylenol® rapid release products and familiar with the claims that they were fast-acting.

58.     Rite Aid did nothing to correct the thinking that "rapid release" gelcaps worked faster than other, cheaper acetaminophen products.

59.     Instead, Rite Aid capitalized on that thinking and sought to further consumer deceit with its own false, misleading, unfair, and/or deceptive labeling and marketing.

60.     For example, on the packaging for the Class Rapid Release Gelcaps, Rite Aid associates its products with the Tylenol® products.[37]

61.     Rite Aid also advertises its Class Rapid Release Gelcaps as "rapid release" products.[38]

62.     Consumers try the Rite Aid Class Rapid Release Gelcaps because they are labeled "rapid release" and because they are cheaper than the Tylenol® rapid release products.

---

[35]https://www.google.com/search?q=rite+aid+acetaminophen+rapid+release+pm&source=lnms&tbm=isch&sa=X&ved=0ahUKEwiR_c2q1tTeAhVmxYMKHRyeCkIQ_AUIEygB&biw=1368&bih=795#imgrc=gwVpAnvheTnp3M: (last accessed 11.15.2018).
[36] https://www.amazon.com/Tylenol-Reliever-Nighttime-Strength-80-count/dp/B000XYIJP6 (last accessed 11.15.2018).
[37] https://www.riteaid.com/shop/catalogsearch/result/?q=rite+aid+rapid+release (last accessed 11.15.2018).
[38] Id.

CLASS ACTION COMPLAINT

**THE SCIENCE BEHIND RAPID RELEASE PRODUCTS DEMONSTRATES THE LABELING AND MARKETING OF THE CLASS RAPID RELEASE GELCAPS ARE FALSE, MISLEADING, UNFAIR, AND/OR DECEPTIVE**

63. Despite what Rite Aid represents to the public about the Class Rapid Release Gelcaps, they do not work faster than other, cheaper Rite Aid acetaminophen products.

64. A 2018 study of the "rapid release" or "fast release" claims of acetaminophen products, including Rite Aid Acetaminophen Rapid Release Gelcaps, revealed that these products not only fail to work faster, they actually work *slower* than their traditional acetaminophen counterparts, such as tablets.[39]

65. Thus, the science demonstrates that Rite Aid's representations and advertising are false, misleading, deceptive, and unfair on their face.

66. The level of deception and unfairness is elevated given that Rite Aid has long known or should have known that there is scant or conflicting evidence about the correlation of the speed and efficacy of its acetaminophen products to its rapid release gelcap design.

67. Rite Aid knew or should have known of the existence of "contradictory claims for rapid or fast-release [acetaminophen] products."[40]

68. There is no proven significant efficacy difference between Rite Aid's rapid release gelcaps and its non-rapid release products to warrant Rite Aid's representations that the Class Rapid Release Gelcaps work faster than its non-rapid release products.

69. Rite Aid knew or should have known that its representations about the Class Rapid Release Gelcaps were false, misleading, unfair, and/or deceptive. Even though Rite Aid capitalizes and relies upon information put in the marketplace by Johnson & Johnson, it is still responsible for its representations pertaining to the Class Rapid Release Gelcaps and investigating the truth or falsity of the same before presenting it to the American public.

70. Rite Aid should have had a basis for the representations it made on and in its labeling, packaging, advertising, and other marketing more than Johnson & Johnson did it.

---

[39] Kucera, Jessop, Alvarez, Gortler, Light, *supra* n.5.
[40] *Id.*

**CLASS ACTION COMPLAINT**

71.     Despite that Rite Aid knew or should have known that the Class Rapid Release Gelcaps did not work faster than its other products, Rite Aid falsely marketed the Class Rapid Release Gelcaps as rapid release, suggesting to consumers that the Class Rapid Release Gelcaps worked faster than its other, cheaper, non-rapid release, acetaminophen products.

72.     Rite Aid's conduct induced and continues to induce unwitting consumers to buy the Class Rapid Release Gelcaps for a premium price – a price that exceeds the actual value of the product.

## PLAINTIFF'S EXPERIENCE

### Plaintiff Thomas Bailey

73.     Plaintiff Thomas Bailey purchased a bottle of Rite Aid Acetaminophen Rapid Release Gelcaps, 100 count, approximately six months ago at a Rite Aid store in Alameda County, California for a price more than the brand's cheaper non-rapid release acetaminophen products in the same count.

74.     Pictures of Plaintiff Bailey's bottle of Class Rapid Release Gelcaps appear below:





75.     He sought an acetaminophen product to treat general body aches and pains.

CLASS ACTION COMPLAINT

76.     He purchased the Class Rapid Release Gelcaps over other Rite Aid brand and other acetaminophen products solely because they were labeled as rapid release and he was seeking "faster" relief.

77.     Rite Aid's marketing (labeling and advertising) misled Plaintiff Bailey to believe that the Class Rapid Release Gelcaps he purchased would provide faster relief than other cheaper Rite Aid acetaminophen products.

78.     Had Plaintiff Bailey known that the Class Rapid Release Gelcaps did not act any faster than traditional, cheaper Rite Aid products, he would not have been willing to pay the premium that he did for the Class Rapid Release Gelcaps. Instead, he would have purchased a cheaper, just as effective and just as fast acting acetaminophen product.

79.     The cost of the Class Rapid Release Gelcaps exceeded the value of the product and Plaintiff Bailey did not receive the benefit of the bargain.

## CLASS ACTION ALLEGATIONS

80.     Rite Aid's conduct violates the law. Rite Aid violated consumer protection laws, breached warranties, and unjustly enriched itself to the detriment of consumers. Rite Aid's conduct is ongoing and is the basis for Plaintiff's class action allegations.

81.     Plaintiff represents a proposed class of hundreds of thousands of consumers who purchased and used the Class Rapid Release Gelcaps manufactured and distributed by Rite Aid and sold under the Rite Aid brand name.

82.     Plaintiff brings this action individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), against Rite Aid, on their own and on behalf of the California Class defined below. Plaintiff proposes the California Class in the interest of judicial economy and efficiency.

**California Class:**
During the fullest period allowed by law, all persons who purchased the Class Rapid Release Gelcaps in the State of California.

CLASS ACTION COMPLAINT

83.     At the class certification stage, in response to discovery and pursuant to any instruction by the Court, Plaintiff reserves the right to modify these class definitions.

84.     "Class Rapid Release Gelcaps" include Rite Aid Acetaminophen Rapid Release Gelcaps, Rite Aid Acetaminophen PM Rapid Release Gelcaps, and any Rite Aid acetaminophen products labeled and/or marketed as "rapid release."

85.     Excluded from the proposed Class is: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Rite Aid and any entity in which it has a controlling interest or which has a controlling interest in it; (c) the officers and directors of Rite Aid; (e) Rite Aid's legal representatives, assigns, and successors; and (f) all persons who properly execute and file a timely request for exclusion from the Class.

86.     Plaintiff meets the prerequisites of Rule 23(a) to bring this action on behalf of the California Class.

87.     **Numerosity**:  While the exact number of class members cannot yet be determined, the Class consists at a minimum of hundreds of people dispersed throughout the State of California, such that joinder of all members (the "Class Members") is impracticable. The exact number of Class Members can readily be determined by review of information maintained by Rite Aid.

88.     **Commonality**:  Common questions of law and fact exist as to all members of the Class. Among the questions of law and fact common to the Class are:

> a.     Whether Rite Aid knew, or reasonably should have known, that the Class Rapid Release Gelcaps it placed into the stream of commerce would not function as advertised;
>
> b.     Whether the advertised "rapid release" feature of the Class Rapid Release Gelcaps is a material fact that reasonable purchasers would have considered in deciding whether to purchase the Class Rapid Release Gelcaps;

c.  Whether the Class Rapid Release Gelcaps are of the quality and character Rite Aid promised to consumers;

d.  Whether Rite Aid breached implied warranties relating to the Class Rapid Release Gelcaps;

e.  Whether Rite Aid mispresented the characteristics, qualities, and capabilities of the Class Rapid Release Gelcaps;

f.  Whether Rite Aid made fraudulent, false, deceptive, misleading and/or otherwise unfair statements in connection with the sale of the Class Rapid Release Gelcaps on its labeling, in its advertising, and on its website;

g.  Whether Rite Aid engaged in unfair and deceptive trade practices pertaining to the Class Rapid Release Gelcaps;

h.  Whether Rite Aid was unjustly enriched as a result of selling the Class Rapid Release Gelcaps;

i.  Whether Rite Aid should be ordered to disgorge all or part of the profits it received from the sale of the Class Rapid Release Gelcaps;

j.  Whether Plaintiff and Class Members are entitled to damages including compensatory, exemplary, and statutory damages, and the amount of such damages;

k.  Whether Plaintiff and Class Members are entitled to equitable relief, including an injunction and requiring that Rite Aid engage in a corrective notice campaign and/or a recall of the Class Rapid Release Gelcaps to address misrepresentations and misleading statements on the packaging; and

l.  Whether Plaintiff and Class Members are entitled to an award of reasonable attorneys' fees and pre-judgment interest, post-judgment interest, and costs.

89.  **Typicality**:  Plaintiff has substantially the same interest in this matter as all other proposed Class Members and their claims arise out of the same set of facts and conduct as all other Class Members. Plaintiff and all Class Members purchased the Class Rapid Release Gelcaps. All of the claims of Plaintiff and Class Members arise out of Rite Aid's false, misleading, deceptive, and unfair conduct. Common to Plaintiff and Class Members' claims is Rite Aid's conduct in marketing, advertising, warranting, and/or selling the Class Rapid Release Gelcaps and Plaintiff and Class Members' purchase of the Class Rapid Release Gelcaps.

90.  **Adequacy of Representation**:  Plaintiff is committed to pursuing this action and has retained competent counsel experienced in products liability, deceptive trade practices, and

class action litigation. Accordingly, Plaintiff and his counsel will fairly and adequately protect the interests of Class Members. Plaintiff's claims are coincident with, and not antagonistic to, those of the other Class Members they seek to represent. Plaintiff has no disabling conflicts with Class Members and will fairly and adequately represent the interests of Class Members.

91. The elements of Rule 23(b)(2) are met. Rite Aid will continue to commit the violations alleged, and Plaintiff, Class Members and the general public will be subject to and continue to suffer from the same or substantially similar deceitful marketing. Rite Aid has acted on grounds that apply generally to Class Members so that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

92. The elements of Rule 23(b)(3) are met. Here, the common questions of law and fact enumerated above predominate over the questions affecting only the individual Class Members and a class action is the superior method for fair and efficient adjudication of the controversy. Although many other Class Members have claims against Rite Aid, the likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues is not efficient, timely, or proper. Judicial resources would be unnecessarily depleted by prosecution of individual claims. Joinder on an individual basis of thousands of claimants in one suit would be impractical or impossible. Individualized rulings and judgments could result in inconsistent relief for similarly situated Plaintiff. Plaintiff's counsel, highly experienced in class action litigation, foresee little difficulty in the management of this case as a class action.

## TOLLING AND ESTOPPEL OF STATUTES OF LIMITATIONS

93. Any applicable statutes of limitations have been tolled by Rite Aid's knowledge, actual misrepresentations, and/or denial of the facts as alleged herein.

94. Alternatively, the facts alleged herein give rise to estoppel. Rite Aid was and is under a continuous duty to disclose to Plaintiff and Class Members the true character, quality, and nature of the Class Rapid Release Gelcaps. At all relevant times and continuing to this day,

Rite Aid misrepresented the true character, quality, and nature of the Class Rapid Release Gelcaps. Representations which it knew or should have known were false, misleading, unfair, and/or deceptive. Plaintiff and Class Members reasonably relied on Rite Aid's misrepresentations of material facts. Based on the allegations contained herein, Rite Aid is estopped from prevailing on any statute of limitations defense in this action.

95.     Additionally, Rite Aid is estopped from raising any defense of laches due to its own unclean hands.

## CLAIMS FOR RELIEF

## COUNT I

## VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW ("FAL") BUSINESS AND PROFESSIONAL CODE § 17500

**(Plaintiff Individually and on Behalf of the California Class)**

96.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

97.     California Business & Professions Code § 17500 states:

> "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

98.     California's FAL prohibits not only false advertising, but also advertising which is misleading, even if true, and advertising that has a capacity, likelihood, or tendency to deceive of confuse the public.

99.     Rite Aid caused to be made or disseminated throughout California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been

known to Rite Aid, to be untrue and misleading to consumers, including Plaintiff and the other Class Members.

100.    Rite Aid has violated § 17500 because the misrepresentations and omissions regarding the speed and capability of its Class Rapid Release Gelcaps as set forth in this Complaint were material and likely to deceive a reasonable consumer.

101.    Plaintiff and the other Class Members have suffered an injury in fact, including the loss of money or property, as a result of Rite Aid's false, unlawful, misleading, unfair, and/or deceptive practices. In purchasing their Class Rapid Release Gelcaps, Plaintiff and the other Class Members relied on the misrepresentations and/or omissions of Rite Aid with respect to the speed and capability of the Class Rapid Release Gelcaps. Rite Aid's representations were untrue because the Class Rapid Release Gelcaps were manufactured and sold with the same acetaminophen medicine used in its other Rite Aid products and the Class Rapid Release Gelcaps worked slower, rather than faster, than the other non-rapid release acetaminophen Rite Aid products. Had Plaintiff and the other Class Members known this, they would not have purchased their Class Rapid Release Gelcaps and/or paid as much for them. Accordingly, Plaintiff and Class Members overpaid for their Class Rapid Release Gelcaps and did not receive the benefit of their bargain.

102.    All of Rite Aid's wrongful conduct alleged herein occurred in the course of Rite Aid's business.

103.    Plaintiff, individually and on behalf of the other Class Members, request that this Court enter such orders or judgments as may be necessary to restore to Plaintiff and Class Members any money Rite Aid acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief the Court deems necessary.

## COUNT II

## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW ("UCL") BUSINESS AND PROFESSIONAL CODE § 17200

### (Plaintiff individually and on behalf of California Class)

104.    Plaintiff re-alleges and incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

105.    The California UCL prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

106.    Rite Aid has engaged in unfair competition and unfair, unlawful, or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff and Class Members that the Class Rapid Release Gelcaps work slower than its other non-rapid release acetaminophen Rite Aid products. Rite Aid should have disclosed this information or at least not misrepresented the Class Rapid Release Gelcaps as rapid release suggesting that they worked faster than its other products because that was untrue and Rite Aid was in a superior position to know the true facts, and Plaintiff and Class Members could not reasonably be expected to learn or discover that true fact.

107.    These acts and practices have deceived Plaintiff and Class Members, and are likely to deceive the public. By misrepresenting the true quality and nature of the Class Rapid Release Gelcaps to Plaintiff and the Class Members, Rite Aid violated the UCL, and caused injuries to Plaintiff and Class Members. The misrepresentations and omissions by Rite Aid pertained to information that was material to Plaintiff and Class Members' purchase decisions, as it would be material to all reasonable consumers.

108.    The injuries suffered by Plaintiff and the Class Members are greatly outweighed by any potential countervailing benefit to consumers or to competition. The injuries that Plaintiff and the Class Members suffered should have reasonably been avoided.

CLASS ACTION COMPLAINT

109.    Rite Aid's acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 et seq., and California Commercial Code § 2313.

110.    Plaintiff and Class Members seek to enjoin further unlawful, misleading, deceptive, unfair, and/or fraudulent acts or practices by Rite Aid, obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and obtain all other relief allowed under California Business & Professions Code § 17200.

**COUNT III**

**VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT ("CLRA")**
**CALIFORNIA CIVIL CODE § 1761**

**(Plaintiff individually and on behalf of the California Class)**

111.    Plaintiff re-alleges and incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

112.    Plaintiff and Class Members are "consumers" within the meaning of California Civil Code § 1761(d). Plaintiff and Class Members purchased one or more Class Rapid Release Gelcaps.

113.    Rite Aid is a "person" within the meaning of California Civil Code § 1761(c).

114.    In the course of Rite Aid's business, Rite Aid engaged in unfair and deceptive acts in violation of the CLRA by the practices described above. These acts and practices violate, at a minimum, the following sections of the CLRA:

(a)(5)   Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

(a)(7)   Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

(a)(9)   Advertising goods and services with the intent not to sell them as advertised.

115.    Rite Aid's unfair or deceptive acts or practices occurred repeatedly in Rite Aid's trade or business and were capable of deceiving a substantial portion of the purchasing public.

116.    Rite Aid knew or should have known that the Class Rapid Release Gelcaps were not more effective or faster-acting than its other, cheaper non-acetaminophen Rite Aid products.

117.    Rite Aid was under a duty to Plaintiff and the Class Members to disclose the true nature and quality of the Class Rapid Release Gelcaps because:

   a.    Rite Aid was in a superior position to know the true state of facts about the Class Rapid Release Gelcaps;

   b.    Plaintiff and Class Members could not reasonably have been expected to learn or discover that the Class Rapid Release Gelcaps did not conform to Rite Aid's representations;

   c.    Rite Aid knew that Plaintiff and Class Members could not reasonably have been expected to learn or discover the true quality and nature of the Class Rapid Release Gelcaps; and

   d.    Rite Aid failed to disclose the truth about the Class Rapid Release Gelcaps to Plaintiff and Class Members.

118.    In misrepresenting the speed and capability of the Class Rapid Release Gelcaps as well as failing to disclose the true quality and nature of the Class Rapid Release Gelcaps, Rite Aid has misrepresented and/or concealed material facts and breached its duty not to do so.

119.    The facts misrepresented and/or not disclosed by Rite Aid to Plaintiff and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Rapid Release Gelcaps or pay a lesser price for the Class Rapid Release Gelcaps. Had Plaintiff and Class Members known this information, they would not have purchased the Class Rapid Release Gelcaps or would have paid less for them.

120.    Plaintiff will provide Rite Aid with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a) and currently seeks injunctive relief. After the 30-day notice period expires, Plaintiff will amend this complaint to seek monetary damages under the CLRA.

121.   Plaintiff and Class Members' injuries were proximately caused by Rite Aid's unfair and deceptive business practices.

122.   Therefore, Plaintiff and Class Members are entitled to equitable relief under the CLRA.

## COUNT IV

## VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT CAL. CIV. CODE § 1790 *et seq.*

### (Plaintiff individually and on behalf of the California Class)

123.   Plaintiff re-alleges and incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

124.   The Class Rapid Release Gelcaps are "consumer goods" within the meaning of Cal. Civ. Code § 1791.

125.   Plaintiff and Class Members are "buyers" within the meaning of Cal. Civ. Code § 1791.

126.   Rite Aid is a "manufacturer," "distributor," or "retail seller" within the meaning of Cal. Civ. Code § 1791.

127.   The implied warranty of merchantability included with the sale of each Class Rapid Release Gelcap means that Rite Aid warranted that each Class Rapid Release Gelcap:

    (a)   would pass without objection in trade under the description;

    (b)   was fit for the ordinary purposes for which the Class Rapid Release Gelcaps would be used; and

    (c)   conformed to the promises or affirmations of fact made about the Class Rapid Release Gelcaps.

128.   At a minimum, the Class Rapid Release Gelcaps do not conform to the promises or affirmations of fact made on the label or in the advertising and marketing of the product, in that the Class Rapid Release Gelcaps do not provide rapid release or provide rapid relief faster than cheaper, non-rapid release acetaminophen Rite Aid products.

129.   The Class Rapid Release Gelcaps are not adequately labeled.

130.    The labeling, packaging, advertising, and marketing pertaining to the Class Rapid Release Gelcaps is false, misleading, and/or deceptive.

131.    These misrepresentations by Rite Aid have deprived Plaintiff and Class Members of the benefit of their bargains.

132.    The Class Rapid Release Gelcaps are worth less than what Plaintiff and Class Members paid for them.

133.    As a direct and proximate result of Rite Aid's conduct as described herein, Plaintiff and Class Members purchased goods at a premium price that are actually worth substantially less in value to consumers.

134.    At a minimum, Plaintiff and Class Members have been damaged by the overpayment for the Class Rapid Release Gelcaps.

135.    Plaintiff and Class Members are entitled to damages and other legal and equitable relief, including, the overpayment in value for their Class Rapid Release Gelcaps.

136.    Plaintiff and Class Members are also entitled to all incidental and consequential damages resulting from Rite Aid's conduct, as well as reasonable attorneys' fees and costs.

<u>**COUNT V**</u>

<u>**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER UCC §2-314**</u>

**(Plaintiff individually and on behalf of the California Class)**

137.    Plaintiff re-alleges and incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

138.    The implied warranty of merchantability included with the sale of each Class Rapid Release Gelcap means that Rite Aid warranted that each Class Rapid Release Gelcap, *inter alia*:

(a)    would pass without objection in trade under the description;

(b)    was fit for the ordinary purposes for which the Class Rapid Release Gelcaps would be used;

(c)    was adequately contained, packaged, and labeled; and

(d)    conformed to the promises or affirmations of fact made about the Class Rapid Release Gelcaps.

CLASS ACTION COMPLAINT

139.    At a minimum, the Class Rapid Release Gelcaps do not conform to the promises or affirmations of fact made on the label or in the advertising and marketing of the product, in that the Class Rapid Release Gelcaps do not rapid release or provide rapid relief faster than cheaper, non-rapid release acetaminophen Rite Aid products.

140.    The Class Rapid Release Gelcaps are not adequately labeled.

141.    The labeling, packaging, advertising, and marketing pertaining to the Class Rapid Release Gelcaps is false, misleading, and/or deceptive.

142.    These misrepresentations by Rite Aid have deprived Plaintiff and Class Members of the benefit of their bargains.

143.    The Class Rapid Release Gelcaps are worth less than what Plaintiff and Class Members paid for them.

144.    As a direct and proximate result of Rite Aid's conduct as described herein, Plaintiff and Class Members purchased goods at a premium price that are actually worth substantially less in value to consumers.

145.    At a minimum, Plaintiff and Class Members have been damaged by the overpayment for the Class Rapid Release Gelcaps.

146.    Plaintiff and Class Members are entitled to damages and other legal and equitable relief, including, the overpayment in value for their Class Rapid Release Gelcaps.

147.    Plaintiff and Class Members are also entitled to all incidental and consequential damages resulting from Rite Aid's conduct, as well as reasonable attorneys' fees and costs.

### COUNT VI
### BREACH OF EXPRESS WARRANTY UNDER UCC §2-313
#### (Plaintiff individually and on behalf of the California Class)

148.    Plaintiff re-alleges and incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

149.    As described herein, Rite Aid made statements, promises, affirmations about the Class Rapid Release Gelcaps as to the nature, quality, and capability of the goods that became

part of the bargain between the parties to create an express warranty that the Class Rapid Release Gelcaps would in fact conform to those representations.

150.    Rite Aid breached its express warranty when its Class Rapid Release Gelcaps did not conform to the representations and descriptions Rite Aid made to consumers.

151.    Plaintiff and Class Members reasonably relied on Rite Aid's misrepresentations.

152.    The misrepresentations by Rite Aid have deprived Plaintiff and Class Members of the benefit of their bargains.

153.    The Class Rapid Release Gelcaps are worth less than what Plaintiff and Class Members paid for them.

154.    As a direct and proximate result of Rite Aid's conduct as described herein, Plaintiff and Class Members purchased goods at a premium price that are actually worth substantially less in value to consumers.

155.    At a minimum, Plaintiff and Class Members have been damaged by the overpayment for the Class Rapid Release Gelcaps.

156.    Plaintiff and Class Members are entitled to damages and other legal and equitable relief, including, the overpayment in value for their Class Rapid Release Gelcaps.

157.    Plaintiff and Class Members are also entitled to all incidental and consequential damages resulting from Rite Aid's conduct, as well as reasonable attorneys' fees and costs.

158.    Plaintiff and Class Members have provided or will provide Rite Aid notice of the alleged breach within a reasonable time after discovering the breach.

### COUNT VII
### UNJUST ENRICHMENT
**(Plaintiff individually and on behalf of the California Class)**

159.    Plaintiff re-alleges and incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

160.    As described above, Rite Aid sold the Class Rapid Release Gelcaps to Plaintiff and Class Members making false, misleading, and/or deceptive representations about the

products' speed and capabilities as compared to Rite Aid's cheaper, non-rapid release acetaminophen products.

161.    Rite Aid unjustly charged and continues to charge Plaintiff and Class Members a premium to purchase the Class Rapid Release Gelcaps over the non-rapid release acetaminophen Rite Aid products.

162.    As a result of its false, misleading, unfair, and/or deceptive practices and omission about the true nature and quality about the Class Rapid Release Gelcaps, Rite Aid obtained monies that rightfully belong to Plaintiff and Class Members.

163.    Rite Aid appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff and Class Members who, without knowledge of the true quality and nature of the Class Rapid Release Gelcaps, paid a higher price for their than what they were worth.

164.    Rite Aid also received monies for those Class Rapid Release Gelcaps that Plaintiff and Class Members would not have otherwise purchased had they known the true nature and quality of the products.

165.    Rite Aid's retention of these wrongfully-acquired profits would violate fundamental principles of justice, equity, and good conscience.

166.    Plaintiff and Class Members seek restitution from Rite Aid and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Rite Aid from its wrongful conduct and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## COUNT VIII
## DECLARATORY RELIEF
### (Plaintiff individually and on behalf of the California Class)

167.    Plaintiff re-alleges and incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

168.    There is a controversy between Rite Aid and Plaintiff and the other Class Members concerning the true nature, quality, and capability of the Class Rapid Release Gelcaps and the false, misleading, unfair, and/or deceptive representations that Rite Aid made about the same.

169.    Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

170.    Accordingly, Plaintiff and Class Members seek a declaration that the Class Rapid Release Gelcaps do not release, provide relief, or otherwise work faster than other, cheaper non-rapid release acetaminophen Rite Aid products.

171.    Additionally, Plaintiff and Class Members seek a declaration that as a result of Rite Aid's false, misleading, unfair, and/or deceptive representations, consumers and Class Members did not and do not receive the benefit of their bargain.

172.    On information and belief, Rite Aid designed, manufactured, produced, tested, inspected, marketed, advertised, labeled, packaged, distributed, and sold the Class Rapid Release Gelcaps. Rite Aid continues to do so while using false, misleading, unfair, and/or deceptive representations to ensure sales to consumers.

173.    On information and belief, Rite Aid has taken no corrective action concerning the false, misleading, unfair, and/or deceptive representations described herein, and has not issued any recalls, warnings, or notices concerning the true nature, quality, and capability of the Class Rapid Release Gelcaps.

174.    Plaintiff and Class Members have suffered damages or injuries due to Rite Aid's conduct described herein.

175.    Rite Aid should be required to take corrective action to prevent further injuries, including:  (a) issuing a nationwide recall of the Class Rapid Release Gelcaps to address product labeling and packaging; (b) issuing warnings and/or notices to consumers and the Class concerning the true nature, quality, and capability of the Class Rapid Release Gelcaps; and (c)

immediately discontinuing any false, misleading, unfair, and/or deceptive advertising, marketing, or other representations described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks the Court to enter judgment awarding the following relief:

A.  An order certifying the proposed California Class;

B.  An order awarding Plaintiff and Class Members their actual damages, punitive damages, and/or any other monetary relief provided by law;

C.  An order awarding Plaintiff and Class Members restitution, disgorgement, or other equitable relief as the Court deems proper;

D.  An order requiring Rite Aid to adequately represent the true nature, quality, and capability of the Class Rapid Release Gelcaps;

E.  An order (a) issuing a nationwide recall of the Class Rapid Release Gelcaps to address product labeling and packaging; (b) issuing warnings and/or notices to consumers and the Class concerning the true nature, quality, and capability of the Class Rapid Release Gelcaps; and (c) immediately discontinuing any false, misleading, unfair, and/or deceptive advertising, marketing, or other representations described herein.

F.  An order granting declaratory and/or injunctive relief as allowable under state and federal law;

G.  An order awarding Plaintiff and Class Members pre-judgment and post-judgment interest as allowed by law;

H.  An order awarding Plaintiff and Class Members reasonable attorneys' fees and costs of suit, including expert witness fees; and

I.  An order awarding such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable under the law.

DATED:  November 15, 2018

Respectfully submitted,

*/s/ Crystal Foley* __
Crystal Foley (SBN 224627)
**SIMMONS HANLY CONROY LLC**
100 N. Sepulveda Blvd., Suite 1350
El Segundo, California 90245
Telephone: (310) 322-3555
Facsimile:  (310) 322-
3655 cfoley@simmonsfirm.com

Mitchell M. Breit (*pro hac vice*
forthcoming)
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue
New York, New York 10016-7416
Telephone:  (212) 784-6400
Facsimile:  (212) 213-5949
mbreit@simmonsfirm.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2018, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

*/s/ Crystal Foley*

CLASS ACTION COMPLAINT