EILEEN R. RIDLEY, CA Bar. No. 151735
   eridley@foley.com
JOSHUA R. PARR, CA Bar. No. 318549
   jparr@foley.com
**FOLEY & LARDNER LLP**
555 CALIFORNIA STREET
SUITE 1700
SAN FRANCISCO, CA 94104-1520
Telephone:  (415) 434-4484
Facsimile:  (415) 434-4507

Jay N. Varon, Esq. (*pro hac vice motion forthcoming*)
   jvaron@foley.com
David A. Hickerson, Esq. (*pro hac vice motion forthcoming*)
   dhickerson@foley.com
David L. Rosen (*pro hac vice motion forthcoming*)
   drosen@foley.com
Jarren N. Ginsburg (*pro hac vice motion forthcoming*)
   jginsburg@foley.com
**FOLEY & LARDNER LLP**
3000 K Street, N.W.
Washington, D.C.  20007
Telephone:    202.672.5380
Facsimile:    202.672.5399

Attorneys for Defendant Rite Aid
Corporation.

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS BAILEY on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> RITE AID CORPORATION, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Case No. 4:18-cv-06926-YGR

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

Judge:      Yvonne Gonzalez Rogers
Date:       May 28, 2019
Time:       2:00 p.m.
Place:      Courtroom 1 (4th Floor)
              1301 Clay Street, Oakland, CA 94612

Complaint Filed:    November 15, 2018

FAC Filed:          January 15, 2019

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ............................................................1

I.    INTRODUCTION ...................................................................................................2

II.   STATEMENT OF FACTUAL ALLEGATIONS. ...................................................4

    A.    The Parties ...................................................................................................4

    B.    Key Allegations ...........................................................................................4

III.  LEGAL STANDARD OF REVIEW .......................................................................5

IV.   ARGUMENT ...........................................................................................................7

    A.    Plaintiff's Claims Are Expressly Preempted by Federal Law. .........................7

        1.    The National Uniformity for Nonprescription Drugs Statute Expressly
                Preempts Plaintiff's Claims. ............................................................7

        2.    There Is an Extensive Federal Regulatory Scheme Governing OTC
                Drugs. .............................................................................................10

            a.    The FDA Monograph ...........................................................11

            b.    FDA Guidance .....................................................................12

            c.    The USP Dissolution Standards for Acetaminophen Immediate
                      Release Tablets ...................................................................14

            d.    FDA Enforcement of Misbranded OTC Drugs ......................14

            e.    FTC Enforces OTC Drug Advertising ...................................16

    B.    If Plaintiff's Claims Are Not Preempted, They Should Be Dismissed Under the
                Doctrine of Primary Jurisdiction. .....................................................................16

    C.    Plaintiff Fails to State a Claim Under California Consumer Protection Statutes. ...........17

        1.    Plaintiff Fails to Plausibly Allege that the Use of the Term "Rapid
                Release" or "Fast Release" on the Rite Aid Products Is False, Deceptive,
                or Misleading .................................................................................17

        2.    Plaintiff Has Failed to Allege a Duty to Disclose to Support a
                Concealment Claim .........................................................................21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

D.      California's Safe Harbor Doctrine Bars Plaintiff's FAL, UCL and CLRA Claims ........22

E.      Plaintiff Fails to State a Claim for Breach of Implied and Express Warranty.................23

F.      Plaintiff's Remaining Claims Must Also Be Dismissed..................................................25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alvarez v. Chevron Corp.*,
    656 F.3d 925 (9th Cir. 2011) ............................................................................22

*American Suzuki Motor Corp. v. Superior Court*,
    37 Cal. App. 4th 1291 (1995) ............................................................................24

*Ashcroft v. Iqbal*,
    556 U.S. 662, 678 (2009)....................................................................................5

*Barber v. Nestle USA, Inc.*,
    154 F. Supp. 3d 954 (C.D. Cal. 2015) ...............................................................23

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 570 (2007).....................................................................................5

*Berryman v. Merit Property Mgmt., Inc.*,
    152 Cal. App. 4th 1544 (2007) ..........................................................................21

*Bowling v. Johnson & Johnson*,
    65 F. Supp. 3d 371 (S.D.N.Y. 2014) .......................................................9, 10, 12

*Bronson v. Johnson & Johnson, Inc.*,
    No. C 12-4184 CRB, 2013 U.S. Dist. LEXIS 54029 (N.D. Cal. Apr. 16, 2013) ................................20

*Brownlee v. Vang*,
    235 Cal. App. 2d 465 (1965) .............................................................................21

*Buller v. Sutter Health*,
    160 Cal. App. 4th 981 (2008) ............................................................................21

*Carter v. Novartis Consumer Health, Inc.*,
    582 F. Supp. 2d 1271 (C.D. Cal. 2008) ...................................................8, 9, 18

*Cel-Tech Communications v. Los Angeles Cellular Telephone Co.*,
    20 Cal. 4th 163 (1999)........................................................................................22

*Cipollone v. Liggett Group, Inc.*,

　505 U.S. 504 (1992)................................................................................................................7

*Clark v. Time Warner Cable*,

　523 F.3d 1110 (9th Cir. 2008) ............................................................................................17

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*,

　911 F.2d 242 (9th Cir. 1990) ..............................................................................................20

*Crosby v. Nat'l Foreign Trade Council*,

　530 U.S. 363 (2000)................................................................................................................7

*Cruz v. Anheuser-Busch, LLC*,

　Case No.: CV 14-09670 AB (ASx), 2015 U.S. Dist. LEXIS 76027 (C.D. Cal. June 3, 2015)

　*aff'd* 2017 U.S. App. LEXIS 4673 (9th Cir. Mar. 16, 2017) ...............................................25

*Dabish v. MusclePharm Corp.*,

　3:15-CV-02848-CAB-RBB, 2016 U.S. Dist. LEXIS 191885 (S.D. Cal. Sept. 26, 2016).........6, 18, 19

*Daniels-Hall v. Nat'l Educ. Ass'n*,

　629 F.3d 992 (9th Cir. 2010) ................................................................................................6

*Davis v. HSBC Bank Nevada, N.A.*,

　691 F.3d 1152 (9th Cir. 2012) ........................................................................................6, 23

*Degelmann v. Advanced Medical Optics, Inc.*,

　659 F.3d 835 (9th Cir. 2011) *vacated pursuant to settlement* ...................................3, 12, 13

*Ebner v. Fresh Inc.*,

　SACV 13-00477 JVS (RNBx), 2013 U.S. Dist. LEXIS 188889 (C.D. Cal. Sept. 11, 2013) ..............22

*Eckler v. Neutrogena Corp.*,

　238 Cal. App. 4th 433 (2015) ............................................................................................10

*Elias v. Hewlett-Packard Co.*,

　903 F. Supp. 2d 843 (N.D. Cal. Oct. 11, 2012) .................................................................24

*Gisvold v. Merck & Co., Inc.*,

　62 F. Supp. 3d 1198 (S.D. Cal. 2014)...........................................................................7, 17

*Gustavson v. Wrigley Sales Co.*,

    No. 12-cv-01861-LHK, 2014 WL 60197 (N.D. Cal. Jan. 7, 2014) ....................................................... 6

*Hansen Beverage Co. v. Innovation Ventures, LLC*,

    No. 08-cv-1166-IEG (POR) 2009 WL 6597891 (S.D. Cal. Dec. 23, 2009) .......................................... 6

*I.N.S. v. Nat'l Ctr. for Immigrants' Rights, Inc.,*

    502 U.S. 183 (1991) .......................................................................................................................... 7

*Iezza v. Saxon Mortg. Servs*,

    Case No. 10-03634 DDP (JCGx), 2010 U.S. Dist. LEXIS 108883 (C.D. Cal. Sep. 28, 2010) ........... 25

*In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.,*

    No. MDL 08-1934 PSG AGRx), 2009 U.S. Dist. LEXIS 58697 (C.D. Cal. June 17, 2009) .............. 14

*In re iPhone 4S Consumer Litig.*,

    637 F. App'x 414 (9th Cir. 2016) ...................................................................................................... 18

*In re Testosterone Replacement Therapy Prods. Liab. Litig.*,

    142 F. Supp. 3d 747 (N.D. Ill. 2015) ........................................................................................... 12, 13

*In re Thompson Medical Co.*,

    104 F.T.C. 648 (1984) *aff'd*, 791 F.2d 189, 193 (D.C. Cir. 1986) ...................................................... 16

*Jogani v. Super. Ct.*,

    165 Cal. App. 4th 901 (2008) ........................................................................................................... 25

*Kanfer v. Pharmacare US, Inc.*,

    142 F. Supp. 3d 1091 (S.D. Cal. 2015) ............................................................................................... 6

*Kho v. Wells Fargo & Co.*,

    2012 WL 324001 (C.D. Cal. Aug. 6, 2012) ....................................................................................... 25

*King v. Nat'l Gen. Ins. Co.*,

    129 F. Supp. 3d 925 (N.D. Cal. Sep. 15, 2015) ................................................................................. 25

*Kwan v. SanMedica Int'l*,

    854 F.3d 1088 (9th Cir. 2017) .......................................................................................................... 19

*Lanovaz v. Twining North Am., Inc.*,

    2013 WL 675929 (N.D. Cal. Feb. 19, 2013) ..................................................................................... 24

Rite Aid's Motion to Dismiss
Case No. 4:18-cv-06926-YGR

*Mexia v. Rinker Boat Co.*,

   174 Cal. App. 4th 1297 (2009) ...........................................................................................24

*Mills v. Warner-Lambert*,

   581 F. Supp. 2d 772 (E.D.T.X, 2015)................................................................................11

*Moss v. U.S. Secret Serv.*,

   572 F.3d 962 (9th Cir. 2009) .............................................................................................5

*National Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*,

   107 Cal. App. 4th 1336 (Cal. App. 2003)...................................................................19, 20

*Perea v. Walgreen Co.*,

   939 F. Supp. 2d 1026 (C.D. Cal. 2013) .............................................................................23

*Perez v. Kroger*,

   No. 2:17-cv-02448-ODW (AGR), 2017 WL 3601998 (C.D. Cal. Aug. 18, 2017) ..............6

*POM Wonderful LLC v. Coca Cola Co.*,

   CV-08-06237 SJ0 (FMOx), 2013 U.S. Dist. LEXIS 33501 (C.D. Cal. Feb. 13, 2013) .....................22

*Route v. Mead Johnson Nutrition Co.*,

   No. CV 12-7350-GW (JEMx), 2013 U.S. Dist. LEXIS 35069 .........................................19

*Sandoval v. PharmaCare US, Inc.*,

   145 F. Supp. 3d 986 (S.D. Cal. 2015)...............................................................................6

*Smith-Victor Corp. v. Sylvania Electric Products, Inc.*,

   242 F. Supp. 302 (N.D. Ill. 1965).....................................................................................20

*Stanley v. Bayer Healthcare LLC*,

   No. 11-CV-862 IEG (BLM), 2012 U.S. Dist. LEXIS 47895 (S.D. Cal. Apr. 3, 2012)......................20

*United States ex rel. Modglin v. DJO Global Inc.*,

   48 F. Supp. 3d 1362 (C.D. Cal. 2014) ..............................................................................13

*United States v. 14.02 Acres of Land*,

   547 F.3d 943 (9th Cir. 2008) .............................................................................................6

*Von Koenig v. Snapple Bev. Corp.*,

   713 F. Supp. 2d 1066 (E.D. Cal. 2010) .............................................................................22

*Warner Constr. Corp. v. City of Los Angeles*,

   2 Cal. 3d 285 (1990) .................................................................................................... 21

*Weinberger v. Bentex Pharmas.*,

   412 U.S. 645 (1973) ...................................................................................................... 11

**Statutes**

21 C.F.R. § 201.66 ................................................................................................................ 10

21 C.F.R. § 210.66(a) ........................................................................................................... 10

21 C.F.R. § 330.1 .................................................................................................................. 11

21 C.F.R. § 330.10 ................................................................................................................ 11

21 C.F.R. § 330.14(h) ........................................................................................................... 12

21 C.F.R. § 343 ..................................................................................................................... 11

21 C.F.R § 343.90(c) ............................................................................................................ 15

21 U.S.C. § 352(a) ........................................................................................................... 10, 15

21 U.S.C. § 379r ............................................................................................................. 1, 2, 7

Cal. Civ. Code § 1791.1 ....................................................................................................... 24

**Rules**

Fed. R. Civ. P. 9b .................................................................................................................. 19

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 1, 19

**Other Authorities**

"Advertising for Over-the-Counter Drugs"

   46 Fed. Reg. 24584 (May 1, 1981) .............................................................................. 16

FAQs: USP and its Standards, U.S. Pharmacopeia, http://www.usp.org/frequently-asked-

   questions/usp-and-its-standards (last visited: January 7, 2019) .............................. 14

Fourth Interim Revision Announcement <711> Dissolution, U.S. Pharmacopeia (last revised

Nov. 21, 2016),

available at https://www.usp.org/sites/default/files/usp/document/harmonization/gen-

method/q01_pf_ira_33_4_2007.pdf (last accessed Feb. 4, 2019) ..................................................12, 14

*Rapid and Fast-Release Acetaminophen Gelcaps Dissolve Slower Than Acetaminophen Tablets*,

Adv Inv Pha The Medic, 1:63-71 (Nov. 12, 2018).................................................................................3

U.S. Food and Drug Administration, *Over-the-Counter (OTC) Drug Monograph Process*,

available at

https://www.fda.gov/drugs/developmentapprovalprocess/howdrugsaredevelopedandapproved

/ucm317137.htm (last accessed Feb. 4, 2019) ............................................................................11, 15

Rite Aid's Motion to Dismiss
Case No. 4:18-cv-06926-YGR

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on Tuesday, May 28, 2019, at 2:00 p.m., or as soon thereafter as the matter may be heard in the above-entitled court, located at Courtroom 1 (4th Floor), 1301 Clay Street, Oakland, CA 94612, Defendant Rite Aid Corporation ("Rite Aid") will and hereby does move the Court, pursuant to Fed. R. Civ. P. 12(b)(6), for an order dismissing Plaintiff's claims against Rite Aid.  This motion is based on this notice of motion, the accompanying memorandum of points and authorities, declarations, papers and pleadings on file in this action, such other evidence and argument as may be presented at or before any hearing on this motion, and all matters of which the Court may take judicial notice.

STATEMENT OF ISSUES TO BE DECIDED

1.     Whether Plaintiff's claims are expressly preempted under the National Uniformity for Nonprescription Drugs Statute, 21 U.S.C. § 379r(a).

2.     Whether Plaintiff's claims are preempted given the extensive regulatory regime governing the labeling of over-the-counter drugs.

3.     Whether Plaintiff's claims should be dismissed under the doctrine of primary jurisdiction to give the FDA the first opportunity to weigh in on the matter given the complex and technical nature of definitions used in over-the-counter drug labels.

4.     Whether Plaintiff has failed to state a claim under California's consumer protection statutes given that the product labels accurately describe the products.

5.     Whether Plaintiff's claims are barred by California's Safe Harbor doctrine given that the labels in question comply with FDA regulations.

6.     Whether Plaintiff has failed to state a claim for breach of implied and/or express warranty.

7.     Whether Plaintiff's claims for unjust enrichment and declaratory relief should also be dismissed.

1

## I.      INTRODUCTION

When a product label contains true statements that comply with federally mandated standards which govern the claims at issue, courts consistently hold the label is not false, misleading, or deceptive.  Plaintiff Thomas Bailey ("Plaintiff") filed this proposed class action on behalf of himself and a putative class consisting of others in California who purchased Rite Aid brand Over-the-Counter ("OTC") extra strength acetaminophen gelcaps (the "Rite Aid Products").  Plaintiff's First Amended Complaint ("FAC") asserts a veritable laundry list of claims against Rite Aid Corporation ("Rite Aid") for: (1) violation of the False Advertising Law (the "FAL"); (2) violation of the Unfair Competition Law (the "UCL"); (3) violation of the Consumers Legal Remedies Act (the "CLRA"); (4) violation of the Song-Beverly Consumer Warranty Act; (5) breach of implied warranty of merchantability; (6) breach of express warranty; (7) unjust enrichment; and (8) declaratory and injunctive relief for product recalls, new labels, and various notifications to consumers.  The crux of Plaintiff's complaint is that consumers, like him, who purchased the Rite Aid Products were tricked into believing that they were getting the "quickest" and "fastest" dissolving acetaminophen product available because of the use of the words "Rapid Release" or "fast release" on the Rite Aid Products' package labeling.

Plaintiff's claims, however, are subject to dismissal for several reasons.  First, they are expressly preempted by federal statute – the National Uniformity for Nonprescription Drugs provision of the Food and Drug Administration ("FDA") Modernization Act of 1996, 21 U.S.C. § 379r.  Section 379r prohibits any state requirement that "relates to the regulation of" OTC drugs that "is in addition to, or not identical with" federal regulations governing OTC drugs.  There exists an extensive federal regulatory scheme, enacted by FDA, governing every aspect of OTC medication, including regulations regarding the labeling and branding of OTC drugs.  *See* 21 C.F.R. Part 330.  The regulatory scheme sets forth dissolution standards for acetaminophen products that establish that the Rite Aid Products more than meet the FDA's requirements for what dissolution rate constitutes a rapidly dissolving acetaminophen gelcap or tablet such that they can lawfully be labeled as "rapid release."  Plaintiff's claims, however, would require an OTC drug to be the *fastest* release requirement to use this term, thereby adding additional and/or different requirements to the labeling of OTC drugs than those required by federal law.  Accordingly, Plaintiff's claims are expressly preempted by Section 379r.  *See,*

Rite Aid's Motion to Dismiss
Case No. 4:18-cv-06926-YGR

*e.g.*, *Degelmann v. Advanced Medical Optics, Inc.*, 659 F.3d 835, 842 (9th Cir. 2011) *vacated pursuant to settlement*.[1]  In addition, the FTC is responsible for monitoring and enforcing OTC drug labeling.

Second, Plaintiff's claims under the UCL, FAL, and CLRA have several glaring deficiencies that subject them to dismissal under both Rules 12(b)(6) and 9(b).  For example, Plaintiff's allegations that the Rite Aid Products falsely represent that they work faster than Rite Aid's non-rapid release products (FAC*, ¶¶* 9, 15, 50, 63, 68, 71, 77) are contradicted by the challenged Rite Aid Products labels themselves, which contain no comparative claims or make any affirmative representations that Rite Aid Products work faster than any other product.  Likewise, Plaintiff's allegations that the use of the term "Rapid Release" or "fast release" on the Rite Aid Products packaging is false and deceptive is directly undercut by the Study cited by Plaintiff as the basis for his claims, which shows that the Rite Aid Products easily meet the FDA's standards and guidance for rapidly dissolving acetaminophen gelcaps.[2]

Unable to show deception, Plaintiff tries to bring a substantiation claim for which he has no standing.  Plaintiff also attempts to build a case for concealment based on the notion that Rite Aid did not disclose that the Rite Aid Products allegedly work slower than other non-rapid release acetaminophen Rite Aid products.  But for non-disclosure to be actionable, there must be a legal duty to disclose in the first place.  Plaintiff has not alleged any facts that demonstrate that Rite Aid had a duty to disclose to Plaintiff and other consumers that other products worked faster merely because it used the words "rapid release" or "fast release" on the Rite Aid Products' labels.  California's safe harbor doctrine also bars Plaintiff from imposing state law liability because Rite Aid has fully complied with FDA regulations in labeling Rite Aid Products as "rapid release" or "fast release."

Finally, while Plaintiff's state warranty claims are preempted, those claims should be independently dismissed because Plaintiff has not plausibly alleged that Rite Aid breached any

---

[1] If the Court finds that Plaintiff's claims are not preempted, the amended complaint should be dismissed under the doctrine of primary jurisdiction.  See text infra at IV.B.

[2] A gelcap is a capsule-shaped tablet that is encased or coated in gelatin or a similar substance.  *See* Kucera, Jessop, Alvarez, Gortler, Light, *Rapid and Fast-Release Acetaminophen Gelcaps Dissolve Slower Than Acetaminophen Tablets*, Adv Inv Pha The Medic, 1:63-71 (Nov. 12, 2018) accessible at http://www.kenkyugroup.org/article/8/173/Rapid-and-Fast-Release-Acetaminophen-Gelcaps-Dissolve-Slower-Than-Acetaminophen-Tablets (last accessed Feb. 4, 2019) ("In the case of acetaminophen, coated capsule-shaped tablets, or caplets, are commonly marketed as gelcaps.").  While some customers prefer tablets, others prefer gelcaps as easier to swallow.

Rite Aid's Motion to Dismiss
Case No. 4:18-cv-06926-YGR

warranty with regard to the Rite Aid Products.  Plaintiff's claims for unjust enrichment and declaratory and injunctive relief are derivative and duplicative of his other claims and similarly flawed such that they should be dismissed.

The deficiencies in Plaintiff's FAC are significant and cannot be cured through creative pleading.  Accordingly, for all these reasons and others detailed below, Rite Aid's motion to dismiss should be granted in its entirety with prejudice.

## II.    STATEMENT OF FACTUAL ALLEGATIONS.

### A.    The Parties

Rite Aid is a large retailer that sells different types of products, including Rite Aid brand OTC extra strength acetaminophen gelcaps.  (Dkt. 15 (FAC), ¶¶ 1-2, 5-6.)  Plaintiff purchased the Rite Aid Products from a Rite Aid store in Alameda County, California to treat general body aches and pains. (*Id.* at ¶¶ 74-75.)

### B.    Key Allegations

Plaintiff alleges that Rite Aid sells extra strength acetaminophen gelcap products that use the words "Rapid Release" or "fast release" on the package labels.  (Dkt. 20 (FAC), ¶¶ 5-6.)  The package labels, which are shown in the FAC, do not make any comparative claims or other affirmative representations that Rite Aid Products work faster than any other acetaminophen products.  (*Id.*at ¶¶ 5-6, 55-56.)  Contrary to the package labels themselves, Plaintiff alleges in conclusory fashion that Rite Aid falsely represents that the Rite Aid Products work faster than its non-rapid release products.  (*Id.* at ¶¶ 15, 63, 68, 71.)  The product labels, however, make no such statement.  (*See id.* at ¶¶ 5-6, 55-56.)

Plaintiff's claims against Rite Aid are premised on a November 12, 2018 study entitled "Rapid and Fast-Release Acetaminophen Gelcaps Dissolve Slower Than Acetaminophen Tablets," which is cited in the FAC (the "Study").  (*Id.* at ¶ 11, n. 5.)  The Study found that the Rite Aid Products achieve an 80% dissolution rate in an average of 9.18 minutes.  (*See* Study.)  The Study "follow[ed] the USP monograph for acetaminophen dissolution…which specifies tolerance as greater or equal to 80% dissolution within 30 minutes."  (*Id.*)  The Study concluded that the Rite Aid Products "passed industry standards for full dissolution in under 30 minutes."  (*Id.*)  Finally, the Study explains that products which dissolve in under 30 minutes, such as the Rite Aid Products, are "generally considered rapidly

Rite Aid's Motion to Dismiss
Case No. 4:18-cv-06926-YGR

dissolving." (*Id.*)  As documented by the Study, the Rite Aid Acetaminophen gelcaps easily meet FDA's requirements for the "Rapid Release" label.

Plaintiff also seeks to hold Rite Aid liable for intentional concealment.  (FAC, ¶¶ 17, 106, 118-119.)  They allege that Rite Aid should have disclosed to consumers that the Rite Aid Products work slower than Rite Aid's other non-rapid release acetaminophen products.  (*Id.* at ¶ 106.)  According to Plaintiff, Rite Aid was under a duty to disclose the true nature of the Rite Aid Products because it was in a superior position to know the true facts.  (*Id.* at ¶ 117.)

Likewise, Plaintiff attempts to bootstrap a claim for false advertising against Rite Aid based on advertisements and claims made by Johnson & Johnson ("J&J") about its Rapid-Release Tylenol products, rather than statements made by Rite Aid.  (*Id.* at ¶¶ 26-42.)  However, J&J is not a party to this litigation, and those statements do not relate to the Rite Aid Products at issue.  Plaintiff's efforts to hold Rite Aid responsible for J&J's statements simply because the Rite Aid Products claim to have the same active ingredient—acetaminophen— and when there are no allegations that Plaintiff even saw the alleged J&J promotional statements, much less relied on them, illustrates the insufficiency of Plaintiff's claims against  Rite Aid.[3]

## III.    LEGAL STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In reviewing the FAC, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678.  "[F]or a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

The Court need not "accept as true allegations that contradict exhibits attached to the Complaint

---

[3] *Compare id.* at ¶ 8 (alleging that the Rite Aid Products "are marketed as comparable to Tylenol Extra Strength Rapid Release Gels") *and id.* at ¶ 60 (alleging that the Rite Aid Products' packaging "associates its products with the Tylenol products") *with id.* ¶¶ 55-56 (showing that the packaging only states that the active ingredients of certain products are comparable).

Rite Aid's Motion to Dismiss
Case No. 4:18-cv-06926-YGR

or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "Courts addressing motions to dismiss product-labeling claims routinely take judicial notice of images of the product packaging." *Sandoval v. PharmaCare US, Inc.*, 145 F. Supp. 3d 986, 992 (S.D. Cal. 2015). "The Court is not required to accept as true allegations of misrepresentations on the product labels that are contradicted by the labels themselves." *Dabish v. MusclePharm Corp.*, 3:15-CV-02848-CAB-RBB, 2016 U.S. Dist. LEXIS 191885, at *22-23 (S.D. Cal. Sept. 26, 2016).

In addition, "courts may take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading. A court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (internal citation and marks omitted). A court may also "consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall*, 629 F.3d at 998.

Moreover, for the purposes of a motion to dismiss, courts have judicially noticed FDA guidance documents when they are available on government agency websites. *Gustavson v. Wrigley Sales Co.*, No. 12-cv-01861-LHK, 2014 WL 60197, *3 n.2 (N.D. Cal. Jan. 7, 2014) (granting request for judicial notice as to FDA guidance document which was available on a government agency's website); *Perez v. Kroger,* No. 2:17-cv-02448-ODW (AGR), 2017 WL 3601998, at *2 (C.D. Cal. Aug. 18, 2017) (same); *see also Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08-cv-1166-IEG (POR) 2009 WL 6597891, at *2 (S.D. Cal. Dec. 23, 2009).[4]

---

[4] The FDA Guidance documents governing the Rite Aid Products at issue—discussed more fully below—are readily accessible on the FDA website and therefore may be judicially noticed. Similarly, the FDA enforcement letters cited herein are official government documents that are readily accessible on the FDA website, and the Court should take judicial notice of these documents, too. *See Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1099 (S.D. Cal. 2015) (finding FDA Warning letters available on the FDA's website appropriate for judicial notice); *see also United States v. 14.02 Acres of Land*, 547 F.3d 943, 955 (9th Cir. 2008) ("Judicial notice is appropriate for records and 'reports of administrative bodies.'").

In this case, the FAC plainly refers to and relies upon the Study and the Rite Aid Products labels.  (See FAC at ¶¶ 11, 24-25, 43, 64, and 67.)  These documents are not only central to Plaintiff's claims, they form the entire basis for Plaintiff's case.  Accordingly, as part of this Motion, Rite Aid requests that the Court take judicial notice of the Study, the Rite Aid Product labels, and the FDA Guidance documents and warning letters cited herein.

## IV.   ARGUMENT

### A.   Plaintiff's Claims Are Expressly Preempted by Federal Law.

"Article VI of the Constitution provides that the laws of the United States 'shall be the supreme Law of the Land; …any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.'"  *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992).  State law is preempted if federal law "express[ly]" preempts it.  *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).  Here, Plaintiff's claims are expressly preempted by the National Uniformity for Nonprescription Drugs provision of the FDA Modernization Act, 21 U.S.C. § 379r.

#### 1.   The National Uniformity for Nonprescription Drugs Statute Expressly Preempts Plaintiff's Claims.

The express preemption provision of the National Uniformity for Nonprescription Drugs Statute, 21 U.S.C. § 379r(a), provides that:

> [N]o State or political subdivision of a State may establish or continue in effect any requirement –
>
> (1)   that *relates to the regulation of a drug that is not subject to the requirements of Section 353(b)(1) or 353(f)(1)(A) of this Title* [5][*i.e., OTC drugs including the Rite Aid products*]; and
>
> (2)   that is *different from or in addition to, or that is otherwise not identical with, a requirement* under [the FDCA] ….

*Id.* (emphasis added).  The intent and language of § 379r is clear, and unambiguously preempts state law that relates to the regulation of OTC drugs, including the Rite Aid Products.  *See Gisvold v. Merck & Co., Inc.*, 62 F. Supp. 3d 1198, 1202 (S.D. Cal. 2014).  Congress's intent is also expressed in the statute's heading: "National Uniformity for Nonprescription Drugs."  *See I.N.S. v. Nat'l Ctr. for*

---

[5] Section 353(b)(1) deals with dangerous prescription drugs which require medical professional supervision, while Section 353(f) covers veterinary prescription drugs.

1  *Immigrants' Rights, Inc.,* 502 U.S. 183, 189 (1991) (holding that a section's title can aid in its

2  interpretation).  Congress's express policy in § 379r in favor of "national uniformity" would be

3  defeated if courts or juries in each state could decide for themselves whether to disregard the FDA's

4  requirements for what dissolution rate constitutes a rapidly dissolving acetaminophen gelcap/tablet.  As

5  long as the claim "imposes a 'requirement' that is at variance with FDA regulations, it is preempted."

6  *See Carter v. Novartis Consumer Health, Inc.*, 582 F. Supp. 2d 1271, 1283 (C.D. Cal. 2008).  Plaintiff's

7  claims are preempted under § 379r.  First, Plaintiff's claims unquestionably "relate to the regulation" of

8  an OTC drug.  Plaintiff's claims are premised on the labeling of an OTC drug: acetaminophen.  That is

9  the exact area of regulation encompassed by the FDA regulatory scheme described below.

10  Second, Plaintiff's claims would have the FAL, the UCL, the CLRA, the Song-Beverly

11  Consumer Warranty Act (Cal. Civ. Code § 1790) (the "Song-Beverly Act"), and the Uniform

12  Commercial Code (the "UCC") set out additional and different labeling requirements and standards for

13  the OTC drug at issue here.  Importantly, for express preemption under Section 379r for the claims

14  asserted here, it is not required for a defendant to show that it would be impossible to comply with both

15  the federal law and the state law. [6]  Instead, all that is required is to show that the purported state law

16  requirements would be "in addition to," or "not identical to" the federal requirement.  According to

17  Plaintiff, Rite Aid's labeling of the Rite Aid Products is false, misleading and/or deceptive.  For this to

18  be the case, these statutes would apparently require an OTC drug to be the *fastest* release requirement,

19  in order to utilize a label bearing the term "rapid release," or require the label to say "rapid release but

20  other products may be more rapid."  Indeed, Plaintiff's Prayer for Relief requesting "Rite Aid to

21  adequately represent the true nature, quality, and capability of the" Rite Aid Products, as well as

22  seeking an order for "a nationwide recall" and the issuance of "warnings and/or notices to consumers"

23  regarding the Rite Aid Products' qualities[7] demonstrates the degree to which Plaintiff's claims

24  impermissibly intrude on an area that Congress empowered FDA to regulate.

---

26  [6] Notably, Section 379r contains a carve-out for products liability claims.  Therefore, a defendant

27  seeking to preempt a state law products liability claim would have to show "conflict" or "impossibility" preemption, *i.e.*, that it would be impossible to comply with both FDA labeling requirements and state

28  law requirements.

[7] FAC. at p. 31.

Rite Aid's Motion to Dismiss
Case No. 4:18-cv-06926-YGR

Thus, there can be no doubt that the state law claims asserted by Plaintiff would add additional and/or different requirements to the labeling of OTC drugs than those required by the federal regulatory scheme. Such an express preemption extends beyond state regulations and regulatory actions, and covers both common law and state law claims by private plaintiffs. *See Carter*, 582 F. Supp. 2d at 1281-1283. In *Carter*, the court granted the defendant's motion to dismiss after finding all of the plaintiff's claims were preempted by section 379r. The court noted that the Supreme Court has held that in the context of statutory preemption, claims under state law and common law—such as those asserted here—may be preempted. *Id.* at 1281 (citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 521 (1992)). The court in *Carter* also acknowledged the Supreme Court's "particularly broad view" of what state law "requirements" meant. *Carter*, 582 F. Supp. at 1281 (citing *Riegel v. Medtronic*, 552 U.S. 312 (2008) (ruling plaintiff's state law claims based on, *inter alia*, defendant's marketing and sale of a medical device were expressly preempted under § 360k(a) of the FDCA, a parallel preemption statute virtually identical to § 379r for medical devices)). Finally, the court in *Carter* noted that:

> The touchstone for preemption under § 379r is the *effect* that a finding of liability on a particular claim would have on the Defendants, and not the particular common law or state law theory upon which that claim was brought. As long as that claim imposes a "requirement" that is at variance with FDA regulations, it is preempted.

*Carter*, 582 F. Supp. at 1283 (emphasis in original).

Like the claims in *Carter*, the claims here would require Rite Aid to alter its labels to include on those labels statements that are different from what the FDA regulatory scheme requires. In other words, if Rite Aid had any liability under the state law causes of action alleged by Plaintiff, the *effect* on Rite Aid would be to require it to alter its label. As explained below, the FDA regulatory scheme does not require anything different or in addition to the current labeling of the Rite Aid Products.

Further demonstrating the broad preemptive effect of section 379r is *Bowling v. Johnson & Johnson*, where plaintiffs brought state law claims that were not identical to the federal standards. *See* 65 F. Supp. 3d 371, 375 (S.D.N.Y. 2014). The plaintiffs brought an action based on Listerine's representation that using it "restores enamel." *See id.* at 376. However, the FDA had not prohibited such a label and the burden was on the plaintiff to demonstrate the labeling was prohibited by the FDA.

*See id*.  The court found preemption appropriate when a state law prohibits labeling permitted by federal law, and even further, when it varies at all from federal law.  *See id*.  Based on section 379r and the monograph applicable in *Bowling*, the court found these claims to be expressly preempted.  *See id*. In this highly regulated area, "[i]t is up to the FDA" to decide what is false and misleading, not the Court.  *See id*. at 377; *see also Eckler v. Neutrogena Corp.*, 238 Cal. App. 4th 433, 454 (2015) (same).

Applying the express preemption provisions of section 379r, Plaintiff's claims are preempted and should be dismissed.

2.      There Is an Extensive Federal Regulatory Scheme Governing OTC Drugs.

The FDCA prohibits the misbranding of drugs, FDCA §502(a), 21 U.S.C. § 352(a), and the FDA regulates the labeling of OTC drugs.  In particular, 21 C.F.R. § 201.66 contains extensive regulations regarding OTC drug labeling, and applies to "the content and format requirements for the labeling of all OTC drug products.  Where an OTC drug product is the subject of an applicable monograph or regulation that contains content and format requirements that conflict with this section, the content and format requirements in this section must be followed unless otherwise specifically provided in the applicable monograph or regulation."  21 C.F.R. § 210.66(a).  These requirements apply to all OTC drug "labeling."  21 C.F.R. § 210.66(a), (c), (d).  Thus, there exists an extensive federal regulatory scheme enacted by FDA governing every aspect of OTC medication.

Federal regulations have the force of binding federal law and thus, any state law that is inconsistent or distinct from a federal regulation is preempted.  The Code of Federal Regulations contains a detailed section on OTC human drugs which are generally recognized as safe, effective and not misbranded.  *See* 21 C.F.R. Part 330, titled "Over-The-Counter (OTC) Human Drugs which are generally recognized as Safe and Effective."  Under the FDA regulations, the labeling on an OTC drug must be clear, truthful, and neither false nor misleading so that an ordinary individual can understand the meaning.  *See id.* at (a)(4)(v).  Any product that does not conform to the approved specifications is subject to regulatory enforcement action.  *See id.* at 330.10(b).

Additionally, FDA has regulated the Rite Aid acetaminophen gelcaps through a tentative final monograph and official FDA guidance.  Furthermore, the tentative final monograph incorporates the dissolution testing methodology and dissolution standards for acetaminophen Immediate Release

Tablets[8] contained in the USP, as explained below.

a. *The FDA Monograph*

As part of its regulation of OTC drugs, the FDA in 1988 issued a tentative final monograph.[9] Monographs are applicable to non-prescription drugs such as the Rite Aid Products at issue here, and are issued by FDA.  After going through a detailed review and public rulemaking process, the FDA publishes its conclusions in the Federal Register,[10] at which point the OTC drug monographs are FDA regulations and thus are enforceable by FDA.  *Weinberger v. Bentex Pharmas.*, 412 U.S. 645, 650-51 (1973).  An OTC drug sold pursuant to a monograph must meet "each of the conditions continued in any applicable monograph."  21 C.F.R. § 330.1.  Courts have ruled that FDA monographs have preemptive effect against state law.  *See, e.g. Mills v. Warner-Lambert*, 581 F. Supp. 2d 772, 787 (E.D.T.X, 2015) (holding a plaintiff's claims regarding labeling of OTC drugs were preempted by FDA monograph); *see also Bowling*, 65 F. Supp. 3d at 376-77 (same).  Additionally, FDA has brought enforcement actions on the basis of monographs, as detailed in section A.2.d below.

The FDA issued a tentative final monograph for certain OTC drugs, including those which contain acetaminophen, in 1988.  *See* 21 C.F.R. § 343 ("Internal Analgesic, Antipyretic, and Antirheumatic Drug Products for Over-the-Counter Human Use") (the "1988 TFM").  A tentative final monograph establishes "conditions under which a category of OTC drugs or specific OTC drugs are generally recognized as safe and effective and not misbranded."  21 C.F.R. § 330.10(a)(7).  Objections to the tentative final monograph must be submitted within 12 months of it being published and an oral committee hearing is held.  *See* 21 C.F.R. §§ 330.10(a)(7)(iii), (a)(8).  Subsequently, a final monograph should be published after a review of the record and suggestions.  *See* 21 C.F.R. § 330.10(a)(9).  Any product that does not conform "to an applicable monograph after its effective date is liable to regulatory action."  21 C.F.R. § 330.10(b).  While the FDA has not issued a final monograph for OTC

---

[8] As noted in n.1, *supra*, gelcaps are simply tablets that are coated in gelatin or a similar substance, and are subject to the same dissolution testing methodology and standards as all Immediate Release tablets.
[9] U.S. Food and Drug Administration, *Over-the-Counter (OTC) Drug Monograph Process*, available at https://www.fda.gov/drugs/developmentapprovalprocess/howdrugsaredevelopedandapproved/ucm317137.htm (last accessed Feb. 4, 2019).
[10] *Id.*

Rite Aid's Motion to Dismiss
Case No. 4:18-cv-06926-YGR

acetaminophen products, *a tentative final monograph such as the 1988 TFM has the force and effect of a final monograph.*  This is because FDA regulations state that when an over the counter drug monograph "has not been finalized and finalization is not imminent…the agency may publish a notice of enforcement policy that allows marketing to begin pending the completion of the final monograph…."  21 C.F.R. § 330.14(h).  Indeed, the 1988 TFM has been treated as an enforceable legal requirement by FDA.  *See* American Family Pharmacy Warning Letter, discussed in section A.2.d below; s*ee also Eckler*, 238 Cal. App. 4th at 459 (finding implied preemption where labeling complied with FDA tentative final monograph).

The 1988 TFM specifies requirements for the active ingredients (§ 343.10), labeling (§ 343.50), labeling of permitted combinations of active ingredients (§ 343.60), professional labeling (§ 343.80), and testing procedures (§ 343.90).  According to the 1988 TFM, labels are required to state the product's identity, list appropriate indications as provided in the monograph, label for children, and include warnings and directions.  *See* 21 C.F.R. § 343.50.  Most importantly here, the 1988 TFM requires the testing procedures for acetaminophen and aspirin tablets to meet the dissolution standard as contained in the USP, which are described below.  *See* Fourth Interim Revision Announcement <711> Dissolution, U.S. Pharmacopeia (last revised Nov. 21, 2016), available at https://www.usp.org/sites/default/files/usp/document/harmonization/gen-method/q01_pf_ira_33_4_2007.pdf (last accessed Feb. 4, 2019).

> b.    *FDA Guidance*

FDA has also regulated the testing methodology and dissolution standards for OTC acetaminophen tablets through two FDA Guidances.  These Guidances are Dissolution Testing and Acceptance Criteria for Immediate-Release Solid Oral Dosage Form Drug Products Containing High Solubility Drug Substances, Guidance for Industry, U.S. Dept. of Health and Human Services Food and Drug Administration (Aug. 2018) (the "Dissolution Testing Guidance"); and the Waiver of In Vivo Bioavailability and Bioequivalence Studies for Immediate-Release Solid Oral Dosage Forms Based on a Biopharmaceutics Classification System, Guidance for Industry (December 2017) (the "In Vivo Immediate-Release Guidance").

An FDA guidance contains the FDA's detailed description of the federal law, and such

guidance has been interpreted by courts to preempt state law. *See Degelmann v. Advanced Medical Optics, Inc.*, 659 F.3d 835 (9th Cir. 2011); *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, 142 F. Supp. 3d 747 (N.D. Ill. 2015). In *Degelmann*, applicable FDA guidance addressed specific requirements for contact lens solutions to be called a "disinfecting" solution. *See Degelmann*, at 841-42. The contact lens solution at issue met the FDA requirements for "disinfecting" contained in the Guidance. *Id.* at 842. The plaintiff in *Degelmann* alleged that the product's packaging and labeling was false and misleading because the solution did not disinfect against a certain strain of bacteria. *Id.* The Ninth Circuit found that a requirement that the product must meet an additional standard in order to utilize the term "disinfecting" would necessarily mean that the California UCL and FAL "would have a requirement that is additional to the federal requirements." *Id.* Thus, the Ninth Circuit found that the UCL and FAL were preempted. *See also In re Testosterone Replacement Therapy Prods.* at 754 (granting a motion to dismiss where the court relied on the FDA's labeling guidance in ruling that manufacturers are prohibited from altering warning labels under federal law).

Courts have interpreted FDA guidance to establish legally enforceable requirements. *See Degelmann*, 659 F.3d at 841-42; *see also United States ex rel. Modglin v. DJO Global Inc.*, 48 F. Supp. 3d 1362, 1379-80 (C.D. Cal. 2014) (judicially noticing FDA guidance). The Dissolution Testing Guidance establishes the standard dissolution methodology and criteria for highly soluble drug substances. *See* p. 2. The Dissolution Testing and Acceptance Criteria Guidance states that in order for oral drug products with a high solubility to be considered "immediate release," the dissolution rate must be 80% in 30 minutes. *See id*. at 5. Further FDA guidance on solubility testing and standards is contained in the Waiver of In Vivo Immediate-Release Guidance, which defines an acetaminophen tablet as being "rapidly dissolving" when a mean of 85% or more of the drug substance dissolves within 30 minutes. *See In Vivo Immediate-Release Guidance* at 3. Such a product is considered "very rapidly dissolving" if a mean of 85% or more dissolved within 15 minutes. *See id*. This Guidance explains how to determine a substance's permeability class and dissolution characteristics, in addition to what data supports high solubility, permeability and rapid release. *See id*. at 5-9, 13-14.

Thus, while the FAC alleges that the Rite Aid Products are falsely labeled as "Rapid Release," this allegation is contradicted by the FDA standards. The Rite Aid Products easily comply with these

1
2
3

FDA requirements, as according to the Study relied on in Plaintiff's FAC, the Rite Aid Product tested averages the 80% dissolution within just over nine (9) minutes—more than three times faster than the rate required by the FDA.

4

      c.     *The USP Dissolution Standards for Acetaminophen Immediate Release Tablets*

5
6
7
8

The 1988 TFM specifically references and incorporates the USP[11] provisions for the testing methodology and standards for immediate release acetaminophen tablets.  The USP dissolution testing information provides specifications for the testing apparatus, how the testing procedure should be done, and accepted release times for immediate, extended, and delayed release products.[12]

9
10
11
12
13
14
15
16
17
18
19
20

When a drug complies with USP standards, it necessarily meets all the requirements stated in the article's monograph, applicable General Chapters, and General Notices.  *See* USP FAQ.  Additionally, Congress has given USP standards a role in certain misbranding provisions of the FDCA.[13]  *See id.*  The USP is the authoritative standard upon which products are held to a minimum standard, unless the FDA has instituted a stricter specification.  For example, the USP is considered an "authoritative industry reference guide for on- and off-label uses of prescription drugs."  *In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.,* No. MDL 08-1934 PSG AGRx), 2009 U.S. Dist. LEXIS 58697, *11 (C.D. Cal. June 17, 2009).  According to the Study, the Rite Aid Products meet the USP standards for immediate release acetaminophen tablets.  Because Plaintiff's claims purport to regulate OTC drugs, and because they would require something more than the FDA regulatory scheme for OTC drugs, Plaintiff's FAC is expressly preempted by the National Uniformity for Nonprescription Drugs Statute.

21

      d.     *FDA Enforcement of Misbranded OTC Drugs*

22

Using its authority under the FDCA, FDA regulations, the TFM and the USP dissolution

23
24
25

[11] USP is a non-profit, independent organization that sets standards for drugs, dietary supplements and food ingredients *See* FAQs: USP and its Standards, U.S. Pharmacopeia, http://www.usp.org/frequently-asked-questions/usp-and-its-standards (last visited: January 7, 2019) ("USP FAQ").

26

[12] *See* Fourth Interim Revision Announcement <711> Dissolution, U.S. Pharmacopeia (last revised November 21, 2016), https://www.usp.org/sites/default/files/usp/document/harmonization/gen-method/q01_pf_ira_33_4_2007.pdf.

27
28

[13] For example, "[u]nder Federal law, a drug with a name recognized in [USP] must comply with the current version of compendial standards deemed official by USP, or risk being deemed adulterated, misbranded, or both (FDCA 501(b) and 502(e)(3)(b); FDA regulations 21 C.F.R. 299.5(a&b))."

Rite Aid's Motion to Dismiss
Case No. 4:18-cv-06926-YGR

standards, FDA enforces violations of misbranded OTC internal analgesics, including acetaminophen products.  *See* U.S. Food and Drug Administration, OTC Warning Letters, https://www.fda.gov/Drugs/GuidanceComplianceRegulatoryInformation/EnforcementActivitiesbyFDA/ucm285283.htm#internal (last visited January 23, 2019).  For example, one such warning letter accuses the manufacturer of misbranding because the aspirin tablets failed to meet the USP dissolution standard set for in the USP, in accordance with 21 C.F.R. § 343.90(c), i.e., the 1988 TFM.

FDA also tested dissolution on a sample of "Aspirin Enteric Safety Coated Tablets."  It failed to meet the USP dissolution specifications for delayed released tablets in accordance with 21 C.F.R. § 343.90 (c), which states, "aspirin delayed-release tablets must meet the dissolution standard for…aspirin delayed-release tablets as contained in U.S.P, XXI Supplement 3 at page…1973."  Therefore, the product is misbranded under section 502(a) of the Act.  *See* 21 U.S.C. § 352(a).  It is marketed as an enteric coated aspirin tablet without meeting the dissolution testing requirements.  *See* Warning Letter, 2015-DET-17, American Family Pharmacy, LLC 7/30/15, https://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2015/ucm470016.htm (last visited January 23, 2019).  The warning letter threatens the following "legal action":

> You should take prompt action to correct the violations cited in this letter.  Failure to promptly correct these violations may result in legal action without further notice including, without limitation, seizure and injunction.  Other federal agencies may take this warning letter into account when considering the award of contracts.  Additionally, FDA may withhold approval of requests for export certificates, or approval of pending drug applications listing your facility, until the above violations are corrected.  A reinspection may be necessary.

*Id*.  Another FDA warning letter concerning acetaminophen tablets threatened a manufacturer with enforcement action for failing to include the warning required on the product label, and relied on the 1988 TFM as authority for the FDA taking legal action:

> the Acetaminophen products are intended to be used as OTC internal analgesics and antipyretics.  When offered for these uses, acetaminophen is covered by FDA's OTC Drug Review, though it is not yet subject to a final OTC drug monograph.  See Tentative Final Monograph for Internal Analgesic, Antipyretic, and Antirheumatic Drug Products for Over-the-Counter Human Use, 53 Fed. Reg. 46204 (Nov. 16, 1988).  These acetaminophen products are misbranded under section 502(f)(2) of the Act (21 U.S.C. § 352 (f)(2)) because they do not bear all of the warnings presently required for OTC acetaminophen-containing drug products.

Rite Aid's Motion to Dismiss
Case No. 4:18-cv-06926-YGR

Warning Letter FLA-07-02, Direct Dispensing, Inc., 11/02/06, https://wayback.archive-it.org/7993/20170112201616/http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2006/ucm076153.htm (last visited January 23, 2019).

These enforcement actions demonstrate that FDA enforces its authority to regulate the labeling of OTC drugs, including with respect to dissolution standards. FDA has established the rules for dissolution standards of immediate release tablets through regulations, a tentative final monograph that incorporates the USP dissolution standards, and through formal Guidance. Any failure by Rite Aid to comply with these FDA rules with respect to the labeling of the Rite Aid Products would expose it to potential enforcement action by FDA.

        e.     *FTC Enforces OTC Drug Advertising*

The Federal Trade Commission also promulgated standards for regulating "Advertising for Over-the-Counter Drugs." 46 Fed. Reg. 24584 (May 1, 1981). In addition to setting out standards for advertising, the regulation directs that the FTC will bring an enforcement action "whenever necessary to insure the accuracy of OTC drug advertising … where appropriate, before a final FDA monograph is in place." *Id.* at 24585. The FTC has exercised this power and enforced its standards in cases where advertisements were actually misleading. *See In re Thompson Medical Co.*, 104 F.T.C. 648 (1984) *aff'd*, 791 F.2d 189, 193 (D.C. Cir. 1986) ("The FTC has substantial expertise in evaluating claims of drugs' absolute and comparative efficacy, and in assessing whether advertisements are misleading or deceptive."). Moreover, FTC has "special expertise" to determine "what sort of substantiation is necessary to assure that [OTC Drug] advertising is not deceptive." 791 F.2d at 194-96. Further, FDA made its concerns regarding OTC drug advertising "known to the FTC" while the FDA regulated the drugs' labeling. *See* 1988 TFM. To the extent any claim concerning the labeling of the Rite Aid Products could be made, it should be made by those Federal regulatory authority, not Plaintiff.

**B.**    **If Plaintiff's Claims Are Not Preempted, They Should Be Dismissed Under the Doctrine of Primary Jurisdiction.**

The Court should dismiss the FAC under the doctrine of primary jurisdiction because the central issue in this case—the meaning of the term "rapid release"—is within the regulatory authority and oversight of the FDA, the federal agency vested with jurisdiction over this issue. The primary

1
2
3
4

jurisdiction doctrine is invoked by a court when "an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

As reflected in the extensive regulatory scheme described above, FDA has jurisdiction to enforce (and does enforce) the labeling requirements for OTC drugs, including the Rite Aid Products. While Rite Aid believes these FDA regulations and dissolution standards are unambiguous and that Plaintiff's claims would require actions different to or in addition to what the FDA has prescribed under section 379r, to the extent the Court were to disagree, it should dismiss the FAC and defer to FDA to clarify or determine any such ambiguity in the regulations and to take any enforcement action FDA believes appropriate under the doctrine of primary jurisdiction.  The use of the words "rapid release" based on dissolution time for acetaminophen tablets or gelcaps should be left to FDA, and not to the courts.  *See Gisvold*, 62 F. Supp. 3d 1198, 1203 (S.D. Cal. 2014).  Relevant to the present case, under the doctrine of primary jurisdiction, courts must defer to an administrative agency when the issue involves technical considerations and is within the agency's discretion.  *Id*.  A complex dissolution rate is clearly within the technical realm, and under section 379r, the FDA has discretion to regulate OTC drugs.  If it is deemed not to have done so, the FDA should have the opportunity "to make [the] initial determination on issues within its statutory mandate" and consequently, the case should be dismissed for lack of primary jurisdiction.  *Id.* at 1204 (quoting 21 C.F.R. § 10.25)

20

      **C.**      **Plaintiff Fails to State a Claim Under California Consumer Protection Statutes.**

21
22

      1.      <u>Plaintiff Fails to Plausibly Allege that the Use of the Term "Rapid Release" or "Fast Release" on the Rite Aid Products Is False, Deceptive, or Misleading</u>

23
24
25
26
27
28

Plaintiff's UCL, FAL, and CLRA claims should be dismissed for failure to state a claim because Plaintiff has not plausibly alleged that the use of the words "rapid release" on the Rite Aid Products labels are false, deceptive, or misleading.  To avoid dismissal, Plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  This "context-specific task … requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Plaintiff's UCL, FAL, and

Rite Aid's Motion to Dismiss
Case No. 4:18-cv-06926-YGR

CLRA claims (Counts I through III) are all premised on the allegation that Rite Aid falsely and misleadingly labeled the Rite Aid Products as "Rapid Release."  As has been shown above, however, this assertion is simply incorrect.  The allegations of the FAC, the Study Plaintiff relies on, and governing FDA regulations and Guidance *conclusively* prove that the Rite Aid Products *are* "Rapid Release."  Thus, Plaintiff's complaint belies the very Study that it is based on, making it implausible that Plaintiff's claims could entitle him to any relief.  Plaintiff's misrepresentation-based UCL, FAL and CLRA claims also fail to comply with Rule 9(b)'s particularity pleading standard for claims of fraud and deception.  *In re iPhone 4S Consumer Litig.*, 637 F. App'x 414, 415 (9th Cir. 2016) (applying Rule 9(b) to claims under California's consumer protection statutes because they are "grounded in fraud").  As in *Carter*, Plaintiff has only alleged that Rite Aid "knew or should have known" that the Rapid Release label was false and misleading (*see, e.g.,* FAC ¶ 69), but "provide no details of the alleged fraud."  *Carter,* 582 F. Supp. 2d at 1289.

Plaintiff's inability to state a claim against Rite Aid is highlighted by his allegation that the Rite Aid Products label, at most, "suggests" (not states) to consumers that Rite Aid brand extra strength acetaminophen gelcaps work faster than other Rite Aid acetaminophen products.  (*See* FAC, ¶¶ 71, 106.)  In this manner, Plaintiff's entire case is predicated on reading into the Rite Aid Products label claims and representations that are not there.  As the product label illustrates, Rite Aid makes no comparative claim or superiority claim about the Rite Aid Products—the label only says "Rapid Release" or "fast release."  (FAC, ¶¶ 5-6, 55-56.)  There is no basis to challenge this statement—which is demonstrably true and in compliance with FDA requirements and industry standards—by alleging that the words "rapid release" mean that *all* or even some *other* products may be "less rapid."

This very issue was addressed in *Dabish v. MusclePharm Corp.*, where the plaintiff alleged that the drug manufacturer's claim about the benefits of a certain compound were false or misleading.  2016 U.S. Dist. LEXIS 191885.  The plaintiff in *Dabish* cited to a study which concluded that the seller's compound was "not more effective" than a different compound.  *Dabish* at *24-25.  Regardless of the compounds' relative qualities, the *Dabish* court found that "none of the Class Product labels make any comparative representations between" the two compounds, and characterized the plaintiff's claims as comparing apples to oranges.  *Id.* at *25-26.  Moreover, the *Dabish* court found that while the

complaint *alleged* that the manufacturer marketed the compound as "having 'some benefit'" over the other, it was evident that "no such statements appear on any of the Class Product labels." *Id.* at *28. The court concluded that the studies cited in the complaint failed to "demonstrate the falsity of any of the alleged false statements on the Class Product labels," and dismissed the complaint pursuant to both rules 12(b)(6) and Rule 9b). *Id.* at *26 (citing *Murray v. Elations Co., LLC*, No. 13-CV-02357-BAS WVG, 2014 U.S. Dist. LEXIS 107721, at *7) (S.D. Cal. Aug. 4, 2014) ("the cited studies must have a bearing on the truthfulness of the *actual representations made by Defendants*.") (emphasis added).

*Dabish* is instructive and on point.  Just like the plaintiff in *Dabish*, Plaintiff attempts to read claims into the product label which do not exist.  Nowhere in the entire FAC does Plaintiff identify *any* claims on the labeling of the Rite Aid Products which compare the efficacy, quality, or dissolution rate of the Rite Aid Products to uncoated tablets or any other products.  Rather, the only statement or marketing attributed to the Rite Aid Products is that the label says "rapid release" or "fast release." (*See* FAC, ¶¶ 5-6.)  The Study cited in the FAC does *not* disprove the labeling of the Rite Aid Products as "rapid release."  To the contrary, the Study *proves* that the Rite Aid Products are "rapid release."

Moreover, as shown above, the Study cited in Plaintiff's FAC in fact *does* substantiate the "Rapid Release" claim as it shows the Rite Aid Products easily satisfy the FDA standard and guidance for rapid release.  "To avoid dismissal as a lack of substantiation claim, the [complaint] must allege specific studies demonstrating the falsity of these alleged statements."  *Dabish*, at *23.  In other words, in order to allege a valid claim, Plaintiff's FAC must point to studies which prove that the phrase "Rapid Release" is false.  Here, however, Plaintiff has done the exact *opposite*.  The only source mentioned in the FAC—the Study—*proves* that the Rite Aid Products achieve a rapid release rate.

In any event, Plaintiff's reliance on the Study to claim that the Rapid Release label is not scientifically supported makes a "lack of substantiation" claim for the "Rapid Release" label, which Plaintiff does not have standing to make.  *See Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (holding that "neither the UCL nor the CLRA provides [a plaintiff] with a private cause of action to enforce the substantiation provisions of California's unfair competition or consumer protection laws."); *Route v. Mead Johnson Nutrition Co.*, No. CV 12-7350-GW (JEMx), 2013 U.S. Dist. LEXIS 35069, at *4 (C.D. Cal. Feb. 21, 2013) ("Defendant is undoubtedly correct that Plaintiff may not base

Rite Aid's Motion to Dismiss
Case No. 4:18-cv-06926-YGR

her claims on any purported lack of substantiation."); *National Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*, 107 Cal. App. 4th 1336, 1344 (Cal. App. 2003) ("Prosecuting authorities, but not private plaintiffs, have the administrative power to request advertisers to substantiate advertising claims before bringing actions for false advertisement, but the prosecuting authorities retain the burden of proof in the false advertising actions.").[14]  Plaintiff cannot sustain a claim for false advertising without alleging that scientific evidence expressly *refutes* the actual claim made by the product's packaging.  "A claim can survive a lack of substantiation challenge by, for example, alleging studies showing that a defendant's statement is false.  In contrast, a plaintiff's reliance on a lack of scientific evidence or inconclusive, rather than contradictory, evidence is not sufficient to state a claim." *Id.*  But, where a complaint does not allege studies demonstrating the actual statements on a pharmaceutical's label are false, that complaint fails to state a claim. *Dabish*, 2016 U.S. Dist. LEXIS 191885, at *23.

Finally, while the Rite Aid Products label description of "rapid release" is truthful and accurate, and in no way false or misleading, to the extent the Court were to find otherwise, it should still dismiss the FAC under the "mere puffery" doctrine.  In *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242 (9th Cir. 1990), the Ninth Circuit was unwilling to make the leap that a general claim about a product or service made a specific comparison, and instead found the statement to constitute puffery.  The Ninth Circuit came to this conclusion based at least in part upon the decision in *Smith-Victor Corp. v. Sylvania Electric Products, Inc.*, 242 F. Supp. 302 (N.D. Ill. 1965).  In that case, the court found that "[a]dvertising which merely states in general terms that one product is superior is not actionable." *Id.* at 308.  The *Smith-Victor* court, however, held that specific statements about the products such as "35,000 candle power and 10-hour life" were potentially actionable. *Id.* at 308-309.  Having found no such claims in the case before it, the Ninth Circuit affirmed dismissal.

In this case, Plaintiff asks this Court to make the same type of leap that the Ninth Circuit was

---

[14] *See also Bronson v. Johnson & Johnson, Inc.*, No. C 12-4184 CRB, 2013 U.S. Dist. LEXIS 54029, at *22 (N.D. Cal. Apr. 16, 2013) ("Claims that rest on a lack of substantiation, instead of *provable falsehood*, are not cognizable under the California consumer protection laws.") (emphasis added); *Stanley v. Bayer Healthcare LLC*, No. 11-CV-862 IEG (BLM), 2012 U.S. Dist. LEXIS 47895, at *9 (S.D. Cal. Apr. 3, 2012) ("Private individuals may not bring an action demanding substantiation for advertising claims.").

Rite Aid's Motion to Dismiss
Case No. 4:18-cv-06926-YGR

1    unwilling to make:  to decide that "rapid release" means the product releases more rapidly than any
2    other product, or even a specific product.  Perhaps if the Rite Aid Products had labels which said
3    "dissolves in five minutes" or "dissolves faster than standard acetaminophen tablets" or "the fastest
4    dissolving acetaminophen product," such statements might be actionable.  But a general statement like
5    "rapid release" is nothing more than "puffery" under the Ninth Circuit's reasoning in *Cook, Perkiss*.

6              2.     Plaintiff Has Failed to Allege a Duty to Disclose to Support a Concealment Claim

7              Because the truthful product package labeling effectively guts Plaintiff's claims predicated on
8    any affirmative misrepresentation, deception, and/or fraud, Plaintiff attempts to build a case for
9    concealment based on the notion that Rite Aid did not disclose that the Rite Aid Products allegedly
10   work slower than other non-rapid release acetaminophen Rite Aid products.  (FAC, ¶¶ 15, 101, 106-
11   107.)  For non-disclosure to be actionable, there must be a legal duty to disclose in the first place.
12   "Absent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of
13   the UCL."  *Berryman v. Merit Property Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007) (failure to
14   disclose detailed listings or breakdowns of specific escrow charges comprising transfer or document
15   fees did not violate the UCL).  "This is because a consumer is not 'likely to be deceived' by the
16   omission of a fact that was not required to be disclosed in the first place."  *Buller v. Sutter Health*, 160
17   Cal. App. 4th 981, 985-988 (2008) (plaintiff failed to state claim under UCL fraud prong because
18   patients had no reasonable expectation of receiving disclosures regarding "prompt-pay" discount
19   policy).

20             Plaintiff has not plausibly alleged any facts that demonstrate that Rite Aid had a duty to disclose
21   to Plaintiff and other consumers that other products worked faster merely because it used the words
22   "rapid release" on the Rite Aid Products label.  For instance, Plaintiff cannot point to any law that
23   requires the heightened level of disclosures they seek or the specific language they want in the product
24   label. So instead, Plaintiff tries to manufacture a duty by alleging that Rite Aid was in a superior
25   position to know the "true facts" about the Rite Aid Products.  (*Id.* at ¶ 106.)  But superior knowledge
26   regarding a product alone does not give rise to a legal duty to disclose. *Warner Constr. Corp. v. City of
27   Los Angeles*, 2 Cal. 3d 285, 294 (1990) (finding that the duty to disclose facts arises if a person
28   undertakes to speak, so that the speaker is bound not only to tell the truth but also not to suppress or

Rite Aid's Motion to Dismiss
Case No. 4:18-cv-06926-YGR

conceal facts within speaker's knowledge that *materially qualify* those stated, because one who speaks at all must make a full and fair disclosure); *Brownlee v. Vang*, 235 Cal. App. 2d 465, 477 (1965) (same).  Because the language of the Rite Aid Products label is sufficiently clear and accurate, the failure to use Plaintiff's comparative description, which is not required by law, is not conduct that is "likely to deceive" consumers.  More to the point, the factual allegations in the FAC do not support the creation of an affirmative duty to make the specific disclosures sought by Plaintiff.

### D.   California's Safe Harbor Doctrine Bars Plaintiff's FAL, UCL and CLRA Claims

A separate and independent reason for dismissing Plaintiff's claims under the UCL, FAL and CLRA as a matter of law is that they are barred by the California safe harbor doctrine because Rite Aid has complied with the FDA's regulatory scheme for using the words "rapid release" on the package labeling for Rite Aid Products.  In *Cel-Tech Communications v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163 (1999), the California Supreme Court recognized a common law safe harbor that insulates a defendant from civil liability for conduct compliant with governing legal authority: "Courts may not simply impose their own notions of the day as to what is fair or unfair.…  If the Legislature has permitted certain conduct … courts may not override that determination."  *Id.* at 182.  This safe harbor doctrine applies regardless of whether it is state or federal law that has authorized the conduct at issue.  *Von Koenig v. Snapple Bev. Corp.*, 713 F. Supp. 2d 1066, 1074 (E.D. Cal. 2010).  It likewise applies to regulations—not just statutes.  *Davis*, 691 F.3d at 1166 & n.3.  Since *Cel-Tech*, courts have extended the safe harbor doctrine to apply to CLRA and FAL claims.  *See, e.g. Alvarez v. Chevron Corp.*, 656 F.3d 925, 933-34 (9th Cir. 2011) (applying safe harbor doctrine to a CLRA claim); *Ebner v. Fresh Inc.*, SACV 13-00477 JVS (RNBx), 2013 U.S. Dist. LEXIS 188889, at *4-6 (C.D. Cal. Sept. 11, 2013) (applying safe harbor doctrine to UCL, CLRA, and FAL claims); *POM Wonderful LLC v. Coca Cola Co.*, CV-08-06237 SJ0 (FMOx), 2013 U.S. Dist. LEXIS 33501, at *1-2 (C.D. Cal. Feb. 13, 2013) (applying safe harbor doctrine to UCL and FAL claims).

In *Ebner*, this Court found that a seller of cosmetics had literally complied with an FDA requirement to state the quantity of a product in the package that was sold to the public.  The plaintiff, however, argued that a portion of the lip balm product at issue was not actually accessible to consumers, and therefore the sellers misled consumers with their labels.  The court rejected that

Rite Aid's Motion to Dismiss
Case No. 4:18-cv-06926-YGR

1
2
3
4
5
6

argument, holding that "if the FDA found that stating the net quantity did not provide consumers with proper value comparisons, it could issue further regulations. … But to the Court's knowledge, the FDA has not found it necessary to designate alternative or additional requirements for products such as Defendant's." *Id*. at *13. Because the defendant's claims about its product literally complied with FDA requirements, the court found that the seller's label of net quantity could not be the basis for liability under the UCL, CLRA, or FAL under the "safe harbor" doctrine.

7
8
9
10
11
12
13

Likewise, in *Barber v. Nestle USA, Inc.*, 154 F. Supp. 3d 954 (C.D. Cal. 2015), the plaintiffs complained that the defendant did not provide consumers with sufficient notice of the forced labor that may have been used in a product's supply chain. Carefully considering legislation governing such disclosure, the court held it did not require greater detail. *Id.* at 961-62. The court reasoned that when the authority imposing the applicable rules has considered the question of what must be communicated on the label and has determined the parameters of compliance, a court may not change those parameters because consumers would like communications to be more precise. *Id.* at 962.

14
15
16
17
18

The Rite Aid Products fall squarely within the requirements for a "rapid release" acetaminophen OTC product according to FDA guidance and regulations. As Plaintiff is attempting to "impose [his] own notions of the day as to what is fair or unfair" in terms of using the words "rapid release" based on dissolution standards for acetaminophen products, even after the FDA has made clear determinations in the area, the California safe harbor doctrine bars Plaintiff's UCL, FAL, and CLRA claims.[15]

19

### E.    Plaintiff Fails to State a Claim for Breach of Implied and Express Warranty.

20
21
22
23
24

Plaintiff's claims for breach of warranty must be dismissed because the FAC does not plausibly allege that Rite Aid breached any warranty with regards to the Rite Aid Products. Plaintiff's claims of breach of implied warranty of merchantability—under the Song-Beverly Act and the UCC—are based on Plaintiff's allegation that the Rite Aid Products violate an implied warranty "in that the Class Rapid Release Gelcaps do not rapid release [sic] or provide rapid relief faster than cheaper, non-rapid release

25
26
27
28

---

[15] *See Davis,* 691 F.3d at 1165 (affirming dismissal of UCL claim based on allegedly misleading advertising because complained-of conduct was permitted by governing federal regulations); *Perea v. Walgreen Co.*, 939 F. Supp. 2d 1026, 1040 (C.D. Cal. 2013) (dismissing misleading labeling claims because defendant's honey complied with FDA requirements and thus was protected by California's safe harbor doctrine).

Rite Aid's Motion to Dismiss
Case No. 4:18-cv-06926-YGR

acetaminophen Rite Aid products."  (FAC, ¶¶ 128, 139.)

As an initial matter, the Rite Aid Products are "consumables," defined as "any product that is intended for consumption by individuals."  Cal. Civ. Code § 1791(d).  The Song-Berverly Act applies to "consumer goods," however, which explicitly exempts "consumables" from its application.  Cal. Civ. Code § 1791(a).  Therefore, the Song-Berverly Act does not apply to the Rite Aid Products.  *See, e.g.*, *Lanovaz v. Twining North Am., Inc.*, 2013 WL 675929, at *7 (N.D. Cal. Feb. 19, 2013).

The Song-Berverly Act requires that products "[c]onform to the promises or affirmations of fact *on the container or label*."  Cal. Civ. Code § 1791.1, subd. (a) (emphasis added).[16]  The language of UCC § 2-314(2) is nearly identical, requiring that goods "[c]onform to the promises or affirmations of fact made on the container or label if any."  An action for breach of implied warranty under either the Song-Berverly Act or the UCC is confined to the words expressly used by the seller, not the perception of an individual.  The implied warranty of merchantability "does not 'impose a general requirement that goods precisely fulfill the expectation of the buyer.  Instead, it provides for a minimum level of quality.'"  *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 852 (N.D. Cal. Oct. 11, 2012) *quoting American Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1295-1296 (1995).  A product satisfies the implied warranty of merchantability if it is "in safe condition and substantially free of defects."  *Elias*, at 852, quoting *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1303 (2009).

The Rite Aid Products conform to the statements on the label.  The only statements at issue are "Rapid Release" or "fast release."  Contrary to Plaintiff's allegation, the Rite Aid Products are "Rapid Release" by any applicable measurements, and more importantly by specific FDA standards that control.  Plaintiff's allegation that the Rite Aid Products may not dissolve as quickly as certain other products is irrelevant for purposes of this claim, because such comparative language never appears "on the label" at all.

Plaintiff has not alleged any defects which might affect the Rite Aid Products' fitness of use.  The purpose of the implied warranty of merchantability is not to permit a consumer to infer qualities

---

[16] Also note that this Act provides an implied warranty of between 60 days and one (1) year.  Cal. Civ. Code § 1791.1(c).  Therefore, to the extent that Plaintiff's claims seek violations of the implied warranty of merchantability reaching back "[o]ver the last two years," such claims are barred.

Rite Aid's Motion to Dismiss
Case No. 4:18-cv-06926-YGR

1
2
3
about the product which are not actually warranted.  Such a rule would permit endless lawsuits.  Rather, a seller is only responsible for those explicit promises it made regarding its products.  Here, Rite Aid delivered on its rapid release promise.  Accordingly, Plaintiff's breach of implied warranty claims fail.

4
5
6
7
Plaintiff's express warranty claim under UCC § 2-313 rests upon the same allegations, and must also fail.  Once again, Plaintiff alleges the Rite Aid Products "did not conform to the representations and descriptions Rite Aid made to consumers."  (FAC, ¶ 150.)  But the only statements forming the basis for a bargain was that the Rite Aid Products have a rapid release—a true description.

8
### F.    Plaintiff's Remaining Claims Must Also Be Dismissed

9
10
11
12
13
14
15
16
17
18
19
20
21
Finally, Plaintiff's claims for Unjust Enrichment and Declaratory Relief also fail.  In California, "a claim for unjust enrichment cannot stand alone as an independent claim for relief." *Iezza v. Saxon Mortg. Servs*, Case No. 10-03634 DDP (JCGx), 2010 U.S. Dist. LEXIS 108883, at *5 (C.D. Cal. Sep. 28, 2010) *citing Jogani v. Super. Ct.*, 165 Cal. App. 4th 901, 911 (2008).  Where a plaintiff's "unjust enrichment claim is premised on the same alleged course of conduct that underlies her other claims," those claims must be dismissed.  *Id.* at *6.  So too, where a plaintiff fails to plausibly allege that a defendant has committed wrongful conduct that underlies the remainder of her claims, a declaratory judgment claim must also be dismissed.  *King v. Nat'l Gen. Ins. Co.*, 129 F. Supp. 3d 925, 944 (N.D. Cal. Sep. 15, 2015); *see also Kho v. Wells Fargo & Co.*, 2012 WL 324001, at *9 (C.D. Cal. Aug. 6, 2012) (dismissing a plaintiff's declaratory judgment claims which are "duplicative of his other claims," as being "superfluous and unnecessary.").  Plaintiff's unjust enrichment and declaratory judgment claims are derivative and duplicative of their remaining claims, and rest upon the same set of flawed premises, and therefore must be dismissed.

22
### <u>CONCLUSION</u>

23
24
25
26
27
For the foregoing reasons, this Court should dismiss the FAC in its entirety, with prejudice.  Any request by Plaintiff to file another amended complaint should be denied, as re-pleading cannot cure the deficiencies of the FAC.  *See, e.g., Cruz v. Anheuser-Busch, LLC*, Case No.: CV 14-09670 AB (ASx), 2015 U.S. Dist. LEXIS 76027 (C.D. Cal. June 3, 2015) *aff'd* 2017 U.S. App. LEXIS 4673 (9th Cir. Mar. 16, 2017) (denying leave to amend when such amendment would be futile).

28
Therefore, Rite Aid respectfully requests that this Court DISMISS the FAC with prejudice.

Rite Aid's Motion to Dismiss
Case No. 4:18-cv-06926-YGR

DATED:  February 5, 2019              **FOLEY & LARDNER LLP**

/s/ Eileen R. Ridley
Eileen R. Ridley
Joshua R. Parr
Attorneys for Defendant
Rite Aid Corporation.

Rite Aid's Motion to Dismiss
Case No. 4:18-cv-06926-YGR