# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THOMAS BAILEY,** <br> Plaintiff**,** <br> vs. <br> **RITE AID CORPORATION,** <br> Defendant**.** | CASE NO. 18-cv-06926-YGR <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** <br><br> Re: Dkt. Nos. 25, 57 |

Plaintiff Thomas Bailey brings this putative class action against defendant Rite Aid Corporation ("Rite Aid") asserting eight causes of action arising out of defendant's sale and marketing of its over-the-counter rapid release acetaminophen gelcaps.[1] (*See* First Amended Complaint Dkt. No. 15 ("FAC").) Now before the Court is defendant's motion to dismiss plaintiff's FAC for failure to state a claim under Rule 12(b)(6).[2] (Dkt. No. 25 ("MTD").) Having

---

[1] The FAC includes violations of: (1) Cal. Bus. & Prof. Code § 17500 – False Advertising Law ("FAL"); (2) Cal. Bus. & Prof. Code § 17200 – Unfair Competition Law ("UCL"); (3) Cal. Civ. Code § 1761 – Consumer Legal Remedies Act ("CLRA"); (4) Cal. Civ. Code § 17900 *et seq.* – Song-Beverly Consumer Warranty Act ("Song-Beverly"); and claims for (5) Beach of Implied Warranty of Merchantability under Uniform Commercial Code ("UCC") § 2-314; (6) Breach of Express Warranty under UCC § 2-313; (7) Unjust Enrichment; and (8) Declaratory Relief.

[2] In support of its motion to dismiss, Rite Aid requests that the Court take judicial notice of eight documents. (Dkt. Nos. 26 ("RJN").) Specifically, Rite Aid asks that the Court take judicial notice of five documents published by the Food and Drug Administration ("FDA"), a pharmaceutical study by Kaury Kucera, and two documents published by the United States Pharmacopeial Convention ("USPC"). (RJN.) Each of the FDA and USPC documents were published by the FDA and are publicly available on the agencies' websites, and plaintiff refers to the Kucera study in his complaint. (*See* FAC ¶¶ 11, 22, 24, 43, 64, 67.) Accordingly, the Court **GRANTS** Rite Aid's unopposed request for judicial notice. *See Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001) (noting "a court may take judicial notice of matters of public record" and documents whose "authenticity . . . is not contested" and upon which a plaintiff's complaint relies) (internal quotation marks omitted) (alterations in original); *see also U.S., ex rel. Modglin v. DJO Global Inc.*, 114 F.Supp.3d 993, 1008 (C.D. Cal. 2015) ("[C]ourts can take judicial notice of

carefully considered the pleadings and the papers submitted, as well as arguments by counsel during the hearing on May 28, 2019, and for the reasons set forth more fully below, the Court hereby **GRANTS IN PART** and **DENIES IN PART** defendant's motion to dismiss.[3]

### I. BACKGROUND

Plaintiff alleges as follows:

In response to Johnson & Johnson's 2005 release of Tylenol Extra Strength Rapid Release Gels and 2008 release of Tylenol PM Rapid Release Gels, both of which were launched with the promise that the gelcaps were "specially designed" "with holes to allow [for] the release of powerful medicine even faster than before," defendant Rite Aid released its own version of these medications called "Rite Aid Acetaminophen Rapid Release Gelcaps" and "Rite Aid Acetaminophen PM Rapid Release Gelcaps," (collectively, "Rite Aid RR Gelcaps"). (FAC ¶¶ 4-6.)

Since their release, Rite Aid has marketed these medications as comparable to Tylenol Extra Strength Rapid Release Gels even though, they do not contain the unique laser drilled holes of Tylenol Extra Strength Rapid Release Gels. (*Id.* ¶ 8.) The Rite Aid version are nonetheless labeled and advertised as a "rapid release" product. (*Id.*) Additionally, the term "rapid release" does not actually mean that the drug works faster than non-rapid release products. (*Id.* ¶ 9.) Rite Aid has known, or should have known, that non-rapid release acetaminophen products can be equally effective in the same, if not faster, time period than its Rite Aid rapid release products. (*Id.* ¶ 10.) A recent study demonstrates that Ride Aid RR Gelcaps dissolve slower than Rite Aid non-rapid release products. (*Id.* ¶ 11.) Yet, Rite Aid charges a premium for the Rite Aid RR Gelcaps. (*Id.* ¶¶ 12, 45, 48, 50.)

Plaintiff purchased a bottle of Rite Aid Acetaminophen Rapid Release Gelcaps, 100 count, in mid-2018 at a Rite Aid store in Alameda County, California for a price more than the brand's

---

'[p]ublic records and government documents available from reliable sources on the Internet,' such as website run by governmental agencies.").

[3] The Court **GRANTS** defendant's motion for leave to file a response to plaintiff's supplemental authority in support of his opposition to defendant's motion to dismiss. (Dkt. No. 57.)

cheaper non-rapid release acetaminophen products in the same count. (*Id.* ¶ 73.) He purchased the Rite Aid RR Gelcaps "over other Rite Aid brand and other acetaminophen products solely because they were labeled as rapid release and he was seeking 'faster' relief." (*Id.* ¶ 76.) Rite Aid's marketing, labeling and advertising, misled plaintiff to believe that the Rite Aid RR Gelcaps he purchased would provide faster relief than other, cheaper Rite Aid acetaminophen products. (*Id.* ¶ 77.) Had plaintiff known that the Rite Aid RR Gelcaps did not act any faster than traditional, cheaper Rite Aid products, he would not have been willing to pay the premium that he paid for the Rite Aid RR Gelcaps. (*Id.* ¶ 78.) Instead, "he would have purchased a cheaper, just as effective and just as fast acting acetaminophen product." (*Id.*) "The cost of the [Rite Aid RR Gelcaps] exceeded the value of the product and [p]laintiff Bailey did not receive the benefit of the bargain." (*Id.* ¶ 79.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the ground upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." *Id.* at 556–57. Moreover, a plaintiff suing multiple defendants "must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2) . . . ." *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988). "Specific identification of the parties to the activities alleged by the plaintiff[] is required . . . to enable [a] defendant to plead intelligently." *Herrejon v. Ocwen Loan Servicing, LLC*, 980 F. Supp. 2d 1186, 1196 (E.D. Cal. 2013) (internal quotation marks omitted).

A complaint that falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most

3

favorable to a nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion to a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

If a court determines that a complaint should be dismissed, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). In making this determination, a court must bear in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted).

### III. ANALYSIS

Defendant's MTD attacks the FAC on five bases. First, defendant contends that plaintiff's claims are preempted by Section 379r of the Food and Drug Administration Modernization Act of 1996 ("FDAMA"). (MTD at 2 (citing 21 U.S.C. § 379r).) Second, and in the alternative, defendant asserts that the FAC should be dismissed under the doctrine of primary jurisdiction. (*Id.* at 3 n.1.) Next, defendant argues that the UCL, FAL, and CLRA claims fail under Rules 12(b)(6) and 9(b) as well as for failure to allege a duty to disclose with respect to the UCL claim and application of California's safe harbor doctrine. (*Id.* at 3.) Fourth, defendant contends that plaintiff's Song-Beverly Act and UCC claims fail to allege breach of any warranty. Finally, the motion seeks dismissal of the unjust enrichment and declaratory and injunctive relief claims as "derivative and duplicative of his other claims and similarly flawed . . . ." (*Id.* at 4.) The Court

4

addresses each argument in turn.

**A.     Preemption**

Under the Supremacy Clause of Article VI of the Constitution, "state law that conflicts with federal law is without effect." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992). Federal preemption of state law, however, "will not lie unless it is the clear and manifest purpose of Congress." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993) (internal citation omitted). If a federal statue contains an express preemption clause, the plain wording of the clause necessarily contains the best evidence of Congress' preemptive intent. *Id.*

The Natural Uniformity Nonprescription Drugs provision of the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 379r, includes an express preemption provision, which the provides:

> [N]o State or political subdivision of a State may establish or continue in effect any requirement –
> (1) that relates to the regulation of a drug that is not subject to the requirements of Section 353(b)(1) or 353(f)(1)(A) of this Title[4][, in other words, a non-prescription, over-the-counter ("OTC"), drug]; and
> (2) that is different from or in addition to, or that is otherwise not identical with, a requirement under [the FDCA] . . . .

21 U.S.C. § 379r(a).[5] As a threshold issue, the Court considers whether the claims here concern requirements established by a "State or political subdivision of the state." *Id.* The Supreme Court has found, in the context of several different statutory preemption clauses, that third party claims under state law and common law may in fact constitute state "requirement[s]" subject to express preemption. *Cipollone*, 505 U.S. at 521; *Medtronic v. Lohr*, 518 U.S. 470, 503-505 (1996) (preemptive clause in FDCA relating to medical devices) (O'Connor, J., joined by Rehnquist, C.J., Scalia, J., and Thomas, J.) (Breyer, J., concurring in part and concurring in judgment) (forming a majority of Justices that construed the term "requirement" to include actions for negligence and strict liability). Accordingly, the Court finds that plaintiff's claims constitute

---

[4] Section 353(b)(1) addresses prescription drugs that require professional medical supervision, and Section 353(f) covers veterinary prescription drugs. *See* 21 U.S.C. §§ 353(b)(1), 353(f).

[5] The parties do not dispute that acetaminophen is an OTC drug, and therefore, whether the relevant drug is subject to the requirements of Sections 353(b)(1) or 353(f)(1)(A) is not at issue. (Dkt. No. 31 ("Opp.") at 4.)

5

"requirements" within the meaning of Section 379r(a). *See Riegel v. Medtronic*, 552 U.S. 312, 324-26 (2008) (holding that plaintiff's state law claims for strict product liability, implied warranty, and negligent design, testing, inspection, distribution, labeling, marketing and sale of a Class III medical device were preempted by Section 360k(a) of the FDCA and noting that "excluding common-law duties form the scope of [preemption] would make little sense").

Here, plaintiff's claims rely on the contention that defendant misrepresented the effectiveness, in terms of speed of relief, of their OTC acetaminophen products. (*See* FAC.) Plaintiff does not allege that defendant fails to comply with an FDA regulation as it currently exists, so none of their claims are parallel enforcement claims, as suggested in *Riegel*, 552 U.S. at 333 n.1 (Stevens, J., concurring in part and concurring in judgment), would still be allowed. (*See* FAC.) Therefore, the question is whether plaintiff's claims seek relief that lies outside the scope of *the relevant federal requirements*. Plaintiff does not dispute the standard nor does he contend that his claims lie within the scope of the relevant federal requirements. Rather, plaintiff claims that the FDA has not regulated "rapid release" OTC acetaminophen, thus no relevant federal requirements are at issue.

Defendant disagrees, asserting that extensive federal regulatory scheme governs the marketing and sale of OTC drugs. *See* FDCA §§ 502(a), 352(a) (prohibits the misbranding of drugs); 21 C.F.R. § 201.66 (governing OTC labeling). Defendant argues that plaintiff's claims are preempted by (1) a tentative final monograph issued by the FDA in 1988 (the "1988 TFM"); and (2) two FDA guidance documents, namely one regarding Dissolution Testing and Acceptance Criteria for Immediate-Release Solid Oral Dosage Form Drug Products Containing High Solubility Drug Substances, Guidance for Industry, U.S. Dept. of Health and Human Services Food and Drug Administration (Aug. 2018) (the "Dissolution Testing Guidance") and another regarding the Waiver of In Vivo Bioavilability and Bioequivalence Studies for Immediate-Release Solid Oral Dosage Forms Based on a Biopharmaceutics Classification System, Guidance for Industry (December 2017) (the "In Vivo Immediate-Release Guidance") (collectively, "FDA Guidance"). (MTD at 11-14.) The Court addresses both guidance documents.

First, with respect to the 1998 TFM, defendant concedes that the FDA has not issued a

final monograph for OTC acetaminophen products but asserts that "a tentative final monograph such as the 1988 TFM has the force and effect of a final monograph." (MTD at 11-12.) The Court agrees that the 1998 TFM has such force and effect. The FDA regulations state that when an OTC drug monograph "has not been finalized and finalization is not imminent . . . the agency may publish a notice of enforcement policy that allows marketing to begin pending the completion of the final monograph . . . ." 21 C.F.R. § 330.14(h). Additionally, the FDA has treated the 1988 TFM as an enforceable legal requirement. *See* U.S. Food and Drug Administration, OTC Warning Letters. For example, the FDA has issued a warning letter to a manufacturer concerning acetaminophen tablets and threatened enforcement action based on the manufacturer's failure to include the required warning on the product label. Warning Letter FLA-07-02, Direct Dispensing, Inc., 11/02/06. Therein, the FDA relied on the 1988 TFM for authority to take such action. *Id.* On this basis, the Court finds that the 1998 TFM constitutes federal regulation.

Defendant asserts that the 1998 TFM "requires the testing proceeds for acetaminophen . . . tablets to meet the dissolution standard as contained in the USP" document titled "Fourth Interim Revision Announcement, Dissolution" that was last revised in November of 2016 ("USP Document"). MTD at 12 (citing Fourth Interim Revision Announcement <7/11> Dissolution, U.S. Pharmacopeia (last revised Nov. 21, 2016), available at http://www.usp.org/sites/default/files/usp/document/harmonization/gen-method/q01_pf_ira_33_4_2007.pdf) ("USP Announcement")); *see also* 53 F.R. 46204-01, 1988 WL 275236 (F.R.), Proposed Rules, Department of Health and Human Services for 21 C.F.R. Parts 310, 343, and 369, "Internal Analgesic, Antipyretic, and Antirheumatic Drug Products for Over-the-Counter Human Use; Tentative Final Monograph (dated Nov. 16, 1988) (the "1998 TFM") (proposing to revise § 343.90 Dissolution Testing to include a subpart (a) stating "Acetaminophen and aspirin tablets. Acetaminophen and aspirin tablets must meet the dissolution standard for acetaminophen and aspirin tablets as contained in U.S.P. XXI at page 14.")

Defendant describes the dissolution testing information in the USP Document as providing "specifications for the testing apparatus, how the testing procedure should be done, and accepted release times for *immediate*, extended, and delayed release products." (MTD at 14 (emphasis

7

supplied).) Defendant also asserts that because its products meet this standard for *immediate* release acetaminophen tablets, outlined in the USP document and referenced in the 1998 TFM, plaintiff's claims would "require something more" than the FDA regulatory scheme for OTC drugs and are therefore preempted. (*Id.*)

As a preliminary matter, defendant has not met its burden to establish the relationship between the 1998 TFM and the testing procedures and standards in the USP document and, therefore, has not met its burden to establish preemption. *See Perez v. Kroger Co.*, No. 17-cv-02448-ODW (AGR), 2017 WL 3601998, at *7 (C.D. Cal. Aug. 18, 2017) (noting that preemption is an affirmative defense and so it is the defendant's burden to establish that it applies). Moreover, both the 1998 TFM and the USP document as incorporated therein are silent as to dissolution standards for *rapid* release acetaminophen. (*See* 1998 TFM; USP Announcement.) Other FDA publications, including those provided by defendant, suggest that "immediate" and "rapid" are not synonymous and that drugs with "rapid" dissolution are a subset of those categorized as "immediate" release. (*See, e.g.*, RJN, Ex. B at 3 (explaining that "some IR [immediate-release] solid oral dosage forms are categorized as having rapid or very rapid dissolution").) On this basis, the Court finds the 1998 TFM does not preempt plaintiff's claims.

Second, the FDA Guidance provides that in order for oral drug products with a high solubility to be considered "immediate release," the dissolution rate must be 80% in 30 minutes. *See* Dissolution Testing Guidance at 2. Elsewhere, it defines an acetaminophen tablet as being "rapidly dissolving" when a mean of 85% or more of the drug substance dissolves within 30 minutes. *See* In Vivo Immediate-Release Guidance at 3. Defendant represents, and plaintiff does not contest, that the tablets at issue in this litigation comply with this standard – testing averages of 80% dissolution within just over nine minutes. (MTD at 14; Opp. at 7-10.)

Plaintiff counters that this FDA Guidance is covered with disclosures warning that the document is non-binding. (*See, e.g.*, RJN, Ex. A (containing header on every page that document "Contains Nonbinding Recommendations" and noting at the beginning of the document "does not establish any rights for any person and is not binding on FDA or the public").) The Court agrees and finds that the FDA Guidance does not constitute a requirement under the FDCA within the

meaning of the Section 379r(a).[6]  Accordingly, the Court finds that plaintiff's claims are not preempted by any federal regulation and **DENIES** defendant's motion on that basis.

### B.     Primary Jurisdiction

Defendant's primary jurisdiction argument essentially reiterates its defendant's preemption argument, that is, because the FDA has an "extensive regulatory scheme" regarding the labeling of OTC drugs, the Court should dismiss the FAC and "defer to the FDA to clarify or determine any such ambiguity in the regulations and to take any enforcement action FDA believes appropriate[.]" (MTD at 17.)  As an initial matter, defendant's argument does not provide any authority for a court dismissing a complaint under the doctrine of primary jurisdiction where express preemption did not already exist. (*See id.* (citing *Gisvold v. Merk & Co., Inc.*, 62 F.Supp.3d 1198 (S.D. Cal. 2014) (holding that plaintiff's claims were expressly preempted by the FDCA *and* subject to the primary jurisdiction doctrine).)  In *Gisvold*, the court relied on the fact that the issue presented by the claims, the efficacy of sunscreen products with SPF values above 50, had been *pending* before the FDA since 2011, when the FDA issued a proposed rule seeking comment.  Here, the 1988 TFM was issued over thirty years ago and the defendant itself has argued that FDA has treated the 1988 TFM as final rulemaking, suggesting that there is nothing currently "pending" before the FDA on this matter.  Accordingly, the Court finds that primary jurisdiction does not apply and **DENIES** defendant's motion on that basis.

### C.     Plaintiff's Consumer Protection Claims

Defendant presents a number of arguments regarding plaintiff's consumer protection claims. The Court addresses each, in turn.

First, defendant argues that plaintiff's FAL, UCL, and CLRA claims, "are all premised on the allegation that Rite Aid falsely and misleadingly labeled the Rite Aid Products as 'Rapid Release'" and therefore should be dismissed because plaintiff failed to state a claim that plausibly entitles him to any relief and also fails to comply with Rule 9(b)'s particularity pleading standard

---

[6] The opinion upon which defendant relies for the proposition that the Ninth Circuit has interpreted similar FDA guidance to preempt state law, *Degelmann v. Advanced Medical Optics, Inc.*, 659 F.3d 835 (9th Cir. 2011), has been vacated pursuant to Fed. R. App. P. 52(b) governing voluntary dismissal. *Degelmann v. Advanced Medical Optics Inc.*, 699 F.3d 1103 (9th Cir. 2012).

9

for claims of fraud and deception. (MTD at 18.) In particular, defendant cites to the Kucera study upon which plaintiff relies, and the governing FDA regulations and Guidance as "*conclusively* prov[ing] that the Rite Aid products *are* 'Rapid Release.'" (*Id.* (emphasis in original).)

Plaintiff counters that defendant's advertising for and labeling of the Rite Aid RR Gelcaps indicates that the "rapid release" product offers the consumer "faster relief than other, cheaper acetaminophen products, such as the traditional Rite Aid tablets." (FAC ¶¶ 13, 15.) Under California's Consumer Protection Laws, a statement need not necessarily be untrue, if a reasonable consumer could find the statement would be "either actually misleading" or having the "capacity, likelihood, or tendency to deceive or confuse the public." *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Taken in the light most favorable to plaintiff, he has alleged that the labeling of the Rite Aid RR Gelcaps plausibly confuse or mislead the public. Plaintiff alleges that defendant sells Rite Aid RR Gelcaps as an alternative to traditional acetaminophen caplets, which are sold at a lower price and do not contain the "rapid release" language on the label. (*See generally* FAC.) Additionally, plaintiff has alleged that the Kucera study has demonstrated that defendant's higher priced Rite Aid RR Gelcaps dissolve at a slower rate than its lower priced Rite Aid non-rapid release caplets and that the defendant knew (or should have known) that the former is not any faster or more effective than the latter. (FAC ¶ 64.) Moreover, plaintiff has provided the necessary details around the circumstances of the alleged conduct required under Rule 9(b). *See* FAC ¶¶ 45-7; *In re iPhone 4S Consumer Litig.*, 637 F.App'x 414, 415 (9th Cir. 2016) (applying Rule 9(b) to claims under California's consumer protection statutes as grounded in fraud).

Defendant does not provide any support for its assertion that the Kucera study on which plaintiff relies makes "it implausible that [p]laintiff's claims could entitle him to any relief."[7] As noted herein, the 1998 TFM and FDA Guidance relied upon by defendant do not provide regulation for *rapid* release OTC acetaminophen and so cannot, as defendant contends,

---

[7] Additionally, any evaluation of the veracity of plaintiff's claims in light of the results of the Kucera study represents an effort to convert this motion into one for summary judgment.

"conclusively prove" that the Rite Aid RR Gelcaps "are 'Rapid Release.'" (*See*, *supra* III.A.)

Second, defendant argues that plaintiff cannot rely on a "lack of substantiation" argument to support their claim because the study to which plaintiff's point "*does* substantiate the 'Rapid Release' claims as it shows the Rite Aid Products easily satisfy the FDA standard and guidance for rapid release[.]" (MTD at 19.) This argument misconstrues plaintiff's FAC. Plaintiff does not rely on lack of substantiation to make his claims. He merely uses a scientific study as evidence in support of his allegation that the labeling of the Rite Aid RR Gelcaps misled consumers. For the same reason, defendant's argument that plaintiff lacks standing to bring a lack of substantiation claim fails.

Third, defendant asserts that the labeling of and advertisements for Rite Aid RR Gelcaps constitute "mere puffery." (MTD at 20.) The Court disagrees. Unlike the circumstances in *Cook, Perkiss and Liehe Inc. v. Northern Cal. Collection Service Inc.*, upon which defendant relies, plaintiff has asserted facts which would plausibly lead to the conclusion that a reasonable consumer could interpret the Rite Aid labels to contain factual statements upon which he or she could rely. *Compare* FAC *with Cook*, 911 F.2d 242, 245-46 (9th Cir. 1990).

Fourth, defendant argues that plaintiff has not plausibly alleged any facts that demonstrate that Rite Aid had a duty to disclose to customers who bought the Rite Aid RR Gelcaps that other products worked faster, and therefore cannot state a concealment claim. (MTD at 21-22.) In California, "[i]n transactions which do not involve fiduciary or confidential relations, a cause of action for non-disclosure of material facts may arise in at least three instances: (1) the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead; (2) the facts are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff; (3) the defendant actively conceals discovery from the plaintiff." *Warner Constr. Corp. v. City of Los Angeles*, 2 Cal.3d 285, 294 (1990). Thus, plaintiff alleges that defendant represented that the Rite Aid RR Gelcaps were "rapid release" but failed to qualify that statement with the fact that relief would be no more "rapid" than that provided by defendant's non-rapid release products suffice. These allegations satisfy at least one instance described above.

Finally, defendant claims that plaintiff's FAL, UCL, and CLRA claims should be dismissed under California's "safe harbor" doctrine because Rite Aid has complied with the FDA regulatory scheme for using the words "rapid release." (MTD at 22-23.) This argument fails for the same reasons that defendant's preemption argument fails. *See Von Koenig v. Snapple Beverage Corp.*, 713 F.Supp.2d 1066, 1076 (E.D. Cal. 2010) ("[T]he determination of whether federal policy is to be accorded the weight of federal law for purpose of the application of safe harbor rule is analogous to the same determination for the purposes of preemption.") Defendant has not established any federal law or regulation that governs the use of the word "rapid release" with respect to OTC acetaminophen. Accordingly, the Court **DENIES** this portion of defendant's motion.

### D. Warranty Claims

Defendant asserts that plaintiff's warranty causes of action, under the Song-Beverly Act and the UCC, do not plausibly allege that Rite Aid failed to "[c]onform to the promises or affirmations of fact on the container or label." (MTD at 23 (citing Cal. Civ. Code § 1791.1; UCC § 2-314(2)).) The only language to which plaintiff refers are the words "rapid release" and "Compare to the active ingredients in Extra Strength Tylenol Rapid Release Gels" and, thereafter, they make the generalized contention that the Rite Aid RR Gelcaps do not confirm to the promises or affirmations of fact made on the label or in advertising and marketing of the product. (FAC ¶¶ 137-158.)

However, plaintiff fails to refer to or allege that there is actual language on the packaging for defendant's Rite Aid RR Gelcaps (or elsewhere on the product), which actually *promises faster relief*. Nor have the plaintiffs cited to any actual wording which incorporates comparative representations—i.e. faster as opposed to fast, or more rapid as opposed to rapid. (*See generally*, FAC.) To say that a product provides "rapid relief" is like saying it provides "fast relief." It is unclear what the warranty breach would be in that context. Likewise, plaintiff has not alleged that defendant's challenged products do not in fact provide *pain* relief. Accordingly, the Court **GRANTS** this portion of defendant's motion and **DISMISSES** plaintiff's warranty claims with leave to amend.

### E. Unjust Enrichment, Declaratory and Injunctive Relief Claims

Finally, defendant asserts that plaintiff's claims for unjust enrichment and declaratory relief fail because they cannot serve as a standalone claim for relief. Defendant is correct that "in California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). However, "unjust enrichment and restitution are not irrelevant in California law. Rather, they describe the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Id.* (citing 55 Cal. Jur. 3d Restitution § 2). Therefore, "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Id.* (citing *Rutherford Holdings, LLC v. Plaza Del Ray*, 223 Cal.App.4th 221, 231 (2014). Plaintiff alleges that he is entitled to relief because defendant sold the Rite Aid RR Gelcaps to plaintiff "by making false, misleading, and/or deceptive representations about the products' speed and capabilities as compared to Rite Aid's cheaper , non-rapid release acetaminophen products" and "unjustly charged . . . a premium to purchase the" gelcaps and therefore, "obtained monies that rightfully belong" to plaintiff and class members. (FAC ¶¶ 160-162.) This straightforward statement is sufficient to state a quasi-contract cause of action. *See Astiana*, 783 F.3d at 762. Accordingly, the Court **DENIES** defendant's motion with respect to plaintiff's claim for unjust enrichment.

Declaratory relief, on the other hand, remains a form of relief that may be requested in conjunction with a cognizable cause of action, rather than an independent cause of action under California law. *See Sacramento E.D.M., Inc. v. Hynes Aviation Indus.*, No. 13-cv-0288-KJN, 2017 WL 1383289, at *20 (E.D. Cal. Apr. 18, 2017) *reversed in part on other grounds Sacramento E.D.M., Inc. v. Hynes Aviation Industries, Inc.*, 761 Fed.Appx. 678 (9th Cir. 2019). Accordingly, the Court **GRANTS** defendant's motion with respect to this argument and **DISMISSES WITH PREJUDICE** plaintiff's "claim" for declaratory relief.

### IV. CONCLUSION

For the foregoing reasons the Court **GRANTS IN PART** and **DENIES IN PART** defendant's motion to dismiss plaintiff's FAC. By **Monday, September 23, 2019**, plaintiff shall either file a

notice to stand on the FAC or file a SAC amending the breach of warranty claim. Defendant shall file a response fourteen (14) days after the filing.

This Order terminates Docket Numbers 25 and 57.

**IT IS SO ORDERED.**

Dated: September 9, 2019

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**