

**ATTORNEYS AT LAW**

555 CALIFORNIA STREET SUITE 1700
SAN FRANCISCO, CA  94104-1520
415.434.4484 TEL
WWW.FOLEY.COM

WRITER'S DIRECT LINE
415.438.6469
eridley@foley.com
CLIENT/MATTER NUMBER
088816-0103

October 20, 2020

Hon. Yvonne Gonzalez Rogers
United States District Court
Oakland Courthouse, Courtroom 1 – 4th Floor
1301 Clay Street Oakland, CA 94612

        Re:    *Bailey v. Rite Aid Corporation*
               Case No. 4:18-cv-06926-YGR

Dear Judge Gonzalez Rogers,

        Pursuant to paragraph 8.b. of your Honor's Standing Order, the Parties and Valisure LLC submit this Joint Letter regarding Defendant Rite Aid's desire to file a Motion to Compel production from Valisure and Plaintiff of communications between Valisure and Plaintiff, which they contend are part of a non-testifying consulting expert relationship, as well as the consulting agreement they claim governs that relationship.  Rite Aid met and conferred on October 12 with Valisure, and on October 13 with Plaintiff, and could not come to an agreement.

**<u>Rite Aid's Position:</u> If a non-testifying consulting relationship was formed, the parties eradicated it or waived any protection flowing from it when Plaintiff utilized a Valisure study to support his Complaint and opposition to Rite Aid's Motion to Dismiss.**

        Plaintiff Bailey's First Amended Class Action Complaint ("Complaint") alleges that he was deceived into buying Rite Aid Acetaminophen Rapid Release Gelcaps because he believed that the term "rapid release" meant that the products dissolved faster and provided quicker relief than other less expensive acetaminophen tablets.  The Complaint was filed three days after the publication of a study conducted by Valisure entitled Rapid and Fast-Release Acetaminophen Gelcaps Dissolve Slower Than Acetaminophen Tablets (the "Study"), which concluded that the Gelcaps dissolved around one-and-a-half minutes slower than Rite Aid's acetaminophen tablet products.  The Study, which was reported in the media and is presented as an independent published work, is in the lynchpin of the Complaint—which does not otherwise advance any other facts, reasoning, or testing data to support the dissolution rates or to explain why such a comparison was made in the first place.  (*See generally* Dkt. 15).  Moreover, Plaintiff repeatedly cited the Study in his Opposition to Rite Aid's Motion to Dismiss, stating that the Study "demonstrate[s] the false, misleading, and/or deceptive nature of the representation—that the rapid release gelcaps do not work faster than the non-rapid release counterpart," even though nothing on the label of the gelcap makes this claim or comparison.  (Dkt. 31 at 14).  The Court also refers to the Study throughout its ruling on Rite Aid's Motion to Dismiss.  (Dkt. 60).

        After months of delaying Rite Aid's efforts to obtain documents and schedule a deposition so Rite Aid could learn about Valisure's motivations for—and methodologies used in—

AUSTIN        DETROIT        MEXICO CITY        SACRAMENTO        TAMPA
BOSTON        HOUSTON        MIAMI        SAN DIEGO        WASHINGTON, D.C.
CHICAGO        JACKSONVILLE        MILWAUKEE        SAN FRANCISCO        BRUSSELS
DALLAS        LOS ANGELES        NEW YORK        SILICON VALLEY        TOKYO
DENVER        MADISON        ORLANDO        TALLAHASSEE

4842-7667-0415.1



Hon. Yvonne Gonzalez Rogers
October 20, 2020
Page 2

the Study, Valisure belatedly disclosed that it has had a "consulting expert relationship" with Plaintiff's counsel since August 2018, three months before the Study was published and the Complaint was filed. [1] This disclosure came well after Valisure's initial responses denied any relationship with Plaintiff's counsel, and expert experience generally. We also understand that Valisure was instructed by Plaintiff's counsel not to produce any agreement or any communications between the two.[2] In fact, since Rite Aid raised these issues, Valisure has deferred to Plaintiff's counsel to argue the parties' claims of privilege and support their respective withholdings.

As courts in this district have found, Plaintiff's use of the Study—which Valisure conducted and apparently discussed with Plaintiff's counsel for months in advance of its publication—as a centerpiece of his Complaint, and in his opposition to the Motion to Dismiss, should waive any protection that might have been accorded these materials. At the very least, such use calls into question whether this relationship qualifies for the type of consulting relationship the federal rules intend to protect. In *Zeiger v. WellPet LLC*,[3] plaintiffs brought a class claim against dog food manufacturer WellPet claiming its products were contaminated with arsenic, lead, and the chemical Bisphenol A. As here, the plaintiff alleged that "independent lab testing" had found the very contamination that was alleged in the complaint. When WellPet sought discovery seeking the basis for the contamination allegations and information about the independent lab, the plaintiff refused to disclose such materials because they were protected under the consulting expert privilege, citing F.R.C.P. 26(b)(4)(D). Judge Orrick had little trouble dismissing this argument, holding that the plaintiff waived any applicable privilege by citing testing information in the complaint, and by relying on that data to survive a motion to dismiss. *Id.* This is exactly what occurred here. Without using the word "independent," Plaintiff's allegations here clearly portrayed Valisure's Study as an independent one, when in fact Valisure had formed a consulting relationship with Plaintiff's counsel three months prior to the publication of the Study, and Plaintiff's counsel received study drafts and had communications during this period. Moreover, Zeiger cites four additional cases to the same effect.[4]

---

[1] The subpoena to Valisure was issued by this Court and was not objected to by Valisure. Accordingly, the Court can enforce the subpoena and compel Valisure to produce supplemental responsive documents.

[2] Rite Aid also propounded document requests relating to Plaintiff's communications concerning Rite Aid Class Rapid Release Gelcaps or any other acetaminophen products. In responding, Plaintiff stated that it was not interpreting the requests to reach communications and information discussed with consulting experts. However, now with the knowledge that Valisure is being claimed to be a consulting expert, Rite Aid informed Plaintiff that it cannot accept that interpretation. In response, Plaintiff and Valisure have confirmed that their respective positions are aligned and both have refused to produce any agreement and related communications.

[3] No. 17-CV-04056-WHO, 2018 WL 10151156, at *2–3 (N.D. Cal. Apr. 10, 2018).

[4] *See id.*, at *2. *Worley v. Avanquest N. Am. Inc.*, No. C 12-04391 WHO (LB), 2013 WL 6576732, at *5 (N.D. Cal. Dec. 13, 2013) is noteworthy for its observation that no case law suggests "that the protections afforded by Rule 26(b)(4)(B) apply to an expert who has supplied statements, findings, or opinions explicitly relied upon by a party in a pleading or motion rather than to the conventional instance who expert who [sic] merely provides behind-the-scenes assistance to a party with respect to litigation".



Hon. Yvonne Gonzalez Rogers
October 20, 2020
Page 3

During the meet and confer, Plaintiff's counsel claimed that *Zeiger* is distinguishable because the Valisure study was published and in the public sphere, but the relevant question is *why* it was published and whether there was a litigation motive driving that effort. If anything, the publication of the Study is a further waiver of any privilege. Plaintiff has also offered to produce the consulting agreement *in camera* to show it is a genuine consulting agreement. However, the communications between Valisure and Plaintiff's counsel are what would be determinative of whether this was a real consulting relationship and whether the Study Plaintiff relied on was truly independent as portrayed in the Complaint and the pleadings. Thus, any *in camera* review should include these communications. Without this information, Rite Aid's deposition of Valisure will surely be handicapped. Indeed, Plaintiff's and Valisure's contention that Valisure is both a fact witness and a consulting expert witness which status should result in protection of the materials sought proves too much. Valisure is a fact witness that created the basis of the suit after signing a consulting agreement with Plaintiff; it is not an expert who provided a confidential analysis. In short, Rite Aid should be permitted to proceed with its motion.

**<u>Plaintiff's Position</u>: The Consulting Expert Agreement and correspondence between Valisure and Plaintiff's counsel is protected from disclosure under Fed. R. Civ. P. 24(b)(4)(D)(ii).**

It is axiomatic that the "facts known or opinions held by an expert who has been retained or specially employed by another party" is protected from disclosure pursuant to Fed. R. Civ. P 26(b)(4)(D). Only upon a showing of "exceptional circumstances" is a defendant entitled to discover such information. *Animal Legal Defense Fund v. Olympic Game Farm, Inc.*, 335 F.R.D. 404, 406 (N.D. Cal. 2020). In this case, third-party Valisure is, at best, a hybrid fact witness and consulting expert. Thus, it is important to recognize that the discovery at issue here relates solely to Valisure acting in its capacity as a consulting expert. That is, Plaintiff has not objected to Rite Aid obtaining discovery of Valisure as the authors of a published study which proved the factual falsity of Rite Aid's "rapid release" claim for the class products, including examination on the "motivations for—and methodologies used in—the Study…." Rather, Plaintiff objects only to the disclosure of Plaintiff's protected communications and consulting agreement with Valisure.

Here, Rite Aid has categorically failed to demonstrate "exceptional circumstances" to obtain the privileged communications and consulting agreement between Plaintiff's counsel and Valisure.[5] Rather, at its essence, Rite Aid's request for disclosure of privileged materials is based upon nothing more than the untethered hope that counsel was somehow involved in a nefarious scheme to influence the Study and to manufacture litigation. But this unsupported fishing expedition is insufficient to support disclosure of otherwise privileged material. While Rite Aid is entitled to inquire into the scientific soundness of the methods Valisure employed in its study, as it would any

---

[5] Valisure is not a party to this action, and is not within the Northern District of California. Separate counsel for Valisure is not a signatory to this letter, but has asked that we inform the Court that Valisure reserves all rights and remedies as a non-party witness and consulting expert. If Rite Aid wishes to seek enforcement of any supplemental production, it must do so in the District of Connecticut.



Hon. Yvonne Gonzalez Rogers
October 20, 2020
Page 4

third-party, any communications between Plaintiff and his consulting expert are strictly protected work product.

　　　　Perhaps this is why Rite Aid's best authority stands only for the proposition that consulting reports which are relied upon by the party are discoverable – a report which was, in this case, not only already produced in this case, but published, covered by the Washington Post, and attached to Plaintiff's Complaint. In both *Zeiger* and *In re Morning Song Bird Food Litigation*, the primary issue was disclosure of a report itself, which, while referenced in dispositive motions and used to a party's advantage, had not been produced to the other party – and in fact was sought to be withheld. See *Zeigler*, 2018 WL 10151156 at *1 (ordering production of "limited relevant materials," to wit, "lab testing results" relied on in plaintiff's motion to dismiss); *In re Morning Song Bird Food Litig.*, 2015 WL 12791470 at *1 (compelling production of "certain studies conducted by third parties" that was referenced and summarized, to defendant's advantage, in a letter to the U.S. Food and drug Administration). In fact, the Zeigler court specifically exempted privileged communications from its order. *Zeigler*, 2018 WL 10151156 at *3 (noting that while disclosure of report was warranted, the party who engaged the expert has "no obligation to disclose other testing or communication with or opinions by consulting experts beyond that specifically referenced in the [first amended complaint]") (emphasis added). The inaccuracy of Rite Aid's reliance on *Zeigler* is probably best summarized by one of the cases cited therein:

> [A]lthough [the plaintiff] may have put the analysis itself at issue by utilizing it in litigation, there is no indication that its disclosure was done in an incomplete, manipulative, or misleading manner, and none of the ancillary documents that [the defendant] seeks were utilized in the SAC or before the Second Circuit. [The plaintiff] is therefore only required to produce the analysis document referred to in the SAC.

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85, 91 (S.D.N.Y. 2016).

　　　　Counsel for Plaintiff notes that this discovery dispute comes on the heels of Plaintiff's deadline to file a motion for class certification. In order to expeditiously resolve this dispute, and to maintain focus on the critical class certification briefing, counsel for Plaintiff offered to provide the challenged documents for in camera review in order to confirm that counsel did not direct any aspect of the Study. During the Parties' meet and confer, Rite Aid rejected this compromise.[6]

　　　　Respectfully submitted,

/s/ *Eileen R. Ridley*　　　　　　　　　/s/ *Mitchell Breit*
　　　　　　　　　　　　　　　　　　　　*(Filed with my permission)*
Eileen R. Ridley　　　　　　　　　　　Mitchell Breit
Attorneys for Rite Aid Corporation　　　Attorneys for Plaintiff

---

[6] Counsel for Valisure had no additional comments to this letter.