# Exhibit 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9655-GW(FFMx) | Date | August 4, 2020 |
|---|---|---|---|
| Title | *Toya Edwards v. Walmart, Inc.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** IN CHAMBERS - ORDER

　　　　Attached hereto is the Court's Tentative Ruling on Plaintiff's Motion for Class Certification [88]. The Court sets a hearing on the Motion for August 6, 2020 at 8:30 a.m. Counsel are to appear telephonically by contacting the court clerk at javier_gonzalez@cacd.uscourts.gov.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　:　　　　

　　　　　　　　　　　　　　　　　　Initials of Preparer　　JG

<u>*Toya Edwards v. Walmart, Inc.*</u>; Case No. 2:18-cv-09655-GW-(FFMx)
Tentative Ruling on Motion for Class Certification

## I. Background

Plaintiffs Toya Edwards ("Edwards") and Jamal Erakat ("Erkat") (collectively, "Plaintiffs") seek class certification in this putative class action against Walmart, Inc. ("Walmart"), alleging that Walmart made false and misleading statements in connection with its Equate brand of generic rapid-release pain-reliever gelcaps ("Class Rapid-Release Gelcaps"). *See* Mot; CAC.[1] The Court previously dismissed six of Plaintiffs' nine claims in its ruling on Walmart's Rule 12(b)(6) motion and assumes familiarity with that decision. *See* Ruling on Walmart, Inc.'s Motion to Dismiss First Amended Class Action Complaint ("Court MTD Ruling"), Docket No. 50.

Plaintiffs seek class certification for the three surviving claims, all premised on Walmart's allegedly false or misleading advertising practices: (1) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code ("BPC") § 17500 *et seq*; (2) violation of California's Unfair Competition Law ("UCL"), BPC § 17200 *et seq*; and (3) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq*. Mot. at 2. The proposed class consists of "all persons who purchased the Class Rapid-Release Gelcaps in the State of California" during "the fullest period allowed by the law." CAC ¶ 96.

As claimed by Plaintiffs:

> Walmart intentionally markets the Class Rapid Release Gelcaps as comparable to a national brand rapid release product (Tylenol®), labels the Class Rapid Release Gelcaps with the distinguishing "rapid release" feature, prices the Class Rapid Release Gelcaps at a premium, and strategically places the Class Rapid Release Gelcaps next to cheaper, non-rapid release Equate acetaminophen tablets and caplets. Walmart's marketing and pricing ploy creates and encourages consumer belief that the rapid release product is of superior speed and efficacy, as compared to the cheaper, non-rapid release products. Indeed, the undisputed evidence indicates that the rapid release claim is purely a marketing claim, specifically intended to convey the belief of accelerated release.
>
> But this marketing claim is false, deceptive and misleading. Contrary to what Walmart leads reasonable consumers to believe, the Class Rapid Release Gelcaps do not dissolve faster nor do they provide more rapid relief. Rather, testing

---

[1] The following abbreviations are used for the parties' filings: (1) Plaintiffs' Class Action Complaint ("CAC") (Docket No. 20); (2) Plaintiffs' Motion for Class Certification ("Mot.") (Docket No. 86); (3) Walmart's Opposition to Class Certification ("Opp.") (Docket No. 91); (4) Plaintiffs' Reply in Support of Class Certification ("Reply") (Docket No. 104).

1

and evidence shows that the rapid release gelcaps dissolve slower than cheaper, non-rapid release acetaminophen products.

See Mot., Docket No. 86-1 at 8 of 34.

## II.     Legal Standard

The proponent of class treatment bears the burden of demonstrating that class certification is appropriate. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012); *Sali v. Corona Reg'l Med. Ctr.*, 889 F.3d 623, 629 (9th Cir. 2018) ("A representative plaintiff may sue on behalf of a class when the plaintiff affirmatively demonstrates the proposed class meets the four threshold requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation."). Before certifying a class, the trial court must conduct a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of FRCP 23. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996).

FRCP 23 requires the party seeking certification to satisfy all four requirements of FRCP 23(a)[2] and at least one of the subparagraphs of Rule 23(b).[3] *See id.* at 1234. "A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The court is permitted to consider any material necessary to its determination, though it should not go so far as to engage in a trial of the merits. *See id.* at 350-51 (noting that the "rigorous analysis" required at class certification will "[f]requently . . . entail some overlap with the merits of the plaintiff's underlying claim"); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) ("[I]t is not correct to say a district court *may* consider the merits to the extent that they overlap with class certification issues; rather, a district court *must* consider the merits *if they overlap* with the Rule 23(a) requirements.") (emphasis added).

## III.    Discussion

### A. Numerosity

FRCP 23(a)(1) requires a demonstration that "the class is so numerous that joinder of all

---

[2] FRCP 23(a) requires that the party seeking certification show:
(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

[3] Here, Plaintiffs seek certification under either FRCP 23(b)(2) or 23(b)(3).

2

members is impracticable." Fed. R. Civ. P. 23(a)(1). Generally speaking, 40 or more individuals in a proposed class has been considered sufficient to satisfy the numerosity requirement. *See, e.g.*, *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012) ("While there is no fixed number that satisfies the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not."); *Greko v. Diesel U.S.A., Inc.*, 277 F.R.D. 419, 425 (N.D. Cal. 2011).

Walmart does not contest numerosity, and though Plaintiffs do not attempt to estimate the class size, they cite to weekly national sales figures from Walmart for certain rapid-release gelcap products. *See*, *e.g.*, Docket No. 85-3 ("Price Dep."), at 77:23-78:1.[4] This information does not translate easily into a class size number, but it certainly suggests that that number is large enough to satisfy the numerosity requirement. *See, e.g.*, *Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012) ("Between 2005 and 2009, Bayer's national net sales of Men's Health totaled in excess of $189 million, and between 2007 and 2009, its national net sales of Men's 50+ totaled in excess of $39 million. Given these numbers, it is reasonable to assume a sufficient number of individuals purchased the Men's Vitamin's in California to satisfy this requirement."). Given this, the Court finds that Plaintiffs have made an adequate showing of numerosity.

B. Commonality

FRCP 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement has been permissively construed. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Although there must be common questions of law or fact, it is not necessary that all questions of law or fact be common. *See id.* ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."). A single common question may do. *See Dukes*, 564 U.S. at 359. Crucially, "[w]hat matters to class certification . . . is not the raising of common 'questions' − even in droves − but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* at 350 (omitting internal quotation marks) (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131-32 (2009)).

---

[4] The Court is limiting its factual references since the parties have filed certain of their supporting materials under seal.

3

There is at least one important common question here. To state FAL and UCL claims "based on false advertising or promotional practices," Plaintiffs need "'only to show that members of the public are likely to be deceived.'" *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985 (9th Cir. 2015) (quoting *In re Tobacco II Cases*, 46 Cal.4th 298, 312 (2009)). "This inquiry does not require 'individualized proof of deception, reliance and injury,'" *id.* at 986 (quoting *In re Tobacco II Cases*, 46 Cal.4th at 320), and the likelihood of deception is assessed using a "reasonable consumer standard," *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1055 (9th Cir. 2017) (quoting *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015)). "[T]he reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 508 (2003)). Even where the Ninth Circuit has announced that "to establish a fraud claim under the UCL, a plaintiff must demonstrate actual reliance," it has been quick to note that such reliance "'is inferred from the misrepresentation of a material fact.'" *Friedman*, 855 F.3d at 1055 (quoting *Chapman v. Skype, Inc.*, 220 Cal.App.4th 217, 229 (2013)). Similarly, a CLRA claim "'allows plaintiffs to establish materiality and reliance (i.e., causation and injury) by showing that a reasonable person would have considered the defendant's representation material.' The standard 'does not require that class members have a uniform understanding of the meaning of' the challenged representation." *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 612 (N.D. Cal. 2018) (quoting *In re ConAgra Foods, Inc.*, 90 F.Supp.3d 919, 983 (C.D. Cal. 2015), and *Pettit v. Procter & Gamble Co.*, No. 15-cv-02150 RS, 2017 WL 3310692, *3 (N.D. Cal. Aug. 3, 2017)); *see also Ehret v. Uber Techs., Inc.*, 148 F.Supp.3d 884, 901-02 (N.D. Cal. 2015) ("[For a CLRA claim,] reliance can be established on a class-wide basis by materiality.").

The legal questions of whether Walmart's use of the phrase "rapid release" on the packaging for the Class Rapid-Release Gelcaps is likely to deceive members of the public (the FAL and UCL claims) and whether those representations would be considered material by a reasonable person (the CLRA claim) are common questions that will produce answers apt to drive the resolution of the litigation. *See also* Ruling on Plaintiffs' Motion for Class Certification, *Elkies et al v. Johnson & Johnson Serv., Inc. et al*, 17-cv-7320-GW-(JEMx), Docket. Nos. 117-18 (C.D. Cal. Feb. 22, 2018) (finding that plaintiffs demonstrated commonality under FRCP 23(a)(2) in a putative class action alleging FAL, UCL, and CLRA claims against defendant for misleading use

4

of the label "Infants" in some of its pain reliver products). There are also are common factual questions as well, such as what representations were contained on the Class Rapid-Release Gelcaps during the period in question and what the costs-of-goods-sold were for Walmart's Equate acetaminophen products that did not contain the "rapid release" label – the Equate "regular-release" products.

Walmart does not contest that Plaintiffs have met FRCP 23(a)(2)'s requirement, and the Court finds that Plaintiffs have sufficiently demonstrated commonality.

C. <u>Typicality</u>

FRCP 23(a)(3) requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class. "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose . . .." *Id.* (citation and internal quotation marks omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (citation and internal quotation marks omitted); *see also General Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982) ("*Falcon*") (indicating that class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members"). In practice, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457 U.S. at 157 n.13.

Walmart challenges typicality on the basis that neither of the Plaintiffs have standing for the FAL and UCL claims. *See* Opp. at 25-27. The FAL and UCL claims here are based on a fraud theory, and therefore Plaintiffs must demonstrate "actual reliance" to proceed. *Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 326 (2011). Walmart contends that Plaintiffs "did not make the product comparison required for deception to arise in this case under their theory of liability." Opp. at 26. It argues that Edwards's testimony shows that "she bought the Equate acetaminophen gelcaps product based solely on her doctor's recommendation and because it was less expensive than the comparable Tylenol product, thereby having no intention of paying a price premium" *Id.* Similarly, Walmart claims that Erakat testified to having first purchased the Class Rapid-Release Gelcaps "without making a comparison to any other product." *Id.*

5

Contrary to Walmart's claims, Plaintiffs' deposition testimony contains evidence that they made "the product comparison required for deception" in this case. Both Plaintiffs indicated a preference for the "faster" relief that they associated with the Class Rapid-Release Gelcaps. The word "faster" is a comparative term. Edwards, when asked whether she had a preference for gelcaps over other forms (such as tablets), explained that she did prefer gelcaps because "[t]hey work faster." Docket No. 104-16 at 153:21-25. Edwards indicated that her doctor recommended her purchase a rapid-release pain reliever, but insisted that the ultimate decision to purchase the Class Rapid-Release Gelcaps was based both on the recommendation and the fact that "[the Class Rapid-Release Gelcaps] say rapid release."[5] Docket No. 91-15 at 221:8-13. This is consistent with her initial preference for gelcaps getting incorporated into her doctor's recommendation. Similarly, Erakat testified that he "took [the Class Rapid-Release Gelcaps] because I thought it would work faster." Docket No. 101-14 at 125:13-14. For these reasons, the Court believes that Plaintiffs do have standing and meet the typicality requirement.

D. <u>Adequacy</u>

FRCP 23(a)(4) permits the certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class. To determine whether the representation meets this standard, we ask two questions: (1) do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (quotations and citations omitted).

Walmart challenges the second prong, arguing that Plaintiffs both lack: (1) sufficient knowledge about the case; and (2) sufficient credibility. Opp. at 28. It claims that Plaintiffs were not aware of several aspects of the case, such as the current status or the fact that there had been an amended complaint. *See* Docket No. 91-15 at 319; Docket No. 91-17 at 203. However, the Ninth Circuit has set a relatively low bar for the level of knowledge required of class representatives, and a named plaintiff can be an adequate representative if he merely "understands his duties and is currently willing and able to perform them. The Rule does not require more." *Local Joint Exec. Bd of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152,

---

[5] In a consumer class action alleging that food labels were misleading, typicality was found because the named plaintiffs and class members were all exposed to the same purported misrepresentations on the product packaging – "[t]hat Plaintiffs may have considered other factors in their purchasing decisions does not make them atypical." *Astiana v. Kashi Co.*, 291 F.R.D. 493, 502-03 (S.D. Cal. 2013).

6

1162 (9th Cir. 2001). Walmart claims that even this low bar has not been met. It points to Erakat's deposition testimony, where, when asked if he was "aware of any duties that [he has] in that role [of class representative]," he responded "No. I'm not aware of any." Docket No. 91 at 167:18-21. However, the Court notes that this was taken from a heavily excerpted deposition transcript and that it is not clear that Erakat understood the question.[6] Similarly, while Edwards's failure to recall certain details about her purchases and Erakat's responses concerning his past involvement in civil lawsuits are concerning, they are not so sharp "as to jeopardize the interests of absent class members." *Harris v. Vector Mktg. Corp.*, 753 F.Supp.2d 996, 1015 (N.D. Cal. 2010). The Court finds both to be close questions, but ultimately insufficient to justify a denial of class certification. However, if this putative class action does proceed, the Court cautions Plaintiffs' counsel that they must have the class representatives be more involved.

E. Predominance under FRCP 23(b)(3)

Walmart argues that the common questions in this action do not predominate (and in fact are "overwhelmed by") the individualized issues, as required by FRCP 23(b)(3).[7] The predominance analysis focuses on "the legal or factual questions that qualify each class member's case as a genuine controversy" and is "much more rigorous" than FRCP 23(a)(2)'s requirement of commonality. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). It does not involve counting the number of common issues, but weighing their significance. *See, e.g., Sands*, 244 F.3d at 1163 (contrasting the "number *and* importance" of common issues with the "few" and "relatively easy" individualized issues). In addition, the predominance analysis looks, at least in part, to whether there are common issues the adjudication of which "will help achieve judicial economy," further the goal of efficiency, and "diminish the need for individual inquiry." *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 at 939, 944 (quoting and citing *Zinser v.*

---

[6] Plaintiffs' counsel also objected to it, saying "It's been asked and answered 6 billion times, and you're going to make me redirect. . . . You're just muddying the record." Erkat Depo. 167:23-25

[7] "Predominance" requires the court:
"find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
    (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
    (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
    (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
    (D) the likely difficulties in managing a class action.
Fed. R. Civ. P. 23(b)(3).

7

*Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001)). Walmart presents three arguments for why the predominance requirement is not met: (1) Plaintiffs have not adequately shown that a class-wide presumption of reliance for the FAL, UCL, and CLRA claims is warranted;[8] (2) Plaintiffs' damages model does not fit their theory of liability; and (3) the proposed class is overly broad. *See generally* Opp. The Court starts its analysis with the first argument about reliance.

According to Walmart, Plaintiffs have not demonstrated that they are entitled to a class-wide presumption of reliance because they have not offered "common proof showing uniform class member exposure to *both* the Equate acetaminophen gelcaps product label *and* the Equate acetaminophen tablets or caplets products label, which comparison allegedly gives rise to the deception." Opp. at 14. It argues that in a typical case, where a product label is challenged as false or misleading on its face, uniform exposure can be inferred from circumstances similar to those in this action. However, where, as here, the alleged deception arises from a comparison with another product, Walmart argues that Plaintiffs must also show uniform exposure to the baseline product – here, the Equate regular-release acetaminophen products that did not have the "rapid release" label.

The Court disagrees with Walmart, and finds that class-wide exposure can be presumed here. As Plaintiffs note, regular-release acetaminophen products are "one of the most ubiquitous over the counter medications and [are] stocked immediately adjacent to the rapid-release products." Reply. at 7. The Court finds it implausible that the proposed class members would have had materially different exposures to the Equate regular-release products.[9] Furthermore, the Court does not find Walmart's distinction between representations that are allegedly misleading

---

[8] Under the UCL, although named plaintiffs must demonstrate that they have suffered an injury in fact by pleading and proving actual reliance and the loss of money or property, for the rest of the class it is sufficient to show that members of the public are likely to be deceived. *See In re Tobacco II*, 46 Cal.4th 298 (2009); *In re Vioxx Class Cases*, 180 Cal.App.4th 116, 130 (2009) ("In order to obtain a remedy for deceptive advertising, a UCL plaintiff need only establish that members of the public were likely to be deceived by the advertising."). The same standard applies under the FAL, *see Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 682 (2006) ("To prevail on a false advertising claim, a plaintiff need only show that members of the public are likely to be deceived."); and the CLRA, *see In re Vioxx Class Cases*, 180 Cal.App.4th at 129 (finding it enough to show that the defendant made a material misrepresentation to the entire class).

[9] Although not specifically alleged, it would appear to the Court that all of the purchases of the Equate products at issue in this lawsuit would have occurred at Walmart stores in California since Equate is Walmart's label for its generic over-the-counter drugs. It would also seem to the Court that Walmart would have common practices as to the arrangement/display of over-the-counter drugs on its store shelves.

8

on their face versus those that are misleading only when placed in context with other statements as sharp as it argues. It is true, as Walmart notes, that the Court found that "Plaintiffs fail[ed] to reference or allege that there is actual language on the Defendant's rapid release gelcap packaging . . . which actually promises faster or cheaper relief." Opp. at 7. But there the Court was discussing the lack of any comparative statements in the context of dismissing the breach of express and implied warranty claims. It did not require Plaintiffs to plead that the proposed class members physically perceived the Equate regular-release products as part of their FAL, UCL, or CLRA claims.

The presumption of class-wide reliance analysis does not end there, since Walmart also argues that Plaintiffs have not shown that they can provide common proof of the materiality of the "rapid release" label. "If the misrepresentation or omission is not material as to all class members, the issue of reliance 'would vary from consumer to consumer' and the class should not be certified." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022-23 (9th Cir. 2011). Walmart points to a survey report prepared by its expert, Sarah Butler of National Economic Research Associates, which obtained responses from 498 Walmart consumers (including 118 California respondents). *See* Docket No. 91-19, Exh. P ("Butler Report"). The Butler Report found that the results demonstrated that "the majority of consumers do not interpret the Rapid Release statement on the [Class Rapid-Release Gelcaps] packaging to mean that the product works faster or offers faster relief," and that "the vast majority of consumers do not purchase [the Class Rapid-Release Gelcaps] because the product label says "Rapid Release" or because they believed the product works faster than other products." *Id.* ¶¶ 11-12.

Plaintiffs respond that Walmart's argument "defies common sense," because "[r]easonable consumers do not choose prolonged pain over 'rapid relief.'" Reply at 7. While the Court agrees with this observation, what is at issue here is not whether reasonable consumers prefer prolonged pain (they do not), but rather whether a reasonable consumer would have attached any significance to the "rapid release" label. As Plaintiffs' own expert Colin Weir tacitly acknowledged in his design of the damages model, there are other factors besides how quickly the product acts which consumers might care about. These include the coating that the Class Rapid-Release Gelcaps have but Equate regular-release products do not (a factor that Weir's model used), ease-of-swallowing, and packaging. Plaintiffs have not offered an adequate explanation of how the "rapid release" label affected the decision-making of the proposed class members. They rely primarily on several

9

promotional materials from LNK International, Inc., a Walmart supplier of acetaminophen products, as evidence of materiality. However, some of them simply describe the popularity of the Class Rapid-Release Gelcaps, such as "Rapid Release Gelcaps have become the preferred dosage form for consumers" and "its popularity with the retail customer is undeniable," without saying anything about whether the alleged promise of faster relief was a factor that the customers considered. Reply at 8. There is one LNK advertisement claiming that the product gives consumers "a dosage form they know and love with the fast-acting relief they seek." However, while this might indicate how LNK perceived consumer response to the Class Rapid-Release Gelcaps, without any additional evidence such as consumer survey reports, the Court does not find that this says anything about how actual consumers perceived the "rapid release" label and whether it was a factor in their decision-making. *See In re 5-Hour Energy Mktg. & Sales Practices Litig.*, No. ML 13-2438-PSG-(PLAx) 2017 WL 2559615, at *7 (C.D. Cal. June 7, 2017) (finding that defendant's former marketing director's testimony that defendant's alleged misrepresentations were meant to "educate" consumers about what "they could expect from [the product]" did not address "how consumers reacted to the product name or the alleged misstatements"). Plaintiffs observe that "a claim need not be *the* motivating factor or driver for the purchase, only something to which a reasonable man would attach importance . . . in determining his choice of action." Reply at 9. However, the Court finds that Plaintiffs have not adequately demonstrated that. The fact that a majority of respondents in the Butler study did not even interpret the "rapid release" label as indicating faster relief – meaning they necessarily gave *zero* weight to the alleged promise of faster relief – suggests that the "rapid release" label would not be material to a reasonable consumer. Plaintiffs have not offered sufficient evidence to the contrary. Accordingly, the Court finds that FRCP 23(b)(3)'s predominance requirement is not met.

F. Is the Proposed Class Adequately Defined?

The issue of materiality ties in with Walmart's other argument about predominance that the Plaintiffs' proposed class is overly broad. The proposed class consists of "all persons who purchased the Class Rapid-Release Gelcaps in the State of California" during "the fullest period allowed by the law."[10] CAC ¶ 96. Walmart argues that the proposed class fails to distinguish between consumers who were "exposed to (and injured by)" the alleged misrepresentations, and

---

[10] There are some exceptions that do not affect the analysis here. For example, the class does not include officers or directors of Walmart. *See* CAC ¶ 99.

10

those that were not. Though the Court found that Plaintiffs were entitled to a class-wide presumption of exposure, the Court agreed with Walmart that Plaintiffs were not entitled to a class-wide presumption of materiality, and that therefore Plaintiffs had not demonstrated class-wide reliance for the FAL, UCL, and CLRA claims. This presents a fatal standing defect for the claims, and the Court therefore agrees with Walmart that the class is overly-broad. Because of this standing defect, the Court does not need to address Plaintiffs' request that the Court alternatively certify the class under FRCP 23(b)(2).

Finally, the Court notes here a problem with Plaintiffs' request that the class period extend to "the fullest period allowed by the law." Plaintiffs repeatedly alleged in the complaint that Walmart "knew, or reasonably should have known" that the "rapid release" label was misleading. The complaint alleges some evidence in support of this, but does not describe how certain information it cites to should be imputed to Walmart or a specific date by which Walmart knew or should have known that the label was misleading. If Plaintiffs file another motion for class certification, the Court asks that Plaintiffs provide a more definitive class period.

**IV. Conclusion**

Because of the concerns that the proposed class is overly-broad and that the common issues of fact may not predominate, the Court **DENIES** Plaintiffs' motion for class certification without prejudice.

11