1

2

3

4 **IN THE UNITED STATES DISTRICT COURT**

5 **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

6

7 **THOMAS BAILEY,**

8                     Plaintiff,

9         v.

10

11 **RITE AID CORPORATION,**

12                     Defendant.

13

CASE NO.  4:18-cv-06926 YGR

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION FOR CLASS
CERTIFICATION; ORDER RE: MOTIONS
TO SEAL**

Re: Dkt. Nos. 92, 95, 96, 107, 115

14        Plaintiff Thomas Bailey brings this proposed class action against defendant Rite Aid

15 Corporation ("Rite Aid") for state-law claims arising out of Rite Aid's marketing of its over-the-

16 counter acetaminophen gelcaps ("Rite Aid gelcaps") as "rapid release."  Now pending is Bailey's

17 motion for class certification under Rule 23(b)(3) and Rule 23(b)(2).

18        Having carefully considered the pleadings and the parties' briefs, the argument presented

19 at the hearing held on April 6, 2021, and for the reasons set forth below, the Court **GRANTS** the

20 motion for certification of a Rule 23(b)(3) class and **DENIES WITHOUT PREJUDICE** the motion for

21 certification of a Rule 23(b)(2) class.[1]

22 **I.     MOTIONS TO SEAL**

23        As a preliminary matter, both sides have submitted administrative motions to seal

24 documents or portions of documents offered in support of their class certification briefing.  *See*

25 Docket Nos. 92, 95, 107, 115.  While the standard for sealing documents in connection with class

26 certification does not require "compelling reasons" as set forth in *Pintos v. Pacific Creditors*

27 _____

28        [1] Bailey filed a motion to remove an incorrectly-filed document.  *See* Docket No. 96.  The
Court **GRANTS** the motion.

United States District Court
Northern District of California

*Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010), the Court nevertheless finds that the sealing requests here are overbroad and good cause has not been established to seal certain documents to the extent requested.  The Court has considered the basis offered for sealing, as well as the significance to the Court's decision of the portions sought to be sealed, in determining which portions to cite or quote in its order herein.  The motions to seal are granted only insofar as they are not necessary to the Court's analysis.

Therefore, to the extent that the Court has quoted or recited in this opinion the contents of any specific portion of a document or material subject to a motion to seal, the Court **DENIES** the motion to seal that information for lack of good cause.  The motions to seal, Docket Nos. 92, 95, 107, 115, are otherwise **GRANTED** for good cause shown.

## II.    BACKGROUND

In the First Amended Complaint ("FAC"), Bailey alleges as follows.

Rite Aid produces, manufactures, markets, distributes, and sells a generic version of certain over-the-counter drugs under the Rite Aid brand, including the Rite Aid gelcaps.  Rite Aid "misled and continues to mislead consumers about the nature, quality, and effectiveness" of the Rite Aid gelcaps through its labeling.  FAC ¶ 7.  As shown on the package of the Rite Aid gelcaps, the term "'rapid release' does not actually mean that the drug works faster for consumers than non-rapid release products," as studies show that "traditional, non-rapid release acetaminophen products can be equally effective in the same, if not faster, time period than its Rite Aid rapid release products." *Id.* ¶¶ 9-11.  Rite Aid nevertheless charges a premium for its rapid release gelcaps, and it markets the Rite Aid gelcaps with "false, misleading, unfair, deceptive labeling and marketing in an effort to dupe consumers into purchasing these gelcaps for prices that exceed their true value." *Id.*

Bailey purchased a bottle of Rite Aid gelcaps, 100-count, in mid-2018 at a Rite Aid store in Alameda County, California, for a price that was higher than Rite Aid's acetaminophen tablets in the same count, which were not labeled as "rapid release." *Id.* ¶¶ 73-78.  He purchased the Rite Aid gelcaps "over other Rite Aid brand and other acetaminophen products solely because they were labeled as rapid release and he was seeking 'faster' relief." *Id.*  Rite Aid's labeling misled Bailey into believing that the Rite Aid gelcaps he purchased would provide faster relief than other,

cheaper Rite Aid acetaminophen products.  *Id.*  Had Bailey known that the Rite Aid gelcaps did not act any faster than traditional, cheaper Rite Aid products, he would not have been willing to pay the premium that he paid for the Rite Aid gelcaps.  *Id.* ¶ 71.  Instead, "he would have purchased a cheaper, just as effective and just as fast acting acetaminophen product."  *Id.* ¶ 78.  "The cost of the [Rite Aid gelcaps] exceeded the value of the product and [p]laintiff Bailey did not receive the benefit of the bargain."  *Id.* ¶ 79.

In the FAC, Bailey asserts claims for: (1) violations of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500; (2) violations of the Unfair Competition Law[2] ("UCL"), Cal. Bus. & Prof. Code § 17200; (3) violations of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761; and (4) unjust enrichment.[3]  He seeks an award of actual damages; restitution; prospective injunctive relief; attorneys' fees and costs; and pre- and post-judgment interest.  FAC at 31, Prayer for Relief.

### III.   LEGAL STANDARD

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quotations omitted).  "Before certifying a class, the trial court must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of Rule 23."  *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks omitted).  The "rigorous analysis" that a court must conduct "requires 'judging the persuasiveness of the evidence presented' for and against certification."  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, No. 19-56514, __ F.3d __ , 2021 WL 1257845, at *4 (9th Cir. Apr. 6,

---

[2] Although Bailey asserts claims under the unfair, unlawful, and fraudulent prongs of the UCL in the FAC, when opposing Rite Aid's motion under Rule 12(b)(6), Bailey proceeded only under the fraudulent prong.  Accordingly, the fraudulent prong is the only prong that survived Rite Aid's motion to dismiss.

[3] On September 9, 2019, the Court granted in part and denied in part Rite Aid's motion to dismiss.  Docket No. 60.  Specifically, the Court granted the motion to dismiss, with leave to amend, with respect to Bailey's warranty claims and standalone claim for declaratory relief, and it otherwise denied the motion.  *Id.*  Bailey did not file an amended complaint to cure the defects that the Court identified with respect to the warranty claims and claim for declaratory relief.  Accordingly, the referenced claims in the FAC are the only ones at issue.

United States District Court
Northern District of California

United States District Court
Northern District of California

2021) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011)).  "Courts must resolve all factual and legal disputes relevant to class certification, even if doing so overlaps with the merits." *Id.* (citation omitted).  The party moving for certification has the burden to show, by a preponderance of the evidence, that the requirements of Rule 23 are satisfied.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-50 (2011).

The party moving for certification first must show that the four requirements of Rule 23(a) are met.  Specifically, Rule 23(a) requires a showing that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

The party moving for certification must then show that the class can be certified based on at least one of the grounds in Rule 23(b).  *See* Fed. R. Civ. P. 23(b).  As relevant here, certification under Rule (b)(3) is appropriate only if "the questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Certification under Rule 23(b)(2) is appropriate only if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

The class certification analysis "may entail some overlap with the merits of the plaintiff's underlying claim."  *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 465-66 (2013) (internal quotation marks omitted).  "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Id.*

//

United States District Court
Northern District of California

1    **IV.    DISCUSSION**

2        Before analyzing whether the requirements for certification under Rule 23 are satisfied

3    here, the Court first provides a brief overview of Bailey's theory of liability and the scope of the

4    class he seeks to certify.

5        All of the claims at issue in this action, which are for violations of the UCL, FAL, CLRA,

6    and for unjust enrichment, are predicated on the theory that Rite Aid misleads consumers into

7    believing, incorrectly, that Rite Aid gelcaps, which are labeled as "rapid release," are faster-acting

8    than cheaper Rite Aid acetaminophen tablets, which are *not* labeled as "rapid release."  FAC ¶¶

9    13-14.  As Bailey confirmed at oral argument, this theory relies on evidence that Rite Aid placed

10   the "rapid release" gelcaps within eye-view of the "other, cheaper acetaminophen products, such

11   as the traditional Rite Aid tablets," which are not labeled as "rapid release" and which are priced

12   lower than the Rite Aid gelcaps, to suggest to consumers that the "rapid release" gelcaps "would

13   provide faster relief."  *Id.* ¶¶ 15, 77.  Bailey contends that the "rapid release" statement on the Rite

14   Aid gelcaps' label is misleading because consumers will compare the Rite Aid gelcaps' label and

15   price to those of the cheaper, Rite Aid tablets that are placed nearby and conclude, incorrectly, that

16   the "rapid release" gelcaps, which are more expensive, are faster-acting than the cheaper non-

17   "rapid release" tablets.  Bailey's theory of liability, therefore, requires a comparison by consumers

18   of the label and price of the Rite Aid gelcaps against the labels and prices of cheaper Rite Aid

19   acetaminophen tablets placed near the gelcaps.  As Bailey conceded at oral argument, that price

20   and label comparison could occur only at brick-and-mortar Rite Aid stores.[4]

21        Bailey alleges that Rite Aid's alleged misrepresentation of the Rite Aid gelcaps as faster-

22   acting than the cheaper Rite Aid tablets enables it to price and sell the Rite Aid gelcaps at an

23   amount that "exceed[s] their true value."  *Id.* ¶¶ 13-14.  Bailey alleges that consumers of the "rapid

24   release" Rite Aid gelcaps would not have paid a premium for this product had they known that

25

26        [4] The Court notes that the FAC includes for context purposes references to Johnson &
27   Johnson's marketing campaign for Tylenol® Rapid Release Gelcaps, which Bailey alleges Rite
     Aid has leveraged.  *See, e.g.*, FAC ¶¶ 40, 51-53, 57-62, 9-13.  At oral argument, Bailey clarified
28   that his theory of liability does not depend on Johnson & Johnson's marketing campaign for
     Tylenol products.

United States District Court
Northern District of California

1  they would not work any faster than the Rite Aid tablets. *Id.* ¶¶ 50, 78. The difference in price

2  between what consumers actually paid and what consumers would have paid for the Rite Aid

3  gelcaps had they known that this product would not work any faster than the cheaper, Rite Aid

4  tablets is the economic injury suffered by consumers. *Id.* Because this theory of economic harm

5  is predicated on consumers having been misled into thinking that the Rite Aid gelcaps are faster-

6  acting than Rite Aid tablets by virtue of having compared the labels and prices of both products,

7  only consumers who purchased Rite Aid gelcaps at brick-and-mortar Rite Aid stores could have

8  suffered the economic injury alleged in the FAC.

9  In his class certification motion, Bailey defines the proposed class he seeks to certify under

10  Rules 23(b)(3) and 23(b)(2) as follows:

11  > All persons who purchased the Class Rapid Release Gelcaps in the
   > State of California within the applicable statute of limitations
12  > established by the State of California through the final disposition
   > of this action.[5]
13

14  Docket No. 98-3 at 10. This proposed class includes *every* consumer who purchased Rite Aid

15  gelcaps in California during the class period.

16  Bailey conceded during the hearing held on April 6, 2021, that only consumers who

17  purchased the Rite Aid gelcaps at Rite Aid brick-and-mortar stores would be able to make the

18  price and label comparison upon which his theory of liability depends. Accordingly, Bailey

19  agreed that his proposed class can be narrowed to include only consumers who made in-store

20  purchases of Rite Aid gelcaps.

21  The Court's analysis as to whether the requirements of Rule 23 are satisfied, below, is

22  based on the revised and more limited class definition that Bailey proposed at oral argument.

23  //

24

25

26  _____
   [5] Bailey represents that this proposed class is subject to the exclusions set forth in
27  paragraph 85 of the FAC, which provides: "Excluded from the proposed Class is: (a) any Judge or
   Magistrate presiding over this action and members of their families; (b) Rite Aid and any entity in
   which it has a controlling interest or which has a controlling interest in it; (c) the officers and
28  directors of Rite Aid; (e) Rite Aid's legal representatives, assigns, and successors; and (f) all
   persons who properly execute and file a timely request for exclusion from the Class." FAC ¶ 85.

United States District Court
Northern District of California

### A.     Rule 23(a)

#### 1.     Numerosity

The requirement of numerosity is that the class be so numerous that joinder of all members individually would be impracticable.  Fed. R. Civ. P. 23(a)(1).  "Although there is no exact number, some courts have held that numerosity may be presumed when the class comprises forty or more members."  *See Krzesniak v. Cendant Corp.*, No. 05–05156, 2007 WL 1795703, at *7 (N.D. Cal. June 20, 2007).

Here, Bailey argues that this requirement is satisfied because "Rite Aid's sales data indicates that from 2014 through 2019 it sold over 600,000 units of Class Rapid Release Gelcaps in the state of California, generating over $4 million in sales," suggesting that there are more than forty people who purchased the Rite Aid gelcaps in-store during the class period.  Docket No. 98-3 at 11.

Rite Aid does not dispute that Bailey's showing satisfies the numerosity requirement. Accordingly, the Court finds that the numerosity requirement is met.

#### 2.     Commonality

Commonality requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  To satisfy this requirement, the common question must be of "such nature that it is capable of class-wide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke."  *Dukes*, 564 U.S. at 350.  "[F]or purposes of Rule 23(a)(2)[,] even a single common question will do."  *Id.* at 359 (internal quotations and brackets omitted).

> The requirements of Rule 23(a)(2) have "been construed permissively," and "[a]ll questions of fact and law need not be common to satisfy the rule."  However, it is insufficient to merely allege any common question, for example, "Were Plaintiffs passed over for promotion?"  Instead, they must pose a question that "will produce a common answer to the crucial question why was I disfavored."

*Ellis*, 657 F.3d at 981 (quoting *Dukes*, 564 U.S. at 350).

Here, Bailey argues that the commonality requirement is met because two questions, which are integral to his claims under the UCL, FAL, and CLRA, can be resolved with common proof,

7

United States District Court
Northern District of California

1    namely (1) the question of whether the "rapid release" statement was likely to deceive a

2    reasonable consumer, which is an element of his claims under the UCL and FAL; and (2) whether

3    the "rapid release" statement was material, which is an element of his claim under the CLRA.

4        The Court analyzes each of these questions in turn and concludes that both are susceptible

5    to resolution with common proof.  Accordingly, the commonality requirement is met.

6                    **i.        UCL and FAL and Likelihood of Deception**

7        The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus.

8    & Prof. Code § 17200.  The FAL prohibits any "unfair, deceptive, untrue, or misleading

9    advertising."  Cal. Bus. & Prof. Code § 17500.  The language of these statutes is "'broad' and

10   'sweeping' to 'protect both consumers and competitors by promoting fair competition in

11   commercial markets for goods and services.'"  *Pulaski & Middleman, LLC v. Google, Inc.*, 802

12   F.3d 979, 985 (9th Cir. 2015) (quoting *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 320 (2011)).

13       "[T]o state a claim under either the UCL or the false advertising law, based on false

14   advertising or promotional practices, it is necessary *only* to show that members of the public are

15   likely to be deceived."  *Stearns*, 655 F.3d at 1020 (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298

16   (2009)) (emphasis added).  This standard is objective, as it is governed by whether a "reasonable

17   consumer" is likely to be deceived.  *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)

18   ("[T]he false or misleading advertising and unfair business practices claim must be evaluated from

19   the vantage of a reasonable consumer.") (citation omitted).  "'Likely to deceive' implies more than

20   a mere possibility that the advertisement might conceivably be misunderstood by some few

21   consumers viewing it in an unreasonable manner.  Rather, the phrase indicates that the ad is such

22   that it is probable that a significant portion of the general consuming public or of targeted

23   consumers, acting reasonably in the circumstances, could be misled."  *Lavie v. Procter & Gamble

24   Co.*, 105 Cal. App. 4th 496, 508 (2003).  Because the UCL and FAL limit available remedies to

25   injunctive relief, including restitution, a plaintiff suing under the UCL or FAL need not show

26   actual falsity of the alleged misrepresentations or reliance by the plaintiff.  *See Pulaski &

27   Middleman*, 802 F.3d at 986 (holding that the inquiry for a UCL and FAL claim does not require

28   proof of deception, reliance, and injury) (citation and internal quotation marks omitted).  This

contrasts with a common law claim for damages based on fraud, for which actual falsity, reliance, and injury are required elements. *Id.*

Even though a claim under the UCL and FAL turns on whether a "reasonable consumer" is likely to be deceived, "the question of likely deception does not automatically translate into a class-wide question." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014), *abrogated on other grounds by Microsoft Corp. v. Baker,* 137 S. Ct. 1702 (2017). For example, the Ninth Circuit has held that likelihood of deception cannot be resolved with common evidence where it is not the case that every member of the proposed class was exposed to the same allegedly misleading conduct. *See Mazza*, 666 F.3d at 596 (holding that "[i]n the absence of [a] massive advertising campaign" "where there was little doubt that almost every class member had been exposed to defendants' misleading statements," "the relevant class must be defined in such a way as to include only members who were exposed to advertising that is alleged to be materially misleading").

Here, Bailey argues that the question of whether a reasonable consumer is likely to be deceived by the alleged misleading conduct at issue can be resolved with common proof based on (1) evidence showing that consumers who purchased the Rite Aid gelcaps at brick-and-mortar Rite Aid stores were uniformly exposed to the "rapid release" statement on the label of the Rite Aid gelcaps and to the lower prices and non-"rapid release" labels of the Rite Aid tablets, as Rite Aid's policies require that Rite Aid gelcaps be placed within eye-view of the Rite Aid tablets at brick-and-mortar Rite Aid stores, *see, e.g.*, Roush Dep., Ex. 7-16; (2) the opinions of Bailey's advertising expert, Bruce Silverman, who opines (a) that consumers who purchased Rite Aid gelcaps at brick-and-mortar Rite Aid stores were exposed to the prices and labels of Rite Aid gelcaps and Rite Aid tablets and were misled into believing that the Rite Aid gelcaps are faster-acting than Rite Aid tablets after comparing the prices and labels of both products, and (b) that the "rapid release" label is material to consumers[6]; and (3) the testimony of Jennifer Roush, who is

---

[6] Silverman opines that consumers of analgesics want faster relief for their pain and tend to believe that more expensive products are inherently better than less expensive ones. As such, consumers exposed to the "rapid release" statement, as well as to the prices and non-"rapid release" labels of the cheaper Rite Aid tablets are likely to be misled into believing that the Rite

United States District Court
Northern District of California

1  Rite Aid's Rule 30(b)(6) designee, that the average consumer would prefer a "faster solution" to a

2  headache, Rousch Dep. Tr. at 107-08.

3      Rite Aid does not meaningfully dispute that consumers at Rite Aid stores were exposed to

4  the "rapid release" statement on the Rite Aid gelcaps' label, as well as to the labels and prices of

5  Rite Aid tablets.[7][8]  Accordingly, the Court can infer class-wide exposure to the allegedly

6  misleading conduct at issue.  *See Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 895 (N.D. Cal.

7  2015) (noting that in "numerous cases involving claims of false-advertising, class-wide exposure

8  has been inferred" where the alleged misrepresentation is on the packaging of the item being sold

9  or where there is a high likelihood that "in the process of buying the product" the consumer would

10  have been exposed to the allegedly deceptive conduct) (collecting cases).

11      Rite Aid also does not dispute that its Rule 30(b)(6) designee testified that the average

12  consumer would prefer a "faster solution" to a headache.

13      Rite Aid argues, however, that the Court cannot rely on Silverman's opinions to conclude

14  that the question of likelihood of deception is susceptible to resolution with common proof for two

15  reasons, neither of which is persuasive.[9]

16  _____

17  Aid gelcaps are faster-acting than the Rite Aid tablets.  Docket No. 92-6 ¶¶ 45-75.

18  [7] At the hearing held on April 6, 2021, Rite Aid did not dispute that Rite Aid gelcaps are
   placed within eye-view of the prices and labels of Rite Aid tablets at Rite Aid brick-and-mortar
19  stores.  Rite Aid argued only that the Rite Aid gelcaps are not placed adjacent to the Rite Aid
   tablets.  However, Bailey's theory of liability at this juncture does not depend on the Rite Aid
20  gelcaps and the Rite Aid tablets being placed immediately next to each other; it depends, instead,
   on both products being placed in close proximity to each other such that they both are within eye-
21  view of the consumer.  Because exposure is undisputed, the cases upon which Rite Aid relies for
   the proposition that likelihood of deception cannot be resolved with common proof where there is
22  no class-wide exposure are inapposite.

23  [8] The survey conducted by Rite Aid's expert, Sarah Butler, is consistent with Bailey's
   representation that consumers at Rite Aid brick-and-mortar stores were exposed to both the "rapid
24  release" statement on the Rite Aid gelcaps' label and to the prices and labels of Rite Aid tablets.
   *See* Docket No. 109-5 ¶ 12 & Exhibit G (stating that images shown to survey respondents depict
25  Rite Aid gelcaps "as this product appears in actual stores," where the images show the Rite Aid
   gelcaps placed within eye-view of the Rite Aid tablets).

26  [9] Rite Aid also argues that the "rapid release" statement is not actually false, because
   nothing in the statement "rapid release" suggests any comparison between the Rite Aid gelcaps
27  and Rite Aid tablets or any other product; instead, according to Rite Aid, the statement speaks to
   the speed with which the gelcaps dissolve relative to the Food and Drug Administration's USP
28  standards for "immediate release" dissolution.  Docket No. 107-4 at 7.  Rite Aid contends that,

United States District Court
Northern District of California

1    First, Rite Aid argues that Silverman's opinions have no meaningful support, because they

2    are based primarily on his work experience in the advertising industry, and because he did not

3    conduct a survey of Rite Aid gelcaps consumers.  The Court finds that Rite Aid's attacks on the

4    reliability and persuasiveness of Silverman's opinions fall flat.  Silverman represents, and Rite Aid

5    does not dispute, that he has five decades of experience in the "marketing-communication

6    industry," which includes work that is directly relevant to the industry at issue here.  *See* Docket

7    No. 92-6 ¶¶ 5, 11-27.  Second, an expert who offers testimony on the question of whether a

8    reasonable consumer is likely to be deceived by an allegedly misleading statement, or whether a

9    reasonable consumer would find such a statement to be material, is not required to conduct a

10   consumer survey if his or her testimony is otherwise reliable.  *See Hadley v. Kellogg Sales Co.*,

11   324 F. Supp. 3d 1084, 1115 (N.D. Cal. 2018) (Koh, J.) (holding that an expert need not conduct a

12   consumer survey to reliably opine on likelihood of deception and materiality); *see also Colgan v.

13   Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 681-82 (2006) (noting that California courts

14   have "reject[ed] [the] view that a plaintiff must produce a consumer survey or similar extrinsic

15   evidence to prevail on a claim that the public is likely to be misled by a representation" under the

16   FAL, CLRA, or UCL) (citation and internal quotation marks omitted).  The Court finds that

17   Silverman's failure to conduct a consumer survey does not negatively impact the reliability or

18   persuasiveness of his opinions.  In addition to his extensive industry experience, Silverman has

19   interviewed thousands of consumers over the course of his career and has observed thousands of

20   focus group sessions, including about products sold at mass merchandisers, such as drug stores

21   and supermarkets.  Docket No. 92-6 ¶¶ 26-27.  Additionally, Silverman visited several Rite Aid

22   stores to examine the placement of Rite Aid gelcaps and determine whether such placement

23   relative to Rite Aid tablets would impact consumers' reaction to the "rapid release" statement at

24

25   under that standard, an acetaminophen product is considered to be "immediate release" or "rapidly
     dissolving" if it dissolves 80% in thirty minutes or less.  *Id.*  Because the Rite Aid gelcaps meet

26   and exceed this standard then, according to Rite Aid, the "rapid release" statement accurately
     indicates that the gelcaps are fast in dissolving according to such standards.  Because Rite Aid

27   points to no evidence showing that consumers of Rite Aid gelcaps were uniformly aware of the
     FDA's standards for immediate dissolution and uniformly interpreted the "rapid release" statement

28   at issue in light of such standards, the Court finds that Rite Aid's arguments are irrelevant to the
     resolution of the present motion.

issue. *Id.* ¶¶ 67-72. Accordingly, the Court finds that Silverman's experience allows him to reliably and persuasively opine as to the issues of likelihood of deception and materiality.

Second, Rite Aid argues that Silverman's opinions that the "rapid release" statement is likely to deceive and is material to a reasonable consumer are undermined by a survey conducted by its expert, Sarah Butler, which, according to Rite Aid, shows that the "rapid release" statement was not interpreted by consumers as Bailey and Silverman posit, and that the statement is not material in consumers' purchasing decisions. After carefully reviewing the Butler survey, Docket No. 109-5, the Court finds that it suffers from significant flaws that detract from its persuasiveness as evidence that the issue of likelihood of deception cannot be resolved with common proof.

For example, one aspect of the survey involved asking past consumers of Rite Aid gelcaps to select from among twenty-three reasons for why they purchased the product. None of the twenty-three options was "rapid release." Further, none of the twenty-three options described attributes that are consistent with Bailey's theory of liability, such as "faster-acting" or "works faster." *See id.* ¶¶ 58-60. According to Rite Aid, the responses to this closed-ended question show that only a small percentage of consumers provided responses that are consistent with consumers believing that Rite Aid gelcaps work "faster" or "quicker" as Bailey alleges, and for that reason, Rite Aid argues that the survey shows that the question of likelihood of deception cannot be resolved with common proof. *See id.* ¶¶ 58-64.

The Court is not persuaded that, based on the responses to this closed-ended question, it can conclude that the question of likelihood of deception cannot be resolved with common proof. The persuasiveness of the survey is negatively impacted by the fact that the twenty-three possible responses did not include an option that allowed consumers to select a response that is consistent with Bailey's theory of liability. The omission of such an option likely resulted in fewer consumers providing responses to this question that could give rise to an inference that consumers purchased the Rite Aid gelcaps because of the "rapid release" statement or because they believed that the gelcaps were faster-acting than another product. *See* Federal Judicial Center, Reference Manual on Scientific Evidence 392 (3d ed. 2011) ("The response alternatives in a closed-ended

United States District Court
Northern District of California

1    question may remind respondents of options that they would not otherwise consider or which

2    simply do not come to mind as easily.").[10]

3          As another example, the Butler survey purports to have presented to survey respondents,

4    prior to asking them questions, with images of Rite Aid gelcaps "as this product appears in actual

5    stores." *Id.* ¶ 12.  Two of the three images that were presented to respondents show the Rite Aid

6    gelcaps "on the shelf with other products in view[.]"[11]  *Id.* ¶ 12 & Exhibit G.  The Court finds that

7    these two images likely did not permit survey respondents to make the price and label comparison

8    between Rite Aid gelcaps and Rite Aid tablets that is the basis of Bailey's theory of liability.  The

9    first image depicts the top two shelves of the pain-relief section; the top shelf contains some Rite

10   Aid and Tylenol gelcaps, and the shelf immediately below contains Rite Aid and Tylenol tablets.

11   *See id.*  This image shows the prices of the Rite Aid and Tylenol gelcaps, but it does *not* show

12   the prices of the Rite Aid and Tylenol tablets.  *Id.*  Accordingly, this image would not permit a survey

13   respondent to compare the prices and labels of the Rite Aid gelcaps with those of the Rite Aid

14   tablets.  The second image shows all six shelves of the pain-relief section, which contain many

15   pain relief products, including ones that are irrelevant to this litigation, such as Advil and Motrin

16   products.  *Id.*  Because this image depicts six shelves' worth of products, it is very difficult, if not

17   impossible, to discern the prices of any of the products depicted, as the font of the prices is too

18   small.  Accordingly, this image also does not permit a survey respondent to make the price and

19   label comparison between Rite Aid gelcaps and Rite Aid tablets upon which Bailey's theory of

20   liability depends.

21         *All* of the survey responses that Rite Aid contends are relevant to the present motion,

22   including responses to the question that asked respondents what they understood the term "rapid

23

24

---

25       [10] Other closed-ended questions in the survey suffer from the same flaw and responses to
     them are unpersuasive for the same reasons discussed above.  For example, one of the closed-
26   ended questions asked respondents to select attributes from a list that they believed were indicated
     by the Rite Aid gelcaps' packaging.  Docket No. 109-5 ¶ 69.  While the options included "is fast
27   release" and "is rapid release," none of the options included responses that connote a comparison
     with another product, such as "is fast*er* acting" or "works fast*er*" or "dissolves fast*er*."  *Id.*

28       [11] The third image shows the label of Rite Aid gelcaps.

United States District Court
Northern District of California

1   release" to mean,[12] *see* Docket No. 109-5 ¶¶ 69-74, appear to be predicated on these flawed

2   images.  Because of the flaws described above, the persuasiveness of the Butler survey is

3   diminished and outweighed by the common evidence to which Bailey points, which supports the

4   proposition that the question of whether a reasonable consumer was likely to be deceived by Rite

5   Aid's alleged misleading conduct *can* be resolved with common proof.

6       In light of the foregoing, the Court concludes that Bailey has met his burden to show that

7   the question of whether a reasonable consumer is likely to be deceived by Rite Aid's alleged

8   conduct can be resolved with common evidence on a class-wide basis.

9               **ii.       CLRA and Materiality**

10      The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or

11  practices."  Cal. Civ. Code § 1770.  The requirements for stating a claim under the CLRA differ

12  from those for a claim under the UCL and FAL because a CLRA plaintiff can obtain damages, as

13  well as equitable relief and other remedies.  Cal. Civ. Code § 1780(a).  CLRA plaintiffs must

14  "show not only that a defendant's conduct was deceptive but that the deception caused them

15  harm."  *Stearns,* 655 F.3d at 1022 (citing *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129

16  (2009)).  In other words, "[a] CLRA claim warrants an analysis different from a UCL [and FAL]

17  claim because the CLRA requires each class member to have an actual injury caused by the

18  unlawful practice."  *Id.* (citation omitted).  That said, "[c]ausation, on a classwide basis, may be

19  established by materiality.  If the trial court finds that material misrepresentations have been made

20  *to the entire class*, an inference of reliance arises as to the class."  *Id.* (quoting *In re Vioxx Class*

21

22      [12] Rite Aid argues, based on the Butler survey results, that likelihood of deception cannot
    be resolved with common proof because consumers do not have a common definition of "rapid
23  release."  This argument fails for two reasons.  First, because of the methodological flaws
    discussed above, the Court is not persuaded by the Butler survey's conclusion that consumers did
24  not have a common understanding of the term "rapid release" and therefore are not likely to have
    been deceived by the statement in the manner that Bailey alleges.  Second, Rite Aid points to no
25  controlling authority showing that a plaintiff must establish at the class certification stage that
    consumers have a uniform interpretation of the term that gives rise to the alleged deception.
26  Courts in this district routinely hold to the contrary.  *See, e.g., Pettit v. Procter & Gamble Co.*, No.
    15-CV-02150-RS, 2017 WL 3310692, at *3 (N.D. Cal. Aug. 3, 2017) (rejecting argument that a
27  plaintiff must show at the class certification stage that all proposed class members have the same
    interpretation of the term that was allegedly misleading); *Fitzhenry-Russell v. Dr. Pepper Snapple*
28  *Grp., Inc.*, 326 F.R.D. 592, 612 (N.D. Cal. 2018) (same).

United States District Court
Northern District of California

*Cases*, 180 Cal. App. 4th at 129) (emphasis added).  "A misrepresentation is judged to be 'material' if a reasonable [person] would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question."  *Kwikset*, 51 Cal. 4th at 332 (citation omitted).  To establish materiality, a plaintiff is not required to show that the challenged statement is the "sole or even the decisive cause" influencing the class members' decisions to buy the challenged products.  *Id.* at 327.

Here, Bailey argues that the question of materiality is capable of resolution with common proof based on (1) Silverman's opinions that the "rapid release" statement would have been material to a reasonable consumer because consumers want fast relief and that statement was placed on the front of the Rite Aid gelcaps' package, which is generally reserved for attributes that are deemed to be the most important to consumers, Docket No. 92-6 ¶¶ 37-39; (2) the testimony of Rite Aid's corporate representative that the average consumer would prefer a "faster solution" to a headache, Roush Dep. Tr. at 107-108; and (3) the proposed conjoint analysis by his economic experts, Colin Weir and Steven Gaskin, which seeks to determine the value that consumers attributed to the "rapid release" statement and will, therefore, serve as an indicia of materiality.

Rite Aid makes two arguments to try to show that Bailey has not met his burden to establish that materiality is capable of resolution with common proof.

First, Rite Aid argues that Silverman's opinions are unsupported based on the same arguments discussed above, which the Court has considered and rejected.

Second, Rite Aid argues that the Butler survey shows that consumers do not purchase Rite Aid gelcaps because of the "rapid release" label and, therefore, the Butler survey shows that the statement at issue was not material to a reasonable consumer.  The Court finds that the persuasiveness of the Butler survey on the question of whether materiality can or cannot be resolved with common proof is negatively impacted by the flaws discussed above, and that its persuasiveness is outweighed by the common evidence to which Bailey points, which is sufficient to support a jury finding that the "rapid release" statement is material to a reasonable consumer. As noted, Bailey's common evidence includes Silverman's opinion that the "rapid release" statement would be of importance to reasonable consumer, which the Court finds to be reliable

and persuasive for the reasons described in more detail above; the undisputed testimony of Rite Aid's Rule 30(b)(6) designee that the average consumer would prefer a "faster solution" to a headache; and (3) the conjoint analysis proposed by Gaskin and Weir, which is capable, for the reasons discussed in more detail below, of reliably calculating the value (or "premium") that consumers paid as a result of the "rapid release" statement.

Accordingly, the Court finds that Bailey has met his burden to show that the question of whether a reasonable consumer would have found the "rapid release" statement to be material is capable of resolution with common evidence.

### 3. Typicality

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Stearns*, 655 F.3d at 1019. "The typicality requirement looks to whether the claims of the class representatives [are] typical of those of the class, and [is] satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.* (citation omitted). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal citation and quotation marks omitted). Typicality may be lacking "if 'there is a danger that absent class members will suffer [because] their representative is preoccupied with defenses unique to it.'" *Id.* (citation omitted).

Bailey argues that this requirement is satisfied because he testified that he was deceived by Rite Aid into believing that the Rite Aid gelcaps would work faster than the Rite Aid tablets; because he paid a price premium for the Rite Aid gelcaps; and because he would not have paid such a premium if he had known that the Rite Aid gelcaps would not act faster than the Rite Aid tablets. Docket No. 98-3 at 13.

Rite Aid argues that Bailey has not met the typicality requirement for two reasons.

First, Rite Aid contends that Bailey's experience in purchasing the Rite Aid gelcaps does not match his theory of liability because he testified that he did not compare the Rite Aid gelcaps with the Rite Aid tablets or with any other product before deciding to purchase them; he simply

read the "rapid release" language on the label and decided that the Rite Aid gelcaps would provide him with "fast" relief. *See* Bailey Dep. Tr. at 46, 51. The Court is not persuaded that Bailey's testimony demonstrates that his purchasing experience was not typical of that of the proposed class members. While in some portions of his deposition Bailey testified that he did not look at any other products or prices before deciding to purchase the Rite Aid gelcaps, Bailey rehabilitated his testimony in other portions of the deposition as to that issue. *See* Bailey Dep. Tr. at 45-48, 55-60. Accordingly, based on the totality of Bailey's testimony, the Court cannot conclude that his experience purchasing Rite Aid gelcaps prevents him from satisfying the typicality requirement.

Second, Rite Aid argues that Bailey did not suffer an injury of the type alleged in the FAC, because, according to Rite Aid, his "injury" ultimately arises from the fact that the Rite Aid gelcaps did not contain enough acetaminophen to relieve his pain for an extended time period, and did not arise, as Bailey alleges in the FAC, from the speed with which the gelcaps dissolved. Bailey testified that, before purchasing the Rite Aid gelcaps, he wanted something to "keep the pain away for a long period of time." *Id.* at 56. He purchased the Rite Aid gelcaps at a Rite Aid store after looking at the "rapid release" label on the product box. *Id.* at 46, 51. He took the Rite Aid gelcaps but did not experience pain relief after approximately two hours. *Id.* at 24. After he concluded that the Rite Aid gelcaps had not worked as he had expected them to work, he purchased a "slow release" Tylenol arthritis product, *id.* at 22, 35, 55-58, 24, 27, which Rite Aid represents exceeds the acetaminophen content of the Rite Aid gelcaps by 150 milligrams. Rite Aid, therefore, argues that Bailey's "dissatisfaction" with the Rite Aid gelcaps stems from the gelcaps having insufficient acetaminophen content, as opposed to not having a fast-enough release. As such, Rite Aid argues that Bailey was not injured by the allegedly misleading conduct at issue in this action.

The Court also is not persuaded by this argument, because it misapprehends the nature of the injury that Bailey alleges in the complaint, which is *economic* in nature. Bailey's testimony that he did not experience any pain relief after taking the Rite Aid gelcaps, even after waiting approximately two hours for them to have an effect, does not mean that did not suffer any *economic* injury as he alleges in the FAC. Indeed, Bailey's testimony is not inconsistent with his

17

1   allegations that he overpaid for Rite Aid gelcaps based on his belief, albeit a mistaken one, that

2   they would be faster-acting than Rite Aid tablets.  Bailey's testimony, in fact, supports his

3   allegations that he suffered injury because he testified that he purchased the Rite Aid gelcaps and

4   paid more for them than he otherwise would have been willing to pay if they had been labeled in a

5   non-misleading way.  Whether the Rite Aid gelcaps and the Rite Aid tablets would have been

6   "functionally equivalent" in not being capable of relieving his pain does not negate the fact that

7   Bailey suffered economic injury as a result of the alleged mislabeling of the Rite Aid gelcaps.  *See*

8   *Kwikset*, 51 Cal. 4th at 330 (holding in a product mislabeling action that, where a consumer "paid

9   more than he or she actually valued the product," the consumer suffered "economic injury [that]

10   affords the consumer standing to sue" and further holding that "[t]his economic harm—the loss of

11   real dollars from a consumer's pocket—is the same whether or not a court might objectively view

12   the products as functionally equivalent.").

13        That being said, Bailey's testimony raises questions as to whether he has Article III

14   standing to seek *prospective* injunctive relief.[13]  To have Article III standing to seek "injunctive

15   relief, which is a prospective remedy, the threat of injury must be 'actual and imminent, not

16   conjectural or hypothetical.'"  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir.

17   2018) (citation omitted).  "Where standing is premised entirely on the threat of repeated injury, a

18   plaintiff must show a sufficient likelihood that he will again be wronged in a similar way."  *Id.*

19   (internal citations and quotation marks omitted).

20        Here, as will be discussed in more detail below, Bailey seeks certification of the proposed

21   class under Rule 23(b)(2), with respect to which he seeks the following prospective injunctive

22   relief (1) an order requiring Rite Aid to adequately represent the true nature, quality, and

23   capability of the Rite Aid gelcaps; (2) an order (a) issuing a nationwide recall of the Rite Aid

---

25        [13] Nothing in Bailey's deposition testimony or the parties' briefs suggests that Bailey lacks

26   Article III standing to seek other equitable relief, such as restitution.  "The False Advertising Law, the Unfair Competition Law, and the CLRA authorize a trial court to grant restitution to private

27   litigants asserting claims under those statutes."  *Colgan*, 135 Cal. App. 4th at 694.  The "restitution remedy" provided under the FAL, UCL, and CLRA is "identical" and should be "construed in the

28   same manner," namely as the return of the money or property that was unlawfully acquired by the defendant by unlawful means.  *Id.* at 695-96 (citation omitted).

gelcaps to address product labeling and packaging; (b) issuing warnings or notices to consumers and the class members concerning the true nature, quality, and capability of the Rite Aid gelcaps; and (c) immediately discontinuing any false, misleading, unfair, or deceptive advertising, marketing, or other representations described in the FAC. *See* Docket No. 98-3 at 24-25.

Bailey's testimony suggests that there is no likelihood that he will purchase the Rite Aid gelcaps in the future. Bailey testified that, after he determined that the Rite Aid gelcaps he purchased "did not work," he then purchased a Tylenol extended-release acetaminophen product for arthritis. Bailey Dep. Tr. at 80, 58, 99. He explained that he purchased the Tylenol product instead of Rite Aid gelcaps or tablets because the Rite Aid gelcaps had not worked and because he "trusted" the Tylenol product, which he has continued to take as of the date of his deposition. *Id.*

If it is the case, as Bailey's testimony suggests, that there is no likelihood that he will purchase Rite Aid gelcaps in the future, then he would lack Article III standing to seek the prospective injunctive relief he seeks. As a result, his claims and defenses would not be typical of those of the proposed injunctive relief class under Rule 23(b)(2).

In sum, the Court finds that, on this record, Bailey has satisfied the typicality requirement, except with respect to his request to seek prospective injunctive relief on behalf of a Rule 23(b)(2) class. In any renewed motion for class certification, Bailey may seek to establish that he has Article III standing to seek prospective injunctive relief and that his claims and defenses are typical of those of proposed members of a Rule 23(b)(2) class.

### 4. Adequacy of Representation

The requirement of adequate representation requires a showing that the representative parties "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires inquiry into whether the plaintiff and its counsel have any conflicts of interest with other class members, and whether the plaintiff and its counsel will prosecute the action vigorously on behalf of the class. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

Bailey argues that he and his counsel satisfy this requirement because "his interests are fully aligned with those of the class, sharing a commonality of predicate facts, claims, and damages." Docket No. 98-3 at 14. He further argues that his counsel have no conflicts of interest

1 | with any proposed class members, and that he and his counsel are capable and willing to prosecute

2 | this action vigorously on behalf of the proposed class. *Id.*

3 | The Court has no concerns regarding the adequacy of counsel and finds the adequacy-of-

4 | representation requirement satisfied with respect to them.

5 | Rite Aid argues that Bailey is not an adequate representative for the proposed class because

6 | his claims and defenses are not typical of those of the proposed class members. The Court's view

7 | on this topic aligns with that set forth in the section on typicality.

8 | **B.      Rule 23(b)**

9 | **1.      Rule 23(b)(3)**

10 | Under Rule 23(b)(3), a plaintiff must show that "the questions of law or fact common to

11 | class members predominate over any questions affecting only individual members, and that a class

12 | action is superior to other available methods for fairly and efficiently adjudicating the

13 | controversy." Fed. R. Civ. P. 23(b)(3).

14 | **a.      Predominance**

15 | Rule 23(b)(3) requires the Court to determine whether "questions of law or fact common to

16 | class members predominate over any questions affecting only individual members." Fed. R. Civ.

17 | P. 23(b)(3). "An individual question is one where 'members of a proposed class will need to

18 | present evidence that varies from member to member,' while a common question is one where 'the

19 | same evidence will suffice for each member to make a prima facie showing [or] the issue is

20 | susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442,

21 | 453 (2016) (citation omitted). The "predominance inquiry asks whether the common,

22 | aggregation-enabling, issues in the case are more prevalent or important than the non-common,

23 | aggregation-defeating, individual issues." *Id.* (quoting 2 W. Rubenstein, Newberg on Class

24 | Actions § 4:49 (5th ed. 2012)). "When 'one or more of the central issues in the action are

25 | common to the class and can be said to predominate, the action may be considered proper under

26 | Rule 23(b)(3) even though other important matters will have to be tried separately, such as

27 | damages or some affirmative defenses peculiar to some individual class members.'" *Id.* (quoting

28 | 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778 (3d ed. 2005)).

United States District Court
Northern District of California

A plaintiff must show that the predominance requirement is satisfied "by a preponderance of the evidence[.]"  *Olean*, ___ F.3d ___ , 2021 WL 1257845, at *4.  "The preponderance standard . . . flows from the Supreme Court's emphasis that the evidence used to satisfy predominance be 'sufficient to *sustain a jury finding* as to [liability] if it were introduced in each [plaintiff's] individual action.'"  *Id.* (quoting *Tyson Foods*, 577 U.S. at 459) (emphasis in the original).  "Establishing predominance, therefore, goes beyond determining whether the evidence would be admissible in an individual action.  Instead, a 'rigorous analysis' of predominance requires 'judging the persuasiveness of the evidence presented' for and against certification.'"  *Id.* (citation omitted); *see also Ellis*, 657 F.3d at 982 (holding that the district court erred in finding that the predominance requirement was met because, "[i]nstead of judging the persuasiveness of the evidence presented, the district court seemed to end its analysis of the plaintiffs' evidence after determining such evidence was merely admissible").

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action."  *Erica P. John Fund, Inc., v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011).

As noted above, the claims at issue are under the UCL, FAL, and CLRA, and a claim for unjust enrichment.

### i.    UCL, FAL, and CLRA

Bailey argues that common questions predominate over individual ones with respect to his claims under the UCL, FAL, and CLRA, because the questions that the Court has determined are capable of class-wide resolution with common proof, namely whether the "rapid release" statement was material to, and likely to deceive, a reasonable consumer, predominate over individual questions.

The Court agrees.  Courts routinely hold that if a plaintiff shows by a preponderance of the evidence that the questions of materiality and likelihood of deception can be resolved with common evidence based on the objective reasonable consumer standard, then common questions predominate over individual ones with respect to claims under the UCL, CLRA, and FAL.  *See, e.g., Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) ("This objective

1   test renders claims under the UCL, FAL, and CLRA ideal for class certification because they will

2   not require the court to investigate class members' individual interaction with the product.");

3   *Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012) (same). These courts reason that

4   materiality and likelihood of deception are the essential or central elements of a claim under the

5   CLRA, UCL, and FAL, respectively, and when these elements can be resolved with common

6   proof, they predominate over any remaining issues, even those that must be resolved on an

7   individual basis. *See id.*

8       Rite Aid argues that the cases in which courts have certified UCL, FAL, and CLRA classes

9   after concluding that materiality and likelihood of deception can be resolved with common proof

10  are distinguishable. According to Rite Aid, in those cases. the plaintiff showed that it was entitled

11  to a presumption of reliance, but here, the Butler survey "overwhelms" Bailey's evidence with

12  respect to whether materiality can be resolved with common proof, and this prevents Bailey from

13  invoking a presumption of reliance. Docket No. 107-4 at 18-19.

14      As a threshold matter, Rite Aid does not appear to dispute that the predominance

15  requirement is met with respect to Bailey's claims under the UCL and FAL. Rite Aid's argument,

16  which is about whether reliance can be presumed, is relevant to the question of whether Bailey has

17  satisfied the predominance requirement *with respect to his CLRA claim only*, as reliance is not an

18  element of a UCL and FAL claim. As discussed above, a plaintiff asserting a claim under either

19  the UCL or FAL must show *only* that the question of likelihood of deception can be established

20  with common proof in order to establish that common questions predominate over individual ones

21  with respect to such claims. *See Stearns*, 655 F.3d at 1020 ("[T]o state a claim under either the

22  UCL or the false advertising law, based on false advertising or promotional practices, it is

23  necessary only to show that members of the public are likely to be deceived.") (quoting *In re

24  Tobacco II Cases*, 46 Cal. 4th at 298). Bailey has done so here, for the reasons discussed above.

25  In the absence of any actual dispute, the Court finds that Bailey has satisfied the predominance

26  requirement with respect to his claims under the UCL and FAL.

27      As to the CLRA claim, the Court is not persuaded by Rite Aid's argument that Bailey has

28  not shown that he is entitled to a presumption of reliance. As noted, a court may presume class-

wide reliance where the plaintiff shows that common proof is capable of resolving the question of whether material representations were made to the proposed class.  *See In re Vioxx Class Cases*, 180 Cal. App. 4th at 129 ("If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class.") (emphasis added).  For the reasons discussed in more detail above, Bailey has made that showing here.  The common evidence to which Bailey points, which the Court finds to be more persuasive than the Butler survey for the reasons discussed above, is capable of sustaining a jury finding that all consumers who purchased Rite Aid gelcaps at Rite Aid brick-and-mortar stores were exposed to the "rapid release" statement and the price of Rite Aid gelcaps and to the prices and non-"rapid release" labels of Rite Aid tablets (which enabled consumers to make the comparison upon which Bailey's theory of liability depends), and that a reasonable consumer would find the "rapid release" statement at issue to be material when purchasing Rite Aid gelcaps.  This is sufficient to invoke the presumption of reliance with respect to Bailey's CLRA claim.  The Court finds, therefore, that Bailey has met his burden to show that common questions predominate over individual ones with respect to his CLRA claim.

In sum, the Court finds that the predominance requirement is satisfied with respect to the UCL, FAL, and CLRA claims.

### ii.      Unjust Enrichment

During the hearing held on April 6, 2021, in response to questions asked by the Court with respect to his claim for unjust enrichment, Bailey indicated that, at this juncture, he no longer seeks class certification with respect to this claim.  Accordingly, Bailey's motion for class certification is **DENIED WITHOUT PREJUDICE** with respect to his unjust enrichment claim.

### iii.      Damages

A plaintiff seeking certification under Rule 23(b)(3) must show that damages are capable of measurement on a class-wide basis, and such calculations "need not be exact."  *Comcast*, 569 U.S. at 35.  Under *Comcast*, a plaintiff must show that its proposed damages model is consistent with its theory of liability in the case.  *Id.*  "[T]he mere fact that there might be differences in

United States District Court
Northern District of California

1    damage calculations [across individual members of a class] is not sufficient to defeat class

2    certification." *Pulaski & Middleman*, 802 F.3d at 987 (quoting *Stearns*, 655 F.3d at 1026).

3        The damages and restitution owed to a plaintiff pursuant to the CLRA, and UCL and FAL,

4    respectively, is based on the difference between the price the consumer paid and the price a

5    consumer would have been willing to pay for the product had it been labeled accurately. *Id.* at

6    988-89. In other words, "the focus is on the difference between what was paid and what a

7    reasonable consumer would have paid at the time of purchase without the fraudulent or omitted

8    information." *Id.* (citing *Kwikset*, 51 Cal. App. 4th at 329).

9        Bailey's proposed damages model is comprised of two components. The first component

10   will purportedly measure the price premium that can be attributed to the "rapid release" statement

11   on the box of the Rite Aid gelcaps. Docket No. 92-11 ¶¶ 11, 14. Steven Gaskin, Bailey's survey

12   expert, has designed but not yet executed[14] a choice-based conjoint analysis that purports to be

13   capable of measuring this price premium, which is "the difference in market value of the Class

14   Products with the misrepresentation compared to the market value of the Class Products without

15   the misrepresentation." *Id.* ¶ 10. In other words, the conjoint analysis is intended to measure the

16   economic losses that a consumer who was deceived by the misrepresentations at issue would have

17   suffered on average. According to Gaskin,

18       *The general idea behind conjoint analysis is that the market value*
         *for a particular product is driven by features or descriptions of*
19       *features embodied in that product.* Customers are shown product
         profiles made up of varying features and asked, as part of a series
20       of "choice tasks," to indicate their preferred product profile. At no
         point are respondents asked to indicate directly how much they
21       would pay; rather, the analysis is based on choices respondents
         make among alternatives[.]
22

23   *Id.* ¶ 16 (emphasis supplied). The proposed conjoint analysis involves asking 500 consumers

24   nationwide to choose between different sets of product attributes, aggregating the responses, and

25   

26       [14] A plaintiff is not required to actually execute a proposed conjoint analysis to show that
     damages are capable of determination on a class-wide basis with common proof. *See Hadley*, 324
27   F. Supp. 3d at 1103 (holding that proposed conjoint analysis that had not yet been executed was
     sufficient to show that damages can be calculated on a class-wide basis with common proof). A
28   plaintiff need only show that "damages are *capable* of measurement" on a class-wide basis.
     *Comcast*, 569 U.S. at 34 (emphasis supplied).

United States District Court
Northern District of California

then using regressions to isolate the value that consumers attach to the attribute in question, namely "rapid release." *Id.* ¶¶ 17, 20-21, 43, 52.

The second component of the damages model will purportedly estimate the total class-wide damages. Colin Weir, Bailey's economics expert, opines he can calculate class-wide damages by taking the price premium determined by Gaskin's proposed conjoint analysis and then multiplying it by the number of Rite Aid gelcaps actually sold during the relevant time period. Docket No. 95-4 ¶ 52.

Rite Aid argues that Gaskin and Weir's model does not establish that damages are capable of determination on a class-wide basis for several reasons, none of which persuades.

First, Rite Aid argues that the proposed damages model does not satisfy *Comcast*'s requirement that a damages model be consistent with the theory of liability in the case. Specifically, Rite Aid argues that the damages model here would result in a premium that reflects only the average preferences of those proposed to be surveyed and would not take into account whether proposed class members were actually injured as a result of having compared the prices and labels of Rite Aid gelcaps and Rite Aid tablets.

In *Comcast*, the plaintiffs proposed four theories of measuring antitrust impact (i.e., antitrust injury in the form of economic losses suffered by the alleged anticompetitive conduct at issue). 569 U.S. at 31. The district court accepted only one of those theories as "capable of classwide proof," which purported to measure damages resulting from "reduced overbuilder competition," and it granted plaintiffs' motion for class certification in part on the ground that plaintiffs' damages model had shown that damages could be measured on a class-wide basis. *Id.* The Supreme Court reversed, holding that "a model purporting to serve as evidence of damages in this class action must measure only those damages attributable to th[e] theory" of liability at issue in the case. *Id.* at 35. The Supreme Court held that the district court erred in concluding that plaintiffs had met their burden of showing that damages could be measured on a class-wide basis, because the only evidence that plaintiffs proffered was a damages model that "failed to measure damages resulting from the particular antitrust injury on which petitioners' liability in this action [was] premised," namely the "reduced overbuilder competition" theory. *Id.* at 35-36 (noting that

25

the regression model, improperly, "assumed the validity of *all four* theories of antitrust impact initially advanced by respondents" and was not limited to the single theory of antitrust impact that the district court had accepted) (emphasis supplied).

The first aspect of the proposed model here, the choice-based conjoint survey to be performed by Gaskin, does not run afoul of *Comcast*.  That survey seeks to measure the premium that consumers paid, on average, as a result of the allegedly misleading conduct at issue and is therefore directly tied to the theory of liability in the case.   In mislabeling cases where the injury suffered by consumers was in the form of an overpayment resulting from the alleged misrepresentation at issue, such as here, courts routinely hold that choice-based conjoint models that are designed to measure the amount of overpayment satisfy *Comcast*'s requirements.  *See, e.g., Zakaria v. Gerber Prod. Co.*, No. LACV1500200JAKEX, 2017 WL 9512587, at *17 (C.D. Cal. Aug. 9, 2017), *aff'd*, 755 F. App'x 623 (9th Cir. 2018) (holding that a conjoint analysis that purported to measure consumers' overpayment caused by alleged misrepresentations was "distinguishable" from the damages model rejected in *Comcast* because the conjoint analysis was consistent with the theory of lability that mislabeling caused consumers to suffer economic losses in the form of overpayment); *see also Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (holding that, to comply with *Comcast*, "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability").

The second aspect of the damages model, the one that measures class-wide damages, is also tailored to Bailey's theory of liability, because it seeks to multiply the premium to be determined by Gaskin by the number of products sold to members of the proposed class.[15]  As such, it measures "only those damages attributable to" Bailey's theory of liability and is therefore consistent with *Comcast*.  *Comcast*, 569 U.S. at 35.

Rite Aid's argument that the damages model at issue includes purchases made by consumers who suffered no injury lacks merit.  The only evidence to which Rite Aid points to

---

[15] Only the products sold to the members of the narrower class proposed by Bailey during oral argument, namely consumers who purchased Rite Aid gelcaps in Rite Aid brick-and-mortar stores, would be included in this calculation.

support this argument is the Butler survey, which Rite Aid contends shows that a significant portion of consumers were not deceived as alleged in the FAC and were, therefore, not injured.

Rite Aid's argument "reflects a merits dispute about the scope of [its] liability, and is not appropriate for resolution at the class certification stage of this proceeding." *See Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1137 (9th Cir. 2016). The Court's task at the class certification stage is to "ensure that the class is not 'defined so broadly as to include a great number of members who for some reason *could not have been harmed* by the defendant's allegedly unlawful conduct.'" *Id.* at 1138 (citation omitted) (emphasis supplied). A proposed class is not overbroad where it is "reasonably co-extensive with Plaintiff's chosen theory of liability." *Id.* at 1137-38. Here, the proposed class, as narrowed during oral argument, includes *only* those consumers who *could have been harmed* by Rite Aid's alleged misconduct, because it includes only consumers who purchased Rite Aid gelcaps at brick-and-mortar stores, (1) all of whom, according to the evidence discussed above, were exposed to the "rapid release" statement at issue and to the prices and labels of both the Rite Aid gelcaps and Rite Aid tablets, and (2) all of whom, according to Silverman, were likely misled into believing that the Rite Aid gelcaps were faster-acting than Rite Aid tablets and likely found the "rapid release" statement to be material. Thus, the proposed class here is co-extensive with Bailey's theory of liability. *See id.* (holding that a proposed class is "reasonably co-extensive" with the plaintiff's theory of liability if it includes *only* consumers who "could . . . have been harmed by [the defendant's] allegedly unlawful conduct"). The proposed class is, therefore, not overbroad. *Cf. id.* (noting that a proposed class is overbroad where it includes "large numbers of class members who *were never exposed* to the challenged conduct to begin with" and therefore "could *not* have been harmed" by the alleged misconduct) (citing *Mazza*, 666 F.3d at 596) (emphasis added).

Accordingly, the Court finds that the proposed damages model does not run afoul of *Comcast*.

Rite Aid next argues that the proposed damages model is not capable of reliably determining the premium that proposed class members purportedly paid as a result of the "rapid release" statement because it only measures survey respondents' willingness to pay (i.e., demand)

1    but it does not take into account supply-side factors.  The Court disagrees.  Bailey has shown, and

2    Rite Aid does not dispute, that the proposed damages model employs actual prices and quantities

3    of past sales (based on actual sales data), which inherently reflect *both* demand and supply factors.

4    *See* Docket No. 92-11 ¶ 26.  Courts routinely hold that conjoint analyses that employ actual sales

5    data reflecting prices and quantities of items actually sold in the past adequately account for

6    supply-side factors.  *See, e.g.*, *Hadley*, 324 F. Supp. 3d at 1105-06 (holding that courts routinely

7    find that a proposed conjoint analysis adequately accounts for supply-side factors where it utilizes

8    actual sales data, including actual prices and quantities of past sales) (collecting cases);

9    *Krommenhock v. Post Foods, LLC.*, 334 F.R.D. 552, 576 (N.D. Cal. 2020) (Orrick, J.) (same).

10   Rite Aid has not shown that a different conclusion is warranted here; it cites no controlling

11   authority that supports the proposition that a conjoint analysis that employs actual sales data, such

12   as the one at issue here, fails to properly take into account supply-side factors.

13       Relying on *Zakaria v. Gerber Prod. Co.*, 755 F. App'x 623, 624 (9th Cir. 2018), Rite Aid

14   next contends that the proposed damages model must be rejected because it fails to reflect market

15   realities.  Rite Aid argues that, for example, the survey aspect of the model describes pill counts

16   that do not exist in the real world (i.e., the survey proposes a product choice with a 500-pill count

17   even though the highest pill count available in the market is 225), and presents survey respondents

18   with unrealistic product choices (e.g., one product is described as both rapid release and extended

19   release even though, in the marketplace, the same product cannot have both a rapid and slow

20   release).  This argument is unavailing.  First, *Zakaria* is an unpublished Ninth Circuit

21   memorandum and therefore has no precedential force.  Second, in that case, the Ninth Circuit held

22   that the district court did not abuse its discretion in concluding that the conjoint analysis there

23   "was inadequate for measuring class-wide damages" on the basis that the model failed to "reflect

24   supply-side considerations and marketplace realities that would affect product pricing." *Id.*  A

25   review of the district court's opinion shows that its rejection of the conjoint analysis was

26   predicated on its acceptance of the defendant's argument that the model "only evaluated

27   consumers' subjective willingness to pay as an abstract concept" and ignored supply-side factors.

28   *See Zakaria*, 2017 WL 9512587, at *18-19.  For the reasons discussed above, the conjoint analysis

1    here *does* account for supply-side factors and, therefore, does not suffer from the flaws that

2    justified the rejection of the model in *Zakaria*.

3    Further, to the extent that the survey questions that Gaskin has proposed contain

4    typographical errors or other inaccuracies as to consumers' shopping experiences, such errors

5    would not warrant denying Bailey's motion for class certification.  *See Hadley*, 324 F. Supp. 3d at

6    1107–08 (rejecting the argument that the proposed conjoint analysis' purported failure to

7    "adequately mimic real-life shopping experience[s]" precluded the certification of a Rule 23(b)(3)

8    class and holding that any such inaccuracies only affect the weight to be accorded to the conjoint

9    analysis).

10   For these reasons, the Court concludes that Bailey has met his burden to show that his

11   proposed damages model comports with *Comcast* and that damages are capable of measurement

12   on a class-wide basis.

13                              **b.      Superiority**

14   Rule 23(b)(3) requires a court to consider whether a class action would be a superior

15   method of litigating the claims of the proposed class members by taking into account (A) the class

16   members' interests in individually controlling the prosecution or defense of separate actions; (B)

17   the extent and nature of any litigation concerning the controversy already begun by or against

18   class members; (C) the desirability or undesirability of concentrating the litigation of the claims in

19   the particular forum; and (D) the likely difficulties in managing a class action.  Fed. R. Civ. P.

20   23(b)(3).

21   Bailey argues that a class action is superior to other available methods of litigating the

22   claims of the proposed class members because (1) the damages for each proposed class member

23   are not significant; (2) no other cases have been brought against Rite Aid for the same conduct at

24   issue here; (3) concentrating the claims in this forum would be desirable; and (4) judicial economy

25   would be promoted and the litigation of the claims would be made more efficient and practical.

26   Rite Aid does not dispute that Bailey's showing satisfies the superiority requirement.  The

27   Court agrees and finds that this requirement is met.

28

United States District Court
Northern District of California

29

United States District Court
Northern District of California

2.      **Rule 23(b)(2)**

Rule 23(b)(2) permits certification of a class where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  "Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive."  *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001).

Bailey argues that certification of the proposed class under Rule 23(b)(2) is appropriate because Rite Aid continues to use the "rapid release" statement on the label of the Rite Aid gelcaps and continues to mislead consumers as alleged in the FAC.  For the proposed class he seeks to certify under Rule 23(b)(2), Bailey seeks (1) an order requiring Rite Aid to adequately represent the true nature, quality, and capability of the Rite Aid gelcaps; (2) an order (a) issuing a nationwide recall of the Rite Aid gelcaps to address product labeling and packaging; (b) issuing warnings or notices to consumers and the class members concerning the true nature, quality, and capability of the Rite Aid gelcaps; and (c) immediately discontinuing any false, misleading, unfair, or deceptive advertising, marketing, or other representations described in the FAC.

Rite Aid argues that Bailey cannot obtain certification under Rule 23(b)(2) because the monetary relief that Bailey seeks is "not incidental" to the injunctive relief he requests.

Here, Bailey does not seek to obtain monetary relief for the proposed members of the Rule 23(b)(2) class; instead, consistent with the language of Rule 23(b)(2), the relief he seeks for this proposed class is limited to the prospective injunctive relief described above.  Bailey is not precluded from seeking certification of a Rule 23(b)(2) class for injunctive relief merely because he also seeks certification of a Rule 23(b)(3) class for damages and restitution.  Indeed, "Ninth Circuit precedent indicates that the court can separately certify an injunctive relief class and if appropriate, also certify a Rule 23(b)(3) damages class."  *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 573 (C.D. Cal. 2014) (rejecting the argument that "the court can certify a Rule 23(b)(2) class only if the monetary relief sought is purely incidental to the injunctive relief").

The Court finds, however, that Bailey has not shown that certification under Rule 23(b)(2) would be appropriate because he has not shown that he can satisfy the typicality and adequacy-of-representation requirements under Rule 23(a) in light of his deposition testimony, which suggests that he may not have standing under Article III to seek prospective injunctive relief.

For the foregoing reasons, the Court **DENIES WITHOUT PREJUDICE** Bailey's motion for certification under Rule 23(b)(2).

V.    **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Bailey's motion for class certification under Rule 23(b)(3) with respect to his claims under the UCL, FAL, and CLRA.  While granting the motion, the Court reaffirms that this is not a resolution on the merits and had a properly conducted survey reached the same results as were presented, the result may have been different.  The Court otherwise **DENIES WITHOUT PREJUDICE** his motion for class certification.

This order terminates Docket Numbers 92, 95, 96, 107, 115.

**IT IS SO ORDERED.**

Dated:  April 28, 2021

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**