**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **THOMAS BAILEY AND JAMAL ERAKAT,** on behalf of themselves and all others similarly situated**,**<br><br>Plaintiff**,**<br><br>vs.<br><br>**RITE AID CORPORATION,**<br><br>Defendant**.** | CASE NO.  4:18-cv-6926-YGR<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND SETTING FINAL FAIRNESS HEARING;**<br>**MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT;**<br>**DENYING MOTION TO CONVERT CERTIFIED RULE 23(B)(3) CLASS TO 23(B)(2) CLASS; AND GRANTING MOTION TO TERMINATE THE 23(B)(3) CLASS**<br><br>Dkt. Nos. 156, 157, 162, 163, 164 |

On June 14, 2022, the Court held a hearing on plaintiffs' Thomas Bailey and Jamal Erakat Motion for Preliminary Approval of Class Action Settlement (Dkt. No, 157); Motion for Leave to File a Second Amended Complaint (Dkt. No. 156); Motion to Covert the Certified Rule 23(b)(3) Class to a Rule 23(b)(2) Class (Dkt. No. 164); and defendant Rite Aid's Motion to Decertify or Terminate the Rule 23(b)(3) Class (Dkt. No. 163).

Having considered the motion briefing, the arguments of counsel, the relevant law, and the terms of the settlement agreement, as well as the record in this case, and based on the reasons and terms set forth herein, the Court **GRANTS** the plaintiffs' Motion for Preliminary Approval of Class Action Settlement based on Rule 23(b)(2); **GRANTS** the Motion for Leave to File a Second Amended Complaint; **DENIES** the Motion to Covert the Certified Rule 23(b)(3) Class to a Rule 23(b)(2) Class as unnecessary; and **GRANTS** the unopposed Motion to Terminate the Rule 23(b)(3) class.

## I.  BACKGROUND

In the Second Amended Complaint ("SAC"), plaintiffs allege as follows:

Rite Aid produces, manufactures, markets, distributes, and sells a generic version of certain over-the-counter drugs under the Rite Aid brand, including the Rite Aid Gelcaps. Rite Aid "misled

and continues to mislead consumers about the nature, quality, and effectiveness" of the Rite Aid Gelcaps through its labeling. (SAC ¶ 7.) As shown on the package of the Rite Aid Gelcaps, the term "'rapid release' does not actually mean that the drug works faster for consumers than non-rapid release products," as studies show that "traditional, non-rapid release acetaminophen products can be equally effective in the same, if not faster, time period than its Rite Aid rapid release products." (*Id.* ¶¶ 9-11.) Rite Aid nevertheless charges a premium for its rapid release Gelcaps, and it markets the Rite Aid Gelcaps with "false, misleading, unfair, deceptive labeling and marketing in an effort to dupe consumers into purchasing these Gelcaps for prices that exceed their true value." (*Id.*)

Plaintiffs both purchased a bottle of Rite Aid Gelcaps, 100-count, for a price that was higher than Rite Aid's acetaminophen tablets in the same count, which were not labeled as "rapid release." (*Id.* ¶¶ 73-88.) They purchased the Rite Aid Gelcaps "over other Rite Aid brand and other acetaminophen products solely because they were labeled as rapid release and they were seeking 'faster' relief." (*Id.* ¶¶ 77, 85.)  Rite Aid's labeling misled plaintiffs into believing that the Rite Aid Gelcaps they purchased would provide faster relief than other, cheaper Rite Aid acetaminophen products. (*Id.*) Had plaintiffs known that the Rite Aid Gelcaps did not act any faster than traditional, cheaper Rite Aid products, they would not have been willing to pay the premium that they paid for the Rite Aid Gelcaps. (*Id.* ¶¶ 78,87.)

In the SAC, plaintiffs assert claims for violations of (1) the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500; (2) the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; and (3) the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761; and for (4) unjust enrichment.

## II.    THRESHOLD ISSUES/ PENDING MOTIONS

### A.    Motion for Leave to File Second Amended Complaint

On April 29, 2022, the parties filed a stipulated motion to allow plaintiffs leave to file a second amended complaint. (Dkt. No. 156.) As reflected in the joint stipulation, the proposed amended complaint adds Jamal Erakat as a class representative for the purposes of settlement. Given the specifics of this case, the Court finds the amendment appropriate and hereby **GRANTS**

the parties' request. Accordingly, the Second Amended Complaint filed at Docket Number 156-1 is deemed to be the operative complaint in this case.

### B.     Motion to Convert the Certified Rule 23(b)(3) Class to a Rule 23(b)(2) Class

On May 6, 2022, plaintiffs filed a Motion to Convert the Certified Rule 23(b)(3) Class to a Rule 23(b)(2) Class. (Dkt. 164.) In their motion, plaintiffs ask the Court to modify its previous class certification order by converting the Rule 23(b)(3) class to a 23(b)(2) class for purposes of settlement. While the Court maintains the power to alter or amend an order granting or denying class certification at any time before a final judgment is entered, Fed. R. Civ. P. 23(c)(1)(C), such amendment is not necessary here. Rather than amend its previous class certification by converting the certified Rule 23(b)(3) class to a Rule 23(b)(2) class, consistent with Rule 23(c), and explained in further details below, the Court conditionally approves the Rule 23(b)(2) for settlement purposes only. Accordingly, plaintiffs' request to convert the classes is **DENIED**.

### C.     Motion to Decertify or Terminate the Rule 23(b)(3) Class

On May 5, 2022, defendant Rite Aid moved without opposition from plaintiffs, to decertify or terminate the Rule 23(b)(3) damages class in light of the parties' settlement. Given the parties' representations that prosecuting a Rule (b)(3) case would only yield at most nominal damages to the class, the Court finds that prosecuting a Rule 23(b)(3) class would no longer be "superior to other available methods for fairly and efficiently adjudicating the controversy," as required by Rule 23(b)(3). Thus, the motion to decertify the Rule 23(b)(3) class is **GRANTED**.

### III.     KEY TERMS OF THE SETTLEMENT AGREEMENT

#### A.     Injunctive Relief for the Class

Pursuant to the settlement agreement, within three (3) months after the Effective Date of the settlement agreement, the unqualified term "Rapid Release" will not be included on the labeling on the front of the product's packing. Nothing in the settlement agreement shall prohibit or limit Rite Aid's right or ability to continue to compare its products to Tylenol Rapid Release Gels Active Ingredient or use or permit others to use, in accordance with all applicable laws and regulations, its licenses, logos, taglines, products descriptors, or registered trademarks. Nothing in the settlement agreement shall cause or be construed as requiring Rite Aid to initiate a recall of

United States District Court
Northern District of California

3

products already in the stream of commerce. The settlement also does not prohibit Rite Aid or LNK from selling any remaining inventory of the products with the prior labeling, and the parties contemplate and expressly agree that all remaining inventory of the product with the prior labeling can be sold by Rite Aid and LNK pursuant to the settlement agreement.

### B.     Class Members Release

In exchange for the benefits conferred by the settlement, all class members would be deemed to have released Rite Aid from all claims for injunctive relief that were or could have been asserted that arise from the advertising labeling, and marketing of the Class Rapid Release Gels. The release does not affect class members' rights to bring claims for monetary damages.

### C.     Attorneys' Fees and Costs

Under the settlement agreement, Rite Aid agrees to pay the total sum of Three Hundred Sixty-One Thousand Six Hundred Sixty-six Dollars and Sixty-Six Cents ($361,666.66) for full and complete resolution and release of the lawsuit.

## IV.     PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

### A.     Legal Standard

A court may approve a proposed class action settlement of a class proposed to be certified only "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class certification. Fed. R. Civ. P. 23(e)(2). In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998), o*verruled on other grounds by Dukes*, 564 U.S. at 131. The *Hanlon* court identified the following factors as relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Settlements that occur before formal class certification also "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).  In reviewing such settlements, in addition to considering the above factors, a court also must ensure that "the settlement is not the product of collusion among the negotiating parties."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

**B.**     **Class Definition and Basis for Conditional Certification**

The Settlement Class consists of only a Rule 23(b)(2) class defined as:

> All persons who purchased the Class Rapid Release Gelcaps in the United States within the applicable statute of limitations established by the State of California through the final disposition of this action.

("the Settlement Class").  (Dkt. No. 157, Motion for Preliminary Approval, ("Mot.") at 20.)

The Settlement Class and the class previously certified are different. The Court previously granted in part and denied in part plaintiff Bailey's motion for class certification. (Dkt. No. 129, Class Certification Order, "Class Cert. Order".) Specifically, and by contrast to the definition above, the Court granted plaintiff's motion to certify a damages class defined as:

> All persons who purchased the Class Rapid Release Gelcaps in the *State of California* within the applicable statute of limitations established by the State of California through the final disposition of this action.

(*Id.*; difference italicized.)

The difference between the two classes is appropriate given the specifics of this case. The parties previously briefed class certification. During briefing, class counsel learned that a Rule 23(b)(3) damages class would not be beneficial to class members and that the price premium paid by the proposed class was minimal, leaving class members at risk of receiving only nominal damages—with no assurance of receiving protection from deceptive marketing of the products continuing into the future. Thus, class counsel determined that the best possible outcome for class members would come in the form of injunctive relief. To that end, plaintiffs now request to terminate the previously certified Rule 23(b)(3) class and request certification of the Rule 23(b)(2) injunctive relief class.[1]

---

[1] While plaintiff Mr. Bailey previously sought to certify a Rule 23(b)(2), the Court found

The Court finds that the injunctive relief as provided for in the settlement agreement will prevent future harm from occurring. As such, class counsel's redefining of the Settlement Class as a nationwide class is appropriate, as such relief will protect plaintiffs and class members on a national scale from suffering further injury in the future.

The Court finds that, for purposes of settlement, plaintiffs have satisfied the requirements of Rule 23(a) as well as the requirements for certification under Rule 23(b)(2).

With respect to numerosity under Rule 23(a)(1), plaintiffs argue that this requirement is satisfied because "Rite Aid's sales data indicates that from 2014 through 2019 it sold over 600,000 units of Class Rapid Release Gelcaps in the state of California." (Mot. at 20.) Rite Aid does not dispute this. Accordingly, the Court finds that the numerosity requirement is met.

Rule 23(a)(2) commonality requires "questions of fact or law common to the class," though all questions of fact and law need not be in common. *Hanlon*, 150 F.3d at 1026. The focus of this action—whether a reasonable consumer is likely to be deceived by Rite Aid's alleged conduct, and whether a reasonable consumer would have found the "rapid release" statement to be material—is common to all class members.

Rule 23(a)(3) requires that the plaintiff show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Id*. at 1020. Here, the Court previously found that Mr. Bailey did not satisfy the typicality requirement with respect to his request to seek prospective injunctive relief on behalf of a Rule 23(b)(2) because Mr. Bailey previously testified in his deposition that he would be unwilling to purchase the product again even if Rite Aid fixed its labeling. (Class Cert. Order at 19.) The Court's ruling still stands. Plaintiffs have not submitted any further evidence with respect to Mr. Bailey's ability to satisfy

---

that Mr. Bailey lacked standing to pursue prospective injunctive relief given his admission during deposition that he would be unwilling to purchase the product again even if Rite Aid were ordered to truthfully market the Class Rapid Release Gelcaps. (Class Cert. Order, at 30-31.) Class counsel has since moved to amend the complaint to add plaintiff Erakat, who plaintiffs avers, and Rite Aid does not contest, does not present these same concerns and therefore has standing to sue for the proposed prospective relief given his desire to purchase the Class Rapid Release Gelcaps in the future. (*See* SAC ¶ 80.)

United States District Court
Northern District of California

United States District Court
Northern District of California

the typicality requirement. As such, the Court finds that Mr. Bailey has not satisfied the typicality requirement with respect to the Rule 23(b)(2) class.

However, unlike Mr. Bailey, Mr. Erakat satisfies the typicality requirement of Rule 23(b)(2). Mr. Erakat represents in the Second Amended Complaint that he would purchase the Class Rapid Release Gelcaps again in the future if properly labeled. (SAC ¶ 80.) Accordingly, Mr. Erakat's claims and defenses would be typical of those of the proposed injunctive relief class.

With respect to Rule 23(a)(4), the Court's views with respect to Mr. Bailey's adequacy of representation of the proposed class aligns with that set forth in the section on typicality. With respect to Mr. Erakat, no conflicts of interest appear as between plaintiff and the members of the Settlement Class. Further, Mr. Erakat assisted counsel in this case by reviewing the pleadings, drafting the Second Amended Complaint, and reviewing the settlement agreement. (Dkt. No. 157-1, Declaration of Mitchell Breit, "Breit Decl.", ¶ 20.)  Class Counsel have demonstrated that they are qualified and have experience with prosecuting class actions of this kind and therefore adequate to represent the Settlement Class as well.

The Settlement Class further satisfies Rule 23(b)(2) in that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the whole class." Fed. R. Civ. P. 23(b)(2). The injunctive relief described in the settlement agreement would prohibit Rite Aid from engaging in the unlawful conduct, making Rule 23(b)(2) certification appropriate. *See Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (explaining that Rule 23(b)(2) certification is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole").

Based on the foregoing, the proposed class is conditionally certified pursuant to Rule 23(c).

**C.      Settlement Agreement Appears Fair and Reasonable**

The settlement agreement, a copy of which is attached hereto as **Exhibit A**, is granted preliminary approval pursuant to Rule 23(e)(2).  Based upon the information submitted, the agreement falls within the range of possible approval as fair, adequate and reasonable, and there is

1    a sufficient basis for notifying the Class and for setting a Fairness and Final Approval Hearing.

2          As to the *Hanlon* factors, the Court finds that they indicate the settlement here is fair and

3    reasonable.  Absent the settlement, the parties would have to proceed to trial. This would require

4    the parties to incur the expense to prepare expert disclosures and reports, finalize all pretrial

5    filings, conduct the trial (and potential appeals), all with little potential benefit to the class. Even if

6    plaintiffs were to succeed on the merits at trial, any financial award obtained by the class would be

7    significantly eroded by the additional costs and fees. However, the settlement provides immediate,

8    meaningful benefits to the class in the form of nationwide injunctive relief.

9          Further, importantly, although the class members are releasing their injunctive right claims

10   against Rite Aid, the release does not cover any claims for monetary damages.  Given the fact that

11   class members can still seek damages against Rite Aid, the settlement for injunctive relief only

12   provides value to the class members.

13         The settlement agreement appears to have been the product of arm's length and informed

14   negotiations.  This case was fully and aggressively litigated by the parties through class

15   certification and was only resolved after the Court issued its order on class certification.  Thus, the

16   parties have vetted their claims and know the strengths and weaknesses of their case.

17         In addition, the parties negotiated a cap on attorneys' fees and costs and a service award

18   only after they agreed on the relief for the Settlement Class. (Breit Decl., ¶ 16.) Accordingly, the

19   Court finds that the record does not indicate collusion or self-dealing.  *See In re Bluetooth*, 654

20   F.3d at 946-47.

21         The relief provided for the class appears to be adequate, taking into account:

22              (i) the costs, risks, and delay of trial and appeal;

23              (ii) the relief provided to the class;

24              (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

25              (iv) any agreements required to be identified under Rule 23(e)(3).

26   Moreover, the settlement agreement appears to treat Class members equitably relative to each

27   other.

28         Based on the foregoing, the Court conditionally certifies the class and provisionally

appoints Milberg Coleman Bryson Phillips Grossman, PLLC and Simmons Hanly Conroy as class counsel, and plaintiff Jamal Erakat as the class representative.

### D.   Class Notice is Not Required

Unlike a Rule 23(b)(3) class where notice is mandatory, Rule 23(c)(2) states that, "[f]or any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2). Because of this, "[c]ourts typically require less notice in Rule 23(b)(2) actions, as their outcomes do not truly bind class members" and there is no option for class members to opt out. *Lilly v. Jamba Juice Co.*, No. 13-CV-02998-JST, 2015 WL 1248027, *8-9 (N.D. Cal. Mar. 18, 2015) (holding that because the Settlement Class would not have the right to opt out from the injunctive settlement and the settlement did not release the monetary claims of class members, class notice was not necessary); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011) (Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action."); *Penland v. Warren Cty. Jail*, 797 F.2d 332, 334 (6th Cir. 1986) ("[T]his court has specifically held that notice to class members is not required in all F.R.C.P. 23(b)(2) class actions . . . .") (internal quotation marks omitted).

Here, the terms of the Agreement provide for injunctive relief only and further expressly preserve the rights of the class to bring claims for monetary relief. (Settlement Agreement at ¶ 7) (Release of Claims). Accordingly, the Court concludes that notice to the Rule 23(b)(2) class is not required.

Although the Court determines that notice to class members is not necessary, the Class Action Fairness Act ("CAFA") requires that notice be given to state and federal authorities consistent with 28 U.S.C. § 1715. Thus, the parties are still required to provide the required notice under CAFA.

### E.   Attorneys' Fees and Class Representative Awards

Plaintiff and their counsel shall file their motion for attorneys' fees and for Class Representative awards no later than July 13, 2022. Each Settlement Class member shall have the right to object to the motion for attorneys' fees and Class Representative awards by filing a written

United States District Court
Northern District of California

objection with the Court no later than August 19, 2022. Plaintiffs shall file a reply brief responding to any objection no later than September 9, 2022.

### F.      Fairness and Final Approval Hearing

All briefs, memoranda, and papers in support of final approval of the settlement shall be filed no later than September 16, 2022.

The Court will conduct a Fairness and Final Approval Hearing on Tuesday, October 25, 2022, at 2:00 p.m., to determine whether the settlement agreement should be granted final approval as fair, reasonable, and adequate as to the Class.  The Court will hear all evidence and argument necessary to evaluate the settlement agreement and will consider class counsel's motion for attorneys' fees and for class representative awards.

Class members may appear, by counsel or on their own behalf, to be heard in support of or opposition to the settlement agreement and class counsel's motion for attorneys' fees and class representative awards by filing a Notice of Intention to Appear no later than October 4, 2022.

The Court reserves the right to continue the date of the final approval hearing without further notice to class members.

The Court retains jurisdiction to consider all further applications arising out of or in connection with the Settlement.

| Event | Date |
|---|---|
| Class Counsel to file their motion for fees and costs and Class Representative awards | JULY 13, 2022 |
| Objections to fees and costs and Class Representative awards due | AUGUST 19, 2022 |
| Reply to objections to fees and costs and Class Representative awards due | SEPTEMBER 9, 2022 |
| Motion for Final Approval to be filed by | SEPTEMBER 16, 2022 |
| Fairness and Final Approval Hearing | OCTOBER 25, 2022 AT 2:00 PM via Zoom   NOTE: Subject to change without further notice to the Class. |

United States District Court
Northern District of California

This terminates Docket Nos. 156, 157, 162, 163, 164.

**IT IS SO ORDERED.**

Dated: June 15, 2022

_____

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

# EXHIBIT A

## <u>SETTLEMENT AGREEMENT</u>

This Settlement Agreement ("Settlement Agreement") is entered into as of the date last signed below between and among Plaintiffs Thomas Bailey ("Bailey") and Jamal Erakat ("Erakat") (collectively "Plaintiffs"), and their counsel, Milberg Coleman Bryson Phillips Grossman LLC ("Milberg") and Simmons Hanly Conroy LLC (collectively "Plaintiffs' Attorneys") and Rite Aid Inc., ("Defendant" or "Rite Aid") and LNK International Inc. ("LNK") Rite Aid's supplier of the products in question.  Plaintiffs and Defendant and LNK are collectively referred to as the "Parties" or individually as a "Party."

<u>RECITALS</u>

A.      On November 11, 2018, Plaintiffs filed a purported class action against Rite Aid Corporation which is currently captioned *Thomas Bailey v. Rite Aid Corporation* alleging that the marketing and sale of certain Rapid Release Gelcaps (the "Products") was false and misleading (the "Lawsuit").  The Complaint was amended on January 4, 2019.

B.      Shortly thereafter, Rite Aid requested and LNK agreed to indemnify Rite Aid with respect to the claims made in the Lawsuit.

C.      Defendant and LNK deny all of the allegations set forth in the Lawsuit that the sale and marketing of the Products was or is false or misleading in any way, and denies that Defendant is liable to Plaintiffs or any other putative class member for its marketing and sales of the Products and/or that the case can proceed as a class action.

D.      The Plaintiffs and Defendant have already filed, briefed, and argued a motion to certify a class, which the Court granted pursuant to Rule 23(b)(3) and denied without prejudice as to Rule 23(b)(2).  However, no class notice was issued in part because the Parties were interested in exploring settlement. The Parties have now agreed to enter into this Settlement Agreement to

avoid the further expense of litigation, and to be completely free of any claims and disputes regarding the Products.

      D.     The Parties now desire to reach a settlement of all existing or potential claims or disputes between them relating to the Lawsuit and any matters relating to the Products, in accordance with the below terms.

AGREEMENT

      NOW, THEREFORE, in consideration of the recitals and mutual promises contained in this Settlement Agreement, the receipt and adequacy of which are hereby acknowledged, the Parties agree as follows:

1.     Recitals.  The Recitals set forth above are expressly incorporated herein by reference as though fully set forth herein.

2.     The Basic Settlement Terms.  As explained in greater detail in the balance of this Settlement Agreement, in return for the payment of a portion of the attorneys' fees and expenses accrued in prosecuting the Lawsuit and Rite Aid's agreement to change the label on the Products, individual class representative Plaintiffs Bailey and Erakat agree to forego any claim for damages or other monetary relief, and agree to dismiss the Lawsuit with prejudice.

      3.     Payment.  LNK, on behalf of Rite Aid, agrees to pay the total sum of Three Hundred Sixty - One Thousand One Hundred Sixty-Six Dollars and Sixty Six Cents ($361,666.66) (the "Payment") for full and complete resolution and release of the Lawsuit, including the conversion of the existing (b)(3) class into a (b)(2) settlement class. Following full and complete execution of the Settlement Agreement LNK shall make the Payment within seven (7) days of the  time that the Court (i) grants final approval to the Settlement,  converts, terminates and/or decertifies the  (b)(3) class pursuant to an

2

unopposed motion  to be filed,  and dismisses the case and (ii) the time for any appeal or petition for review or writ of certiorari has expired or, if an appeal or petition for review is taken and dismissed, or the Settlement is affirmed, the time period during which further petition for hearing, appeal, or writ of certiorari can be taken has expired, (the "Effective Date").For the avoidance of doubt, if any one of the listed components in this section 3 is not given final approval or is modified in any way, the Effective Date will not be reached and this Settlement Agreement will not be effective.  LNK may make payment by CHECK to the address below:

MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN LLC
Mitchell Breit
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929

4.    Label Change.

(a)    Within three (3) months after the Effective Date, the unqualified term "Rapid Release" will not be included on the labeling on the front of the Products' packaging.  Said modifications are hereby deemed acceptable and sufficient to Plaintiffs and Plaintiffs' Attorneys and are part of the consideration for this Settlement Agreement.  Nothing in this Settlement Agreement shall prohibit or limit Rite Aid's right or ability to continue to compare its products to Tylenol Rapid Release Gels Active Ingredient or use or permit others to use, in accordance with all applicable laws and regulations, its licenses, logos, taglines, product descriptors, or registered trademarks.  Nothing in this Settlement Agreement shall cause or be construed as requiring Rite Aid to initiate a recall of Products already in the stream of commerce.  This Settlement Agreement does not prohibit Rite Aid or LNK from selling any remaining inventory of the Products with the prior labeling, and

the Parties contemplate and expressly agree that all remaining inventory of the Product with the prior labeling can be sold by Rite Aid and LNK pursuant to this Settlement Agreement.

(b)   If, after the expiration of the time period discussed in Paragraph 4(a) above, Plaintiffs or Plaintiffs' Attorneys believe that the labeling of the Products does not comply with the terms discussed in Paragraph 4(a), they shall provide Rite Aid with written notice of the specific facts and circumstances of any alleged noncompliance; Rite Aid will thereafter have ninety (90) days after notice to bring its practices in compliance with  Paragraph 4(a) and will not be deemed to be in breach of this Agreement if it does so within that ninety-day period.  If Rite Aid does not bring its practices in compliance within the ninety-day period, Plaintiffs retain the right to notify the Court in which this action is presently pending of their intention to reopen their claims for injunctive relief.

5.   <u>No Admission of Liability</u>.  The Parties acknowledge that Defendant and LNK deny any wrongdoing whatsoever in connection with their dealings with Plaintiffs or other consumers of the Products and that this Settlement Agreement is made solely for the purpose of compromising the Lawsuit and avoiding the time and expense of litigation and appeals.  It is expressly understood and agreed by the Parties that nothing contained in this Settlement Agreement shall constitute or be treated as an admission of any wrongdoing or liability on the part of Defendant or LNK.  The Settlement Agreement shall not be offered or received in evidence or requested in discovery in any action or proceeding as evidence of an admission or concession by Defendant or LNK.

6.   <u>Covenant Not To Sue</u>.

(a)   Plaintiffs agree that they and their agents, successors, assigns, personal representatives, heirs, executors, trustees, and administrators will forever refrain from

instituting, maintaining, collecting, proceeding, cooperating, or assisting in the prosecution against Rite Aid or LNK, or any of their respective parents, subsidiaries, or affiliates, and each of their respective agents, principles, officers, directors, members, shareholders, employees, former employees, representatives, attorneys, insurers, successors and assigns, and each of them, any claim, demand, action, cause of action, or liability arising out of or related to the Lawsuit and/or the Products, whether or not now known, suspected or claimed, which they have ever had, now have, or hereafter may have against any such entities or individuals.  In addition, Plaintiffs' Attorneys agree and hereby represent that they do not represent, nor have any knowledge of, any other potential claimant with claims similar to those at issue and released herein.

(b)    Plaintiffs also agree that unless requested to do so by Defendant or LNK, they will not testify or otherwise participate in any legal proceeding brought by others against Rite Aid or LNK, or any of their parents, subsidiaries, or affiliates, including any case in a court of law or before any administrative agency or arbitration panel, unless compelled to do so by subpoena or court order.  In the event Plaintiffs are subpoenaed or compelled to testify or otherwise participate in any legal proceeding against Defendant or LNK, they or their counsel will immediately provide a copy of the subpoena or notice to Defendant and LNK via Defendant's counsel of record in the Lawsuit, indicating the matter in which such subpoena or notice is issued.

7.    <u>Release</u>.  In consideration of the above referenced label change, the payment referenced in paragraph 2 above, and for the mutual avoidance of further costs, inconvenience, and uncertainties relating to this Lawsuit, Plaintiffs, on behalf of themselves and  the class, hereby release and forever discharge each of Rite Aid and LNK and all of their officers, directors, members, owners, partners, servants, agents, attorneys, employees, and other

representatives, including any parents, direct and indirect subsidiaries and/or affiliated entities ("collectively the Rite Aid/LNK Releasees"), from any and all injunctive relief claims with the exception of retention of the right set forth in Paragraph 4(b) to reopen their claims for injunctive relief if Rite Aid fails to comply with Paragraph 4(a). Plaintiffs likewise release and on behalf of themselves and their family members, predecessors, successors, heirs, assigns, related persons and other representatives any and all individual claims for damages against the Rite Aid/LNK Releasees (including liabilities, actions, causes of action, obligations, costs, attorneys' fees, damages, losses and demands of every character, nature, kind and source, whether legal, equitable or otherwise, which are or could be asserted related to the Lawsuit or the Products. This Release does not affect whatever rights the class members have to bring claims for monetary relief.

Rite Aid and LNK on behalf of themselves, and on behalf of their officers, directors, owners, partners, servants, agents, attorneys, employees, and other representatives, including any parents, subsidiaries and/or affiliated entities, hereby release and forever discharge Plaintiffs and their family members, predecessors, successors, heirs, assigns, related persons and other representatives, from any and all claims (including liabilities, actions, causes of action, obligations, costs, attorneys' fees, damages, losses and demands of every character, nature, kind and source, whether legal, equitable or otherwise) which are or could be asserted related to the Lawsuit or Products.

Finally,  for the consideration involved in resolving this case, Rite Aid and LNK release each other with respect to any claims (including liabilities, actions, causes of action, claims for indemnity, obligations, costs, attorneys' fees, damages, losses and demands of every character, nature, kind and source, whether legal, equitable or otherwise) they or their respective officers, directors, owners, partners, servants, agents, attorneys,

employees, and other representatives, including any parents, subsidiaries and/or affiliated entities may have regarding the Lawsuit or the labeling of the Products. Nothing in this Settlement Agreement modifies or amends LNK's indemnification obligations or the other terms contained in the supplier agreement, between Rite Aid and LNK.

Upon the Effective Date, Plaintiffs expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights, and benefits of § 1542 of the California Civil Code, which provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

Upon the Effective Date, the Lawsuit will be deemed dismissed with prejudice.

8.   <u>Confidentiality</u>.

(a)   The Parties and their counsel agree not to disclose, divulge, publish, or broadcast, or state to anyone, non-public information relating to the Lawsuit or the terms and conditions of or relating to this Settlement Agreement.  The Parties and their counsel agree not to use any information or work product generated in the course of preparing to commence the Lawsuit, including without limitation any and all drafts of pleadings or motions or factual or investigative research, for purposes of any matter adverse or potentially adverse to Defendant, other than to enforce this Agreement.

(b)   Notwithstanding Section 8(a) above, nothing herein shall prohibit or restrict the Parties and their counsel from informing their accountants or tax preparers and others for reasonable business purposes, of the terms of this Settlement Agreement, or, if required by law, disclosing to any governmental or regulatory authority the amount paid in settlement, provided that the Parties and their counsel advise their accountants or tax preparers of, and obtain assurances they will comply with, the confidentiality provisions of this Settlement

7

Agreement.  The Parties and their counsel may also disclose this Settlement Agreement and its terms for the purpose of enforcing this Settlement Agreement.

(c)    Nothing herein shall prohibit the Parties and their counsel or their counsel's counsel, from complying with a valid subpoena or court order, or any other legal process, requiring disclosure of material covered by the confidentiality provisions of this Settlement Agreement.  However, upon receiving such a subpoena, process, court order, or other legal process, the subpoenaed Party shall immediately give notice via counsel of record in the Lawsuit (identified in Section 10, below), and identify the matter in which such subpoena, process, court order, or other legal process is issued, identifying the subpoena, process, court order, or other legal process and the time in which production or disclosure is required so as to afford the Party the opportunity to obtain an order barring such production or disclosure.

(d)    Notwithstanding Sections 8(a) and 8(c) above, Defendant and LNK, in their discretion, may disclose the terms of this Settlement Agreement or anything else covered by the confidentiality provisions of this Settlement Agreement in the event a claim, demand, lawsuit or other legal claim or demand (hereinafter "Future Claim") is made or filed against them with respect to the Products to counsel and/or the party making the claim for the purpose of negotiating or attempting to negotiate a resolution of such Future Claim.

9.    <u>Representations and Warranties</u>.

(a)    Each person executing this Settlement Agreement warrants he or she has obtained the authority to so execute this Settlement Agreement.

(b)    Each Party has carefully read and reviewed this Settlement Agreement and understands it fully, and each Party specifically does not rely upon any statement, representation, legal or accounting opinion, or promise of any other Party or any person

representing such other Party in executing this Settlement Agreement or in making the settlement provided for herein, except as expressly stated in this Settlement Agreement.

(c)    Each Party has made such an investigation of the law and facts pertaining to this Settlement Agreement and of all matters pertaining hereto as it deems necessary.  Each Party has been represented by competent counsel of that Party's own choosing, which counsel has provided such Party with any and all advice on this Settlement Agreement as such counsel and such Party deem necessary or appropriate.  This Settlement Agreement has been carefully read by, the contents hereof are known and understood by, and is signed freely by, each Party executing this Settlement Agreement.

(d)    This Settlement Agreement is the result of arms' length negotiation between the Parties.

(e)    Each Party represents and warrants that he or it has not assigned to any third party any actual or potential claim or any portion of any actual or potential claim against any other Party to this Settlement Agreement.

(f)    Plaintiffs' Attorneys represent and warrant on behalf of themselves, and all others acting on their behalf, that they (a) have not been retained by any other individuals with claims against Rite Aid or LNK involving the Products; (b) are not aware of, nor been informed of, any other plaintiff, class, class member or attorney who intends to bring litigation against Rite Aid or LNK involving the Products; and (c) are not actively soliciting and will not actively solicit other persons to bring claims against Rite Aid or LNK involving the Products.  This Section is not intended, nor shall it be construed to, restrict Plaintiffs' Attorneys from practicing law.

10.   Notices.  All notices under this Settlement Agreement shall be sent via email and overnight or hand delivery as follows (subject to the right of each Party to change this notice designation by written notice to the other):

To Plaintiffs:

Mitchell Breit
Milberg Coleman Bryson Phillips
Grossman LLC
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
MBreit@milberg.com

To Rite Aid or LNK:

Jay N. Varon
David A. Hickerson, Esq.
Foley & Lardner LLP
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C. 20007
JVaron@foley.com
DHickerson@foley.com

11.   Construction of Settlement Agreement.  This Settlement Agreement shall be construed as a whole according to its fair meaning.  The language of this Settlement Agreement shall not be construed for or against any Party.  No provision of this Settlement Agreement shall be construed against any Party by virtue of the activities of that Party or such entities' attorneys.  The headings used in this Settlement Agreement are for reference only and shall not affect the construction of the Settlement Agreement.

12.   Integration.  This Settlement Agreement constitutes a single integrated, written contract expressing the entire agreement of the Parties hereto relative to the subject matter hereof. No recitals, covenants, agreements, representations, or warranties of any kind whatsoever have been made or have been relied upon by any Party hereto, except as specifically set forth in this Settlement Agreement.  All prior discussions and negotiations have been or are merged and integrated into, and are superseded by, this Settlement Agreement.  There shall be no amendment, modification, or waiver of any provision of this Settlement Agreement except in a writing signed by each Party to be bound by such amendment, modification, or waiver.

13.     Severability.  The Parties hereto covenant and agree that in the event that any provision of this Settlement Agreement should be held by a court of competent jurisdiction to be void, voidable, illegal, or unenforceable in any respect, the remaining portions and provisions hereof shall nevertheless remain in full force and effect as if such void, voidable, illegal, or unenforceable provision had never been contained in this Settlement Agreement.

14.     Governing Law And Conflict Resolution.  This Settlement Agreement shall be construed in accordance with, and governed by, the laws of the State of California.  Venue for enforcement of this Settlement Agreement shall be in the federal or state courts located in the City, County, and State of California.

15.     Execution in Counterparts.  This Settlement Agreement may be executed and delivered in counterparts, each of which, including, but not limited to, pages transmitted by facsimile or e-mail, when so executed and delivered shall be deemed to be an original.

16.     Costs and Expenses.   Each Party is to bear its own costs and expenses incurred in connection with the Lawsuit, negotiation of settlement and this Settlement Agreement.

17.     Damages.  If a Party breaches the terms of this Settlement Agreement, the breaching Party shall be liable to the non-breaching and injured Party or Parties for actual damages, injunctive relief, attorney's fees and costs, and any other remedy and sanction as may be determined and imposed by a court.

18.     Non-Disparagement.  Plaintiffs agree that they will not at any time knowingly defame, disparage, or impugn the reputation of Rite Aid or LNK, or any of their parents, subsidiaries, or affiliates, and each of their respective agents, principles, officers, directors, members, shareholders, employees, former employees, representatives, attorneys, insurers, successors and assigns, or each of them.  "Disparage" as used in this Settlement Agreement means to make any statement, written or oral, that casts an entity or individual in a negative

11

light, or attributes any negative quality to the entity or its products or services.  Nothing in this Section affects the obligations of confidentiality set forth in Section 8, above.

19.  <u>Successors and Assigns</u>.  This Settlement Agreement shall be binding upon the heirs, executors, administrators, legal representatives, successors, and assigns of the respective Parties.

IN WITNESS WHEREOF, the Parties hereto each have approved and executed this Settlement Agreement effective as of the last date signed below.

I have read the foregoing agreement and understand its terms.  The CONFIDENTIAL SETTLEMENT AGREEMENT AND MUTUAL RELEASE consists of twelve (12) pages inclusive of the signature page.

**Thomas Bailey**                                      **Jamal Erakat**

_____            _____

Date: _____            Date:: _____

**Rite Aid Corporation**                                **LNK International,  Inc.**

_____            _____

By: _____            By: _____

Date: _____            Date: _____

_____

**APPROVED AS TO FORM AND CONTENT AND
CONFIDENTIALITY PROVISION AGREED TO BY:**

**Milberg Coleman Bryson Phillips Grossman
LLC**                                                        **Foley & Lardner LLP**

By: _____            By: _____

12

Mitchell Breit                                    Jay N. Varon
Attorney for Plaintiffs                           .
                                                  Attorneys for Rite Aid Corporation and LNK
                                                  International Inc.


Simmons Hanly Conroy LLC.


By: _____
       Jason O. Barnes
       Attorney for Plaintiffs

13