**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
Mitchell M. Breit (*pro hac vice*)
Mbreit@milberg.com
405 East 50th Street
New York, NY 10022
(347) 668-8445 (phone)

Gregory F. Coleman (*pro hac vice*)
Adam A. Edwards (*pro hac vice*)
Mark E. Silvey (*pro hac vice*)
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel.: (865) 247-0080
Fax: (865) 522-0049
gcoleman@milberg.com
aedwards@milberg.com
msilvey@milberg.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS BAILEY and JAMAL ERAKAT, on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RITE AID CORPORATION,<br><br>Defendant. | CASE NO. 4:18-cv-6926-YGR<br>CLASS ACTION<br><br>**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   October 25, 2022<br>Time:   2:00 PM<br>Judge: Hon. Yvonne Gonzalez Rogers<br>Location: via Zoom |

## **TABLE OF CONTENTS**

MOTION ............................................................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................................2

I. INTRODUCTION ...............................................................................................................2

II. RELEVANT FACTS AND PROCEDURAL HISTORY ....................................................2

      A. Plaintiffs' Experiences..............................................................................................2

      B. This Lawsuit .............................................................................................................3

      C. Settlement .................................................................................................................3

III. AUTHORITY AND ARGUMENT .....................................................................................5

      A. Plaintiffs' Attorneys' Requested Fees are Reasonable.............................................5

            1. Plaintiffs' Attorneys' Expended Hours are Reasonable. ...............................5

            2. Plaintiffs' Attorneys' Rates are Reasonable. ................................................6

            3. Plaintiffs' Attorneys' *Negative* Multiplier Emphasizes the
               Reasonableness of Plaintiffs' Requested Fees. .............................................7

                  a. The Time and Labor Required .........................................................8

                  b. The Novelty and Difficulty of the Questions
                     Involved and Plaintiffs' Attorneys' Skills Required
                     to Secure the Settlement Further Supports the
                     Requested Fees. ................................................................................9

                  c. The Amount Involved and the Results Obtained ...........................10

                  d. The Experience, Reputation and the Ability of the
                     Attorneys, the 'Undesirability' of the Case, the
                     Nature and Length of the Professional Relationship
                     with the Client. ...............................................................................10

                  e. Awards in Similar Cases .................................................................10

                  f. Reaction of the Class ......................................................................12

      B. Plaintiffs' Attorneys' Litigation Costs Were Necessarily and
         Reasonably Incurred. ..............................................................................................12

      C. Plaintiff Bailey Should Be Modestly Compensated for His Efforts
         on Behalf of the Class..............................................................................................12

IV. CONCLUSION ..................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**                                           **Page(s)**

*In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, No. 09 MDL 2007, 2014 WL 12591624 (C.D. Cal. Jan. 10, 2014) .................................................................................................................. 6

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 941–42 ............................................. 8

*Buccellato v. AT & T Operations, Inc.*, No. CV 10–00463 LHK, 2011 WL 3348055 (N.D. Cal. June 30, 2011) ......................................................................................................................... 11

*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973–80 (9th Cir. 2008) ........................................ 6

*In re Capacitors Antitrust Litig.*, No. 3:17-md-02801-JD, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) ......................................................................................................................... 12

*In re Coord. Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602 (9th Cir. 1997) ......................................................................................................................................... 5

*Costa Transit Auth.*, No. 18-CV-05405-SI, 2021 WL 308608 (N.D. Cal. Jan. 29, 2021) ..... 6, 7

*Dickey v. Advanced Micro Devices, Inc.*, No. 15-cv-04922-HSG, 2020 WL 870928 (N.D. Cal. Feb. 21, 2020) .......................................................................................................................... 12

*Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997 (9th Cir. 2002) ................................. 5

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ............................................................................... 5

*Hopkins v. Stryker Sales Corp.*, 11CV2786-LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ..... 10-11

*In re Hyundai & Kia Fuel Econ. Litig.*, 26 F.3d 539 (9th Cir. 2019) ........................................ 4

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) ................................................. 8

*Kim v. Allison*, 8 F.4th 1170–81 (9th Cir. 2021) ....................................................................... 8

*In re Lithium Ion Batteries Antitrust Litig.*, No. 13MD02420YGRDMR, 2020 WL 7264559 (N.D. Cal. Dec. 10, 2020) ................................................................................................... 12-13

*Lofton v. Verizon Wireless LLC*, No. C 13-05665 YGR, 2016 WL 7985253 (N.D. Cal. May 27, 2016) ......................................................................................................................................... 9

*Moreyra v. Fresenius Med. Care Holdings, Inc.*, No. SACV-10-517 JVS (RZx), 2013 WL 12248139 (C.D. Cal. Aug. 7, 2013) ........................................................................................... 9

*In re Omnivision Techs.*, 559 F. Supp. 2d .............................................................................. 10

*Perez v. Rash Curtis & Assocs.*, No. 4:16-CV-03396-YGR, 2021 WL 4503314 (N.D. Cal. Oct. 1, 2021) ....................................................................................................................................... 13

*Perkins v. Linkedin Corp.*, No. 13-cv-04303-LHK, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016) .......... 6

*Retta v. Millennium Prod., Inc.*, No. CV15-1801 PSG AJWX, 2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) ......................................................................................................................... 11

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ....................................... 13

*Schuchardt v. L. Off. of Rory W. Clark*, 314 F.R.D. 673 (N.D. Cal. 2016) ........................... 8, 9

*Shirrod v. Dir., Off. of Workers' Comp. Programs*, 809 F.3d 1082 (9th Cir. 2015) ................. 6

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .................................................................. 5

2
MPA ISO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES & COSTS      Case No. 4:18-cv-06926-YGR

Case 4:18-cv-06926-YGR   Document 171   Filed 07/13/22   Page 4 of 19

*Theodore Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) ................................................................................................................ 11

*Van Vranken v. Alt. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) .................................................. 8

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ............................................................. 8, 10

*Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 244 (2001) ........................................................... 11

*Winters v. Two Towns Ciderhouse, Inc.*, No. 20-CV-00468-BAS-BGS, 2021 WL 1889734 (S.D. Cal. May 11, 2021) ................................................................................................................... 11

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) ........................................................................................................ 12

*Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536 (9th Cir. 2016) .................................................... 7

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................................. 5

## **MOTION**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Court's June 15, 2022, Order Granting Preliminary Approval of Class Action Settlement, ECF No. 169, ("Preliminary Approval Order"), Plaintiffs Thomas Bailey and Jamal Erakat file this Motion for an award of attorneys' fees and expenses ("Motion"). Specifically, Plaintiffs seek an order awarding his counsel—Milberg Coleman Bryson Phillips Grossman, PLLC ("Plaintiffs' Attorneys")—attorneys' fees and expenses in the amount of $361,666.66 to be paid directly by Defendant Rite Aid Corporation ("Defendant" or "Rite Aid"), in accord with the settlement agreement preliminarily approved by this Court on June 15, 2022. *See* ECF Dkt. No. 169. The requested attorneys' fees will not impact the Settlement Benefits[1] available to Class Members. The Class Members will receive the benefit of the Nationwide Injunctive Relief while maintaining their rights to further pursue any claims for monetary damages. Further, the requested Attorneys Fees amount equates to approximately 32% of the total value of the Plaintiffs' Counsels Lodestar costs as of July 13, 2022. In support of this Motion, Plaintiffs respectfully submit the following Memorandum of Points and Authorities, the accompanying Declarations of Mitchell Breit and Jason Barnes, and the exhibits submitted therewith.

---

[1] Any capitalized terms which are not otherwise defined herein incorporate the definitions set forth in the Settlement Agreement. *See* ECF Dkt. No. 169, pp. 13-25.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs seek an order awarding their counsel, Milberg Coleman Bryson Phillips Grossman, PLLC, attorneys' fees and expenses in the amount of $361,666.66 to be paid directly by Defendant Rite Aid in accordance with the preliminarily approved Settlement Agreement. By all accounts, Plaintiffs' Counsel has worked efficiently and cooperatively with all parties and played an integral role in achieving the outstanding Class Member benefits. Plaintiffs' Counsels played an important role in achieving the extraordinary result for the Class, both in work product and by providing strategic leverage that became crucial to the Settlement. For these reasons, among others discussed herein, Plaintiffs' motion should be granted.

## II. RELEVANT FACTS AND PROCEDURAL HISTORY

### A. Plaintiffs' Experiences

Rite Aid is a distributor of health and wellness products, including over-the-counter pharmaceuticals. Defendant marketed and sold Rapid Release Gelcaps products, including but not limited to Rite Aid Extra Strength Acetaminophen Rapid Release Gelcaps in quantities of 50, 100, 150, and 225 gelcaps; and Rite Aid Sinus & Congestion Pain Relief, Day time, Rapid Release Gelcaps, (collectively, the "Products").

Plaintiff Bailey paid more for a 100-count bottle of the Rite Aid Extra Strength Acetaminophen Rapid Release product than the brand's cheaper non-rapid release acetaminophen products in the same count, believing that the "rapid release" phrase meant that the product would provide him with faster pain relief, as compared to the cheaper, non-rapid release Rite Aid product. *See* ECF Dkt. No. 98. He purchased the Class Rapid Release Gelcaps over other Rite Aid brand and other acetaminophen products solely because they were labeled as rapid release and he was seeking "faster" relief. Rite Aid's marketing (labeling and advertising) misled Plaintiff Bailey to believe that the Class Rapid Release Gelcaps he purchased would provide faster relief than other cheaper Rite Aid acetaminophen products. *Id.* The Products, however, did not act any faster than traditional, cheaper Rite Aid products. *Id.* After conducting product research of the Products, Plaintiff Bailey subsequently filed a class action lawsuit on November 15, 2018, alleging false, misleading, unfair and deceptive marketing and labeling, and misrepresentations

and omissions of material information in the advertising, marketing, and labeling of the Products. *See* ECF Dkt. No. 1. Plaintiff Bailey brought this class action lawsuit to remedy the harm resulting from Defendant's representations that its Products sold during the Class Period would provide faster relief and therefore worth the premium in cost than other cheaper Rite Aid acetaminophen products. Plaintiff Erakat had a nearly identical experience with the Class Rapid Release Gelcaps. *See* ECF Dkt. No. 156.

### B. This Lawsuit

Plaintiff Bailey filed this Action on November 15, 2018, alleging claims for violations of false advertising, unfair competition, the consumer legal remedies act ("CLRA"), and unjust enrichment as a result of misrepresentations and omissions of material information in the advertising, marketing, and labeling of Defendant's Products.

Plaintiffs' Attorneys issued a pre-suit notice and demand pursuant to the CLRA, spent significant time communicating with Plaintiff Bailey, investigating facts, researching the law, and preparing a well-pleaded complaint. Plaintiffs' Attorneys then worked extensively with a well-qualified pharmacologist to evaluate Defendant's misrepresentations and the potential dangers resulting therefrom.

As this Court is aware, Plaintiffs litigated this case for more than three- and one-half years. However, the pleadings and class certification had not been settled in this matter until May 26, 2021. (ECF 134). The parties began substantive settlement negotiations soon thereafter. While the Court previously granted class certification under Rule 23(b)(3), through the discovery process, unique factual developments since the time of that order have altered the appropriate path for achieving the best possible outcome for the Class. Thus, due to the specific circumstances in this case, the proposed Settlement provides greater relief to consumers than if Plaintiffs succeeded at trial on behalf of the already-certified Rule 23(b)(3) class.

### C. Settlement

Plaintiffs' Attorneys began negotiating settlement of the instant action with counsel for Defendant in May 2021 and continued settlement discussions into April 2022. Those negotiations took place while Plaintiffs' Attorneys continued to litigate against Defendant, including discovery exchanges, analysis of sales and other data, the propounding of interrogatories, requests for the production of documents, requests for admission, and depositions.

In the Settlement Agreement, Defendant has agreed that within three (3) months after the Effective Date of the settlement agreement, the unqualified term "Rapid Release" will not be included on the labeling on the front of the product's packing. The settlement does not prohibit Rite Aid or Rite Aid's supplier of the products in question, LNK International Inc ("LNK"), from selling any remaining inventory of the products with the prior labeling, pursuant to the settlement agreement. The settlement agreement does not affect class members' rights to bring claims for monetary damages. In return, Rite Aid agrees to pay the total sum of Three Hundred Sixty-One Thousand Six Hundred Sixty-six Dollars and Sixty-Six Cents ($361,666.66) for full and complete resolution and release of the lawsuit.

Plaintiffs' Attorneys remain confident that Plaintiffs' claims are strong. However, consumer class actions are risky to prosecute. Defendant, a well-resourced company, is represented by a reputable, national law firm and planned to vigorously defend itself but for the Settlement. Plaintiffs' Attorneys could not ignore the inherent risk that Plaintiffs would certainly face at class certification, summary judgment, and trial. Plaintiffs asserted claims on behalf of consumers nationwide. At class certification, Plaintiffs would certainly face the argument that choice-of-law issues create manageability problems that do not exist in the settlement context. *See In re Hyundai & Kia Fuel Econ. Litig.*, 26 F.3d 539, 563 (9th Cir. 2019). Plaintiffs also would have been required to complete costly expert work to show that Class Members paid a price premium due to Defendant's alleged misrepresentations. Specifically, Plaintiffs' Counsel engaged the services of experts to conduct a conjoint damages analysis, during which the experts determined that the price premium paid by the proposed class was minimal, and that class members would likely receive nominal damages which could amount to a net loss to the class after notice. Breit Decl. ¶ 5.

As a result of this litigation, Class Members will benefit from an excellent Settlement that requires Defendant to discontinue any and all advertisements, labels, and other forms of marketing which describe the Class Rapid Release Gelcaps as "Rapid Release" — the core practices which are the subject of this case. This settlement achieves meaningful injunctive relief that will benefit consumers of the products.

Plaintiffs' Attorneys now seek reasonable compensation for their efforts on behalf of Plaintiffs and the Class. Plaintiffs' Attorneys requests a fee award of up to $361,666.66, reflecting a negative

lodestar, which includes reimbursement of reasonable out-of-pocket expenses and costs. Rite Aid has the right to object to this request for attorneys' fees and expenses in out-of-pocket expenses that they incurred prosecuting this action.

### III. AUTHORITY AND ARGUMENT

#### A. Plaintiffs' Attorneys' Requested Fees are Reasonable.

Rule 23(h) authorizes a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Once it is established that a party is entitled to attorneys' fees, "[i]t remains for the district court to determine what fee is 'reasonable.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "Attorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is 'fundamentally fair, adequate, and reasonable.'" *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)); *see also In re Coord. Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997) ("Reasonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion.").

A district court has discretion to award attorneys' fees in a class action by applying either a lodestar methodology or a percentage-of-the-fund methodology. *See Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002). Here, the Settlement Agreement does not include a common fund, but rather provides injunctive relief which benefits the Class, and Plaintiffs' Attorneys seek attorneys' fees that ultimately reflect a negative multiplier. Plaintiffs' Attorneys will also seek a reasonable and fair Service Award of $5,000 for Plaintiff Bailey, as detailed below.

##### 1. Plaintiffs' Attorneys' Expended Hours are Reasonable.

Plaintiffs' Attorneys devoted significant time and resources to investigating the claims well before commencing the lawsuit. Breit Decl. ¶ 11. Plaintiffs' Attorneys keep contemporaneous time records for all cases within the firm, including the present case. Breit Decl. ¶ 23. To date, Plaintiffs' Attorneys spent 1,488.29 hours for a total lodestar of $1,142,670.70. *Id*. ¶¶ 24,25. The efficiency with which Plaintiffs' Attorneys helped obtain this Settlement is itself a benefit to the Class. Courts recognize that classes benefit from early resolution when "further litigation would have delayed any potential

recovery for the Class and have been costly and risky." *Perkins v. Linkedin Corp.*, No. 13-cv-04303-LHK, 2016 WL 613255, at *2 (N.D. Cal. Feb. 16, 2016); *see also In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, No. 09 MDL 2007, 2014 WL 12591624, at *4 (C.D. Cal. Jan. 10, 2014) (recognizing the benefit of counsel's "effective and efficient" prosecution). Here, the time that Plaintiffs' Counsel spent during the course of this litigation reasonably reflect the work performed on behalf of the Class. *Id*. ¶ 40.

### 2. Plaintiffs' Attorneys' Rates are Reasonable.

In order to determine the reasonableness of attorneys' fees, an attorney's hourly rate is to be calculated "according to the prevailing market rates in the relevant community" and should be "in line with [the rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. *Shirrod v. Dir., Off. of Workers' Comp. Programs*, 809 F.3d 1082, 1086 (9th Cir. 2015)) (citing *Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1052 (9th Cir.2009). "Affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases are satisfactory evidence of the prevailing market rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979–80 (9th Cir. 2008).

In recent years, the Northern District of California Court has approved hourly rates of $850.00 for partners with almost thirty years of experience. *Polee v. Cent. Contra Costa Transit Auth.*, No. 18-CV-05405-SI, 2021 WL 308608 (N.D. Cal. Jan. 29, 2021) (holding that hourly billing rates of $850/hour is reasonable based upon [the attorney's] experience, skill, and reputation, and that it is within the prevailing market rates for the San Francisco Bay Area).

Plaintiffs' Attorneys standard billing rates are $1100 for Mitchell Breit, $914 for Mark Silvey $800 for Adam Edwards, $914 for Gregory Coleman, $575 for Will Ladnier, and $381 for Virginia Whitener. Breit Decl. ¶ 20. Additional rates for Plaintiffs' Attorneys include $1,100 for Mitchell Breit (while a Partner at Simmons Hanly Conroy), $800 for An Truong, and $700 for Brittany Boswell. Barnes Decl. ¶ 6. Plaintiffs' Attorneys have provided the Court with a declaration describing the background and experience of the aforementioned attorneys and set the hourly rates for attorneys and staff members based on a variety of factors, including: the experience, skill, and sophistication required for the types of legal services typically performed; the rates customarily charged in the markets where legal services

are typically performed; and the experience, reputation, and ability of the attorneys and staff members. Breit. ¶¶ 18,19.

The hourly rates requested here are comparable to attorneys of similar experience and qualifications within the Northern District of California. *Id*. Mitchell Breit and Gregory Coleman each have over thirty years' experience, have been lead counsel in multiple class action cases and matters that have been consolidated into multi-district litigation, and have been named as Super Lawyers. *Id*. ¶ 18. Mitchell Breit and Gregory Coleman have each been named one of the Best Lawyers in America by Best Lawyers, among other awards. *Id 22*. Gregory Coleman has been named one of the Top 100 Trial Lawyers by the American Trial Lawyers Association. Further, as detailed in Plaintiffs' Attorneys' firms resumes, Plaintiffs' Attorneys have been named Class Counsel in numerous class action settlements. (ECF No. 157 Exs. B and C). Mark Silvey and Adam Edwards are partners with 28 and 22 years of experience, respectively, and have been appointed as class counsel in numerous cases. William Ladnier has been an attorney for over 6 years. Breit Decl. ¶ 18. All five of these attorneys have considerable class action experience and expertise. *Id*.

The hours and rates submitted by Plaintiffs' Attorneys yield a lodestar of $1,142,670.70, which does not account for the additional time and effort required to effectuate the Settlement. *Id*. ¶ 24.

### 3. **Plaintiffs' Attorneys'** *Negative* **Multiplier Emphasizes the Reasonableness of Plaintiffs' Requested Fees.**

Plaintiffs' Attorneys are requesting a negative (or fractional) lodestar multiplier of .32. In this case, Plaintiffs' Attorneys are only seeking to recover the approximately $361,666.66 in attorneys' fees, compared to the true attorney's fee of $1,142,670.70.

Under the lodestar method, the court multiplies the number of hours the prevailing party reasonably spent on litigation by a reasonable hourly rate to determine a presumptively reasonable fee award. *See Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016). The court may then "adjust" the award "by an appropriate positive or negative multiplier reflecting ... the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 941–42. Benefit to the class is the "[f]oremost" consideration. *Id*. at 942. This method is especially appropriate in class actions

"where the relief sought—and obtained—is ... primarily injunctive." *Kim v. Allison*, 8 F.4th 1170, 1180–81 (9th Cir. 2021).

The reasonableness of a multiplier may be assessed by courts considering the following factors: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (noting that the district court found a 3.65 multiplier to be reasonable after considering the factors in *Kerr*).

As Courts in California have noted, "[m]ultipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Alt. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995). Given the negative multiplier sought, the modest lodestar requested benefits to the Class and consumers-at-large including the significant injunctive relief. The Northern District of California has previously noted that "Courts view self-reduced fees favorably." *See, e.g., Catala*, 2010 WL 2524158, (concluding that a self-reduction from the lodestar amount of $38,208.43 to $35,000 supported finding that plaintiff's counsel's fee request was reasonable); *Schuchardt v. L. Off. of Rory W. Clark*, 314 F.R.D. 673, 690 (N.D. Cal. 2016).

a. <u>The Time and Labor Required</u>

Plaintiffs' Attorneys have spent more than 1,488.29 hours on this action to date. Breit Decl. ¶ 25. Plaintiffs' Attorneys spent substantial time investigating and litigating this case, including, but not limited to, the following: reviewing all labeling and marketing of the Products, including all available public statements, becoming thoroughly grounded in the relevant federal regulations and FDA testing guidance, retaining consulting experts, researching relevant supplement case law and controlling state law, reviewing the records in other relevant pharmaceutical cases; carefully crafting the complaints, negotiating settlement with Defendant, preparing a well-pleaded complaint, providing significant input

regarding the terms of the Settlement Agreement which materially altered the Settlement as drafted by providing additional protections to Class Members. *Id*. ¶ 26. The work by attorneys and staff was required and necessary to make sure this case was properly vetted. *Id*. Plaintiffs' Attorneys submit that the extensive time expended for this case weighs in favor of the fee request.

      b. <u>*The Novelty and Difficulty of the Questions Involved and Plaintiffs' Attorneys' Skills Required to Secure the Settlement Further Supports the Requested Fees.*</u>

Plaintiffs' Attorneys drew on their experience in litigating consumer protection and failure-to-warn class cases to develop the legal theories asserted and strategy for obtaining evidence to support the Class's claims. The quality of their representation is reflected in the work they performed throughout the case and, ultimately, in the favorable Settlement for the Class. *See Moreyra v. Fresenius Med. Care Holdings, Inc.*, No. SACV-10-517 JVS (RZx), 2013 WL 12248139, at *3 (C.D. Cal. Aug. 7, 2013) (noting that the result is "[t]he single clearest factor reflecting the quality of class counsels' services") (quoting *In re Heritage Bond Litig*, No. 02-ML1475-DT(RCX), 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005)).

Plaintiffs' Attorneys' skill in negotiating class action settlements led to an early settlement with tangible benefits, as opposed to drawn out litigation with a risk that the Class could receive nothing. Defendant is represented by Foley & Lardner LLP. Foley & Lardner LLP is one of the premier healthcare and life sciences defense firms in the United States. Foley & Lardner LLP partner Jay N. Varon is a Partner of the firm's litigation Practice Group. During settlement negotiations, defense counsel indicated that Defendant was willing and able to litigate this case through trial if a settlement was not reached. Plaintiffs' Attorneys' active participation in a favorable settlement despite the opposition of Defendant's counsel also supports their fee request. *See, e.g., Lofton v. Verizon Wireless LLC*, No. C 13-05665 YGR, 2016 WL 7985253, at *1 (N.D. Cal. May 27, 2016) (the "risks of class litigation against an able defendant well able to defend itself vigorously" support an upward adjustment in the fee award). This factor weighs in favor of the fee request.

   c. *The Amount Involved and the Results Obtained*

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046; *Vizcaino*, 290 F.3d at 1048 ("Exceptional results are a relevant circumstance.").

Plaintiffs' Attorneys achieved substantial benefits for the Class in this case: nationwide injunctive relief so that within three (3) months after the Effective Date of the settlement agreement, the unqualified term "Rapid Release" will not be included on the labeling on the front of the product's packing. Class Members will additionally be able to pursue any relief on an individual basis as the factual developments since the time of that order have altered the appropriate path for achieving the best possible outcome for the Class of thousands of class members.

   d. *The Experience, Reputation and the Ability of the Attorneys, the 'Undesirability' of the Case, the Nature and Length of the Professional Relationship with the Client.*

As discussed above, Plaintiffs' Attorneys has considerable experience in litigating class action cases. However, accepting and litigating this action was not "undesirable" and the length of the professional relationship with the clients was not prolonged or previously established. This factor is neutral.

   e. *Awards in Similar Cases*

In *Hill v. Canidae Corp.*, the Court approved a claims made class settlement involving pet food mislabeling claims litigated by the undersigned counsel. No. 5:20-cv-01374-JGB-SP (C.D. Cal. Sept. 28, 2021) (ECF No. 79). After determining that class counsel's proposed hourly rates were reasonable and recognizing that litigating this case precluded class counsel from working on other matters and was handled on a contingency fee basis, the Court applied a 2.0 multiplier and awarded attorneys' fees in the amount of $953,740.00. *Id*. As the same factors impacted Plaintiffs' Attorneys here and their requested negative multiplier is significantly less than what was ultimately awarded in *Canidae* (2.0), Plaintiffs' Attorneys' motion should be approved just like in *Canidae.*

In the Ninth Circuit, multipliers "ranging from one to four are frequently awarded." *Vizcaino*, 290 F.3d at 1051 n.6; *see also Hopkins v. Stryker Sales Corp.*, 11CV2786-LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex

class action cases."). In *Buccellato* the Judge determined the finding that a 4.3 multiplier was "reasonable in light of the time and labor required, the difficulty of the issues involved, the requisite legal skill and experience necessary, the excellent and quick results obtained for the Class, the contingent nature of the fee and risk of no payment, and the range of fees that are customary.") *Buccellato v. AT & T Operations, Inc.*, No. CV 10–00463 LHK, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 244, 255 (2001) ("Multipliers can range from 2 to 4 or even higher.").

Here, the significant injunctive relief secured in the Settlement Agreement exceeds the relief secured in other settlements where multipliers were awarded. *E.g.*, *Theodore Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2020 WL 1972505, at *9 (N.D. Cal. Feb. 5, 2020) (awarding a 1.25 multiplier); *Retta v. Millennium Prod., Inc.*, No. CV15-1801 PSG AJWX, 2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) (awarding a 3.5 multiplier and noting Class Counsel "achieved results that represent a significant recovery for the Class"); *Winters v. Two Towns Ciderhouse, Inc.*, No. 20-CV-00468-BAS-BGS, 2021 WL 1889734 (S.D. Cal. May 11, 2021) (awarding a 1.675 multiplier).

In sum, the factors support Plaintiffs' Attorneys' requested negative multiplier of .32. Plaintiffs' Counsel spent over 1,488.29 hours litigating this case to resolution after extensive investigative work done to ensure the case was properly vetted. Further, Plaintiffs' Attorneys took the case on a contingent basis and to the preclusion of other work. As a result, Plaintiffs' Attorneys were able to achieve significant relief for the Class that is superior to many other mislabeling settlements despite the challenges presented by this litigation. Plaintiffs' Attorneys has substantial experience in litigating consumer class action cases and used that experience to efficiently litigate this case and achieve an excellent result for the Class. Lastly, Plaintiffs' Attorneys litigated this case with significant risks due to the contingent nature of their representation. There was no certainty that Plaintiffs' Attorneys would ever be paid and could have litigated this case for years and not received any compensation for their time, efforts, and costs expended. Given these circumstances, Plaintiffs' Attorneys' negative multiplier of .32 is reasonable.

    *f.*    <u>Reaction of the Class</u>

The Court may also consider the reaction of the class to the settlement agreement. *Carter,* 2018 WL 6174767, at *9 (citing *In re Omnivision Techs.*, 559 F. Supp. 2d at 1048); *In re Heritage Bond*, 2005 WL 1594389, at *15 ("The presence or absence of objections from the class is also a factor in determining the proper fee award.")).

Counsel worked diligently to assure that direct notice was provided to as many Class Members as possible. Breit Decl. ¶ 27.

**B.**   **Plaintiffs' Attorneys' Litigation Costs Were Necessarily and Reasonably Incurred.**

Plaintiffs' Attorneys' request includes reimbursement of approximately $135,643.48 in litigation costs, which included filing fees, travel costs, multiple depositions, research costs, work with consultants, and extensive work with experts in the requisite fields. Breit Decl. ¶ 28. "It is appropriate to reimburse attorneys prosecuting class claims on a contingent basis for 'reasonable expenses that would typically be billed to paying clients in non-contingency matters,' i.e., costs 'incidental and necessary to the effective representation of the Class.'" *In re Capacitors Antitrust Litig.*, No. 3:17-md-02801-JD, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) (citation omitted). These costs were necessary to the litigation, reasonable in amount, and the type of costs typically billed to paying clients. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *42 (N.D. Cal. July 22, 2020) (approving reimbursement of costs for expert fees, travel, transcripts, document management, copying, mailing and serving documents, electronic research, and filing and court fees); *Dickey v. Advanced Micro Devices, Inc.*, No. 15-cv-04922-HSG, 2020 WL 870928, at *9 (N.D. Cal. Feb. 21, 2020) (approving "professional service fees (for experts and investigators), travel fees, and discovery-related fees").

**C.**   **Plaintiff Bailey Should Be Modestly Compensated for His Efforts on Behalf of the Class**

"Reasonable service awards have long been approved in the Ninth Circuit … to compensate class representatives for work on behalf of the class, financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *In re Lithium Ion Batteries Antitrust Litig.*, No. 13MD02420YGRDMR, 2020 WL 7264559, at *24 fn. 24 (N.D. Cal. Dec. 10, 2020), appeal dismissed in part, No. 21-15120, 2021 WL 6751856 (9th Cir.

Dec. 17, 2021) (*citing Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1057 (9th Cir. 2019)); *see also Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Courts "evaluate named plaintiff's requested award using relevant factors including 'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions ... [and] the amount of time and effort the plaintiff expended in pursuing the litigation.'" *Perez v. Rash Curtis & Assocs.*, No. 4:16-CV-03396-YGR, 2021 WL 4503314, at *3 (N.D. Cal. Oct. 1, 2021) (*quoting Staton v. Boeing*, 327 F.3d 938, 977 (9th Cir. 2003)).

Here, Plaintiff Bailey came forward to represent the interests of thousands of class members, with very little personally to gain, as his individual damages (like any individual class member's) were nominal. Plaintiff participated fully throughout the litigation, including by assisting in preparing the complaint, responding to numerous discovery requests (including the production and disclosure of personal and sensitive information), preparing for and sitting for deposition, assisting with preparation of class certification briefing, and timely providing additional information necessary to the resolution process. Even more notably, Plaintiff Bailey provided this assistance, and maintained his involvement, despite losing his employment during the COVID-19 pandemic.

Because the laws at issue in this case are not self-enforcing, it is appropriate to give incentives to those who come forward with little to gain and at personal risk and who work to achieve a settlement that confers substantial benefits on others. While Plaintiff Bailey was ultimately found to lack standing for the Rule 23(b)(2) class he initially sought to represent, his participation was still important and necessary to securing the relief obtained. He initiated the suit and represented the Class's interests for more than three years; his was the primary focus of class member discovery and, at the very least, helped to support certification of the Rule 23(a) factors.

Thus, Plaintiffs hereby request payment of $5,000 to Plaintiff Bailey as a service award for his participation and assistance in this lawsuit.

IV. **CONCLUSION**

For the above reasons, Plaintiffs respectfully request that the Court grant this Motion, and approve Plaintiffs' request for $361,666.66, which includes a reduction on the $1,142,670.70 in

attorneys' fees and $135,643.48 in litigation costs and Plaintiffs' request for payment of $5,000 to Plaintiff Bailey as a service award for his participation and assistance in this lawsuit.

Dated: July 13, 2022.                    Respectfully submitted,

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**

By:    /s/ Mitchell M. Breit

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Mitchell M. Breit (pro hac vice)
405 East 50th Street
New York, New York 10022
Phone: (347) 668-8445
mbreit@milberg.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Gregory F. Coleman (pro hac vice)
Adam A. Edwards (pro hac vice)
Mark E. Silvey (pro hac vice)
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel.: (865) 247-0080
Fax: (865) 522-0049
gcoleman@milberg.com
aedwards@milberg.com
msilvey@milberg.com

*Attorneys for Plainitff Bailey and the Proposed Settlement Class*

## CERTIFICATE OF CONFERENCE

This motion is made following the conference of counsel pursuant to L.R. 54-5.

By:  *s/Mitchell M. Breit*
Mitchell M. Breit

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2022, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to the email addresses registered in the CM/ECF system.

Executed on July 13, 2022 at Knoxville, Tennessee.

By:  *s/Renee M. Pothier*
Renee M. Pothier