**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
Mitchell M. Breit (*pro hac vice*)
405 East 50th Street
New York, New York 10022
Phone: (347) 668-8445
mbreit@milberg.com

Gregory F. Coleman (*pro hac vice*)
Adam A. Edwards (*pro hac vice*)
Mark E. Silvey (*pro hac vice*)
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel.: (865) 247-0080
Fax: (865) 522-0049
gcoleman@milberg.com
aedwards@milberg.com
msilvey@milberg.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

THOMAS BAILEY and JAMAL
ERAKAT, *on behalf of themselves and all
others similarly situated*,

             Plaintiffs,

     v.

RITE AID CORPORATION,

           Defendant.

Case No.: 4:18-cv-06926-YGR

**PLAINTIFFS' NOTICE OF MOTION
AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT FOR
INJUNCTIVE RELIEF; MEMORANDUM
OF POINTS & AUTHORITIES IN
SUPPORT THEREOF**

Hon. Yvonne Gonzalez Rogers

**TO THE COURT, ALL PARTIES, AND ALL COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on October 25, 2022 at 2:00 p.m., or as soon thereafter as this matter may be heard, in Courtroom 1, 4th Floor, before the Honorable Yvonne Gonzalez Rogers, Plaintiffs Thomas Bailey and Jamal Erakat (collectively, "Plaintiffs") will and herby do move for an Order Granting Final Approval of the Class Action Settlement of this matter, pursuant to the Settlement Agreement (ECF 157-2) (cited to as "SA").

More specifically, Plaintiffs move for an Order:

1)  Granting final approval of the proposed Settlement, pursuant to the terms of the Settlement Agreement, as fair, reasonable, and adequate, and directing the Settlement's implementation according to its terms;

2)  Finally certifying the Settlement Class for settlement purposes;

3)  Appointing Plaintiff Jamal Erakat as Settlement Class Representative;

4)  Appointing Plaintiffs' counsel, Milberg Coleman Bryson Phillips Grossman, PLLC and Simmons Hanly Conroy, as Settlement class counsel;

5)  Entering judgment dismissing with prejudice all individual and class claims asserted in the litigation; and,

6)  Granting Plaintiffs' Motion for Attorney Fees, Costs and Service Payments.

As discussed in the accompanying memorandum, approval of the Class Settlement herein is appropriate under applicable law and is well justified under the circumstances of this matter. This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the accompanying Declaration of Mitchell M. Breit in Support of Plaintiffs' ("Breit Decl."), Motion for Attorneys' Fees and Costs (ECF 171), the Settlement Agreement, all papers filed in support thereof, and such evidence and argument as the Court may consider.

1  Dated: September 16, 2022

Respectfully submitted,

2

/s/ *Mitchell M. Breit*

Mitchell M. Breit (*pro hac vice*)

3  **MILBERG COLEMAN BRYSON**

**PHILLIPS GROSSMAN, PLLC**

4  405 East 50th Street

New York, New York 10022

5  Phone: (347) 668-8445

6  mbreit@milberg.com

7  Gregory F. Coleman (*pro hac vice*)

Adam A. Edwards (*pro hac vice*)

8  Mark E. Silvey (*pro hac vice*)

9  **MILBERG COLEMAN BRYSON**

**PHILLIPS GROSSMAN, PLLC**

10  800 S. Gay Street, Suite 1100

Knoxville, TN 37929

11  Tel.: (865) 247-0080

Fax: (865) 522-0049

12  gcoleman@milberg.com

aedwards@milberg.com

13  msilvey@milberg.com

14

15  Crystal Foley (SBN 224627)

**SIMMONS HANLY CONROY**

16  100 N. Sepulveda Blvd., Suite 1350

El Segundo, California 90245

17  Telephone: (310) 322-3555

Facsimile:  (310) 322-3655

18  cfoley@simmonsfirm.com

19  *Attorneys for the Proposed Settlement Class*

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I. Introduction ...................................................................................................1

II.  Factual and Procedural Background ..............................................................2

III.  The Terms of the Settlement Agreement ......................................................4

    A.   The Proposed Settlement Class.................................................................4

    B.  The Benefits to the Settlement Class:  Nationwide Injunctive Relief ................................5

    C.  Plaintiffs' Enforcement of the Injunction ...............................................6

    D.  Class Notice .............................................................................................6

    E.  Class Member Release .............................................................................6

    F.  Attorneys' Fees and Costs and Service Awards ......................................6

IV.  Legal Standard for Final Approval ...............................................................7

V.  ARGUMENT ..................................................................................................8

    A.  The Settlement Agreement Warrants Final Approval...............................8

        i.  Factors 1 and 2:  The Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Litigation Favor Settlement. ........................................................9

        ii.  Factor 3:  The Risk of Maintaining Class Action Status Through the Trial. ..............10

        iii.  Factor 4:  The Settlement Benefits are Substantial. .................................................10

        iv.  Factor 5:  The Discovery, Research, and Analysis Performed by Class Counsel is adequate to assess the Settlement and the Strengths and Weaknesses of Plaintiffs' Claims. ...................................................................11

        v.  Factor 6: Experienced Class Counsel Recommends Final Approval......................11

        vi.  Factor 7:  No Government Participant Is Present.................................................12

        vii.  Factor 8:  The Response from Class Members Favors Final Approval. ...............12

        viii.  Factor 9:  Lack of Collusion Between the Parties...............................................13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

B. Class Action Treatment is Appropriate .................................................................... 13

    i. The Class is Sufficiently Numerous ............................................................. 14

    ii. There Are Common Questions of Both Law and Fact .......................................... 14

    iii. Class Representative Erakat Claims Are Typical of Other Class Members' Claims .................................................................................................. 14

    iv. Class Representative and Class Counsel Fairley and Adequately Protect the Interests of the Class ............................................................................... 15

CONCLUSION ....................................................................................................... 15

NOT. OF MOT. AND MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:18-CV-06926-YGR

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ............................... 8

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ................................. 13

*Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020) .......................................... 7

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981) .............................. 7

*Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015 (9th Cir. 2012) ..................................... 15

*Free Range Content, Inc. v. Google, LLC,* 2019 WL 1299504 (N.D. Cal. Mar. 21, 2019) ......... 7

*Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ..... 9, 13

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ................................. 15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ........... 10-12

*Officers for J. v. Civ. Serv. Commn. of City and County of San Francisco*, 688 F.2d 615 (9th Cir. 1982) ...................................................................................................................... 9

*Perks v. Activehours, Inc., No. 5:19-cv-5543-BLF*, 2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) .............................................................................................................................. 8

*Principe v. Ukropina (In re Pac. Enters. Sec. Litig.)*, 47 F.3d 373 (9th Cir. 1995) ................... 12

*Richie v. Blue Shield of Cal.,* 2014 WL 6982943 (N.D. Cal. Dec. 9, 2014)............................... 14

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ......................................... 8

*Sadowska v. Volkswagen Grp. of Am., Inc.,* 2013 WL 9600948 (C.D. Cal. Sept. 25, 2013) ........ 7

*Slaven v. BP Am., Inc.*, 190 F.R.D. 649 (C.D. Cal. 2000) ........................................... 14

*Spalding v. City of Oakland,* 2012 WL 994644 (N.D. Cal. Mar. 23, 2012) .......................... 14

*Stockwell v. City & County of San Francisco*, 749 F.3d 1107 (9th Cir. 2014) .......................... 14

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ......................................... 12

*Wong v. Arlo Techs., Inc.,* 2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) .................................. 8

**Statutes**

28 U.S.C. § 1715 ..................................................................................................... 12

Cal. Bus. & Prof. Code § 17200 ........................................................................... 2

Cal. Bus. & Prof. Code § 17500 ........................................................................... 2

Cal. Civ. Code § 1761 ........................................................................................... 3

Cal. Civ. Code § 1790 ........................................................................................... 3

**Rules**

Fed. R. Civ. P. 23 ............................................................................................... *passim*

Fed. R. Civ. P. 30 ............................................................................................... 3, 11

1

**Other Authorities**

4 NEWBERG ON CLASS ACTIONS (4th ed.) §§  11:45, 11:50.................................................... 10-11

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Introduction

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Thomas Bailey and Jamal Erakat (collectively, "Plaintiffs") seek final approval of the preliminarily approved (ECF 169) class action Settlement of this putative class action against Defendant Rite Aid Corporation ("Rite Aid" or "Defendant").[1]  The claims in this action are highly disputed, and the Settlement provides robust injunctive relief that benefits the Settlement Class and consumers generally, which is fair, reasonable, and adequate, especially in light of the risks and delays of continued litigation.

Plaintiffs allege that Rite Aid falsely labeled its line of Rite Aid rapid release acetaminophen gelcaps. LNK International Inc. ("LNK") produces and manufactures a generic version of the Rapid Release Gelcaps,[2] which Rite Aid markets, distributes, and sells under the Rite Aid brand ("Rite Aid Gelcaps"). Rite Aid "misled and continues to mislead consumers about the nature, quality, and effectiveness" of the Rite Aid Gelcaps through its labeling. (Plaintiffs' Second Amended Complaint ("SAC") ¶ 7.)  As alleged, the term "rapid release," which appears prominently on the package of the Rite Aid Gelcaps, does not actually mean that the drug works faster than nonrapid release products. (*Id*. ¶¶ 9-11.)  According to the SAC, studies show that "traditional, non-rapid release acetaminophen products can be equally effective in the same, if not faster, time period than its Rite Aid rapid release products." (*Id*.) Rite Aid nevertheless charges a premium for its Rite Aid Gelcaps and markets the Rite Aid Gelcaps with "false, misleading, unfair, deceptive labeling and marketing in an effort to dupe consumers into purchasing these Gelcaps for prices that exceed their true value." (*Id*.)

---

[1] Unless otherwise defined, Capitalized terms herein have the meaning set forth in the Settlement Agreement ("SA" or "Settlement Agreement"), attached as **Exhibit A** to the concurrently filed Breit Declaration.

[2] Although LNK is not a party to this lawsuit, it is a party to the Settlement Agreement. LNK agreed to indemnify Rite Aid with respect to the claims made in this lawsuit.

The settlement provides a substantial benefit to the class, as it achieves meaningful injunctive relief that will benefit consumers of the products. Specifically, Rite Aid has agreed to discontinue any and all advertisements, labels, and other forms of marketing which describe the Rite Aid Gelcaps as "Rapid Release" — the core practices which are the subject of this case.

On June 15, 2022, the Court granted preliminary approval of the Settlement. (ECF 169.) As discussed in more detail below, pursuant to the preliminarily approved Settlement Agreement, the Rule 23(b)(2) "Settlement Class" consists of "All persons who purchased the [Rite Aid] Gelcaps in the United States within the applicable statute of limitations established by the State of California through the final disposition of this action." (ECF 169.)

The Court found that notice to the Rule 23(b)(2) class was not required and there was no option for class members to opt out. (*Id* at 9.) Moreover, no objections to the settlement have been raised, either by consumers or state or governmental entities. Accordingly, the Settlement Agreement should be finally approved because it is fair, reasonable, adequate, and in the best interests of the class. Class counsel, who are highly skilled and experienced in consumer and complex litigation, vigorously litigated the claims at issue for the past four years and engaged in significant motion practice and conducted substantial discovery. As a result, class counsel acted intelligently in the settlement negotiations and reached meaningful relief for the Class and the general public.

The terms of the Settlement were negotiated in good faith and at arm's length by lawyers thoroughly familiar with the merits of the claims and the risks associated with continued litigation. As Plaintiffs explain below, the Settlement is fair, reasonable, and adequate and should be granted final approval.

## II.     Factual and Procedural Background

On November 15, 2018, Plaintiff Thomas Bailey initiated a class action lawsuit challenging Rite Aid's false labeling of its line of Rapid Release Gelcaps. Plaintiff Bailey alleged claims for violation of California False Advertising Law, Cal. Bus. & Prof. Code § 17500 ("FAL"), violation of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"), violation of

California Consumer Legal Remedies Act, Cal. Civ. Code § 1761 ("CLRA"), violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, breach of implied warranty of merchantability, breach of express warranty, unjust enrichment, and declaratory and injunctive relief. ECF 1. Plaintiff Bailey alleged he was deceived by Rite Aid's false, misleading, unfair, and deceptive representations when he purchased the Rapid Release Gelcaps because the product failed to provide pain relief at a rate any faster—and, indeed, actually *slower*—than the product's non-rapid release counterpart, despite its price premium.

Rite Aid filed a motion to dismiss on February 5, 2019. (ECF 25.) Following briefing, the Court granted in part and denied in part the motion to dismiss. (ECF 60.) Specifically, the Court granted Rite Aid's motion as to Plaintiff Bailey's claim for declaratory relief with prejudice, and Plaintiff Bailey's warranty claims with leave to amend. (*Id.* at 12-13.) Rite Aid answered the FAC on October 7, 2019. (ECF 66.)

Class counsel served written discovery on Rite Aid in November 2019, and remotely completed the Fed. R. Civ. P. 30(b)(6) depositions of Rite Aid's representative and third-party manufacturer's representatives in June of 2020. (Breit Decl. ¶ 8.) On October 19, 2020, Plaintiff Bailey moved for class certification. (ECF 92-4.) Following full briefing and argument, the Court granted in part and denied in part Plaintiff Bailey's motion for class certification. (ECF 129.) Specifically, the Court granted Plaintiff Bailey's motion under Rule 23(b)(3) with respect to his claims under the UCL, FAL, and CLRA, but otherwise denied certification under Rule 23(b)(2) without prejudice. Rite Aid moved for reconsideration, which the Court denied. (ECF 133-134.) Rite Aid sought permission before the Ninth Circuit to appeal this Court's class certification order pursuant to Federal Rule of Civil Procedure 23(f). *See* Case No. 21-80061. The Ninth Circuit denied that petition for permission to appeal. *Id.*

Thereafter, the Parties engaged in substantive settlement negotiations and were able to reach a settlement in principle. The Parties finalized the Settlement Agreement, and on April 29, 2022, Plaintiffs filed their Motion for Preliminary Approval and an accompanying Motion to

Amend the operative Complaint to add Plaintiff Jamal Erakat as a class representative for the purposes of settlement. (ECF 156-157.)

On May 6, 2022, Plaintiffs filed a Motion to Convert the Certified Rule 23(b)(3) Class to a Rule 23(b)(2) Class. (ECF 164.) Plaintiffs asked the Court to modify its previous class certification order by converting the Rule 23(b)(3) class to a 23(b)(2) class for purposes of settlement. On June 15, 2022, the Court: (1) granted Plaintiffs' Motion to Amend; (2) denied Plaintiffs' request to convert the classes; (3) terminated the Rule 23(b)(3) class; and (4) conditionally approved the Rule 23(b)(2) class for settlement purposes only. (ECF 169.)

## III.    The Terms of the Settlement Agreement

 Following extensive settlement negotiations over the course of two years, including a full-day mediation session with the Honorable William J. Cahill (Ret.) at JAMS in July 2020, the Parties were able to reach agreement to resolve this matter in or around April 2022.

Pursuant to the Settlement Agreement, Rite Aid has agreed to nationally discontinue any and all advertisements, labels, and other forms of marketing which describe the Rite Aid Gelcaps as "Rapid Release." The Settlement's key terms are discussed below.

### A.    The Proposed Settlement Class

For settlement purposes only, the Court decertified the Rule 23(b)(3) damages class, and conditionally certified an injunctive relief only class pursuant to Fed. R. Civ. P. 23(b)(2) defined as follows:

> All persons who purchased the Class Rapid Release Gelcaps in the United States within the applicable statute of limitations established by the State of California through the final disposition of this action.

(the "Settlement Class") (ECF 169 at 5-7.)

While the Court previously granted class certification under Rule 23(b)(3) (and denied class certification under Rule 23(b)(2)), (ECF 129), unique factual developments in the litigation altered the appropriate path for achieving the best possible outcome for the Class. In their Motion for Preliminary Approval, Plaintiffs explained that, due to the specific circumstances in this case, the proposed Settlement provided *greater* relief to consumers than if Plaintiffs succeeded at trial

on behalf of the already-certified Rule 23(b)(3) class. Specifically, following the Court's certification of the Rule 23(b)(3) class, Plaintiffs fielded their conjoint analysis and discovered that the price premium associated with the Rite Aid Gelcaps, and any class-wide damages, were at best nominal. As such, class counsel determined that the best possible outcome for class members would come in the form of injunctive relief in order to prevent future harm from occurring.

Because the Court had previously determined that Plaintiff Bailey did not satisfy the typicality requirement with respect to his request to seek prospective injunctive relief on behalf of a Rule 23(b)(2) class, (ECF 129), the Parties filed a stipulated motion to allow Plaintiffs leave to amend the operative complaint, adding Mr. Erakat as the Class Representative for the Rule 23(b)(2) settlement class. (ECF 156.) The Court granted the motion and found that Plaintiff Erakat, unlike Plaintiff Bailey, satisfied the typicality requirement because he represented his intention to purchase the Rite Aid Gelcaps again, if properly labeled. (ECF 169.) Thus, the Court held that, "for purposes of settlement, [P]laintiffs [] satisfied the requirements of Rule 23(a) as well as the requirements for certification under Rule 23(b)(2)." (*Id.* at 6.)

**B.    The Benefits to the Settlement Class: Nationwide Injunctive Relief**

The Settlement Agreement provides for meaningful injunctive relief. Rite Aid has agreed to discontinue any and all advertisements, labels, and other forms of marketing which describe the Rite Aid Gelcaps as "Rapid Release." Injunctive relief is important to Plaintiffs and Class Members and will provide the Settlement Class with the best possible outcome. Injunctive relief will halt Rite Aid's labeling of the Rite Aid Gelcaps in the manner that Plaintiffs believe has misled Plaintiffs and Class Members. The terms of the injunction are:

1.    Within three (3) months after the Effective Date, the unqualified term "Rapid Release" will not be included on the labeling on the front of the Rite Aid Gelcaps' packaging.

2.    Rite Aid is not required to initiate a recall of Products already in the stream of commerce; nor is Rite Aid or LNK prohibited from selling any remaining inventory of the Products with the prior labeling. However, Plaintiffs retain the right to reopen their claims for injunctive

5

relief if Rite Aid fails to comply with the terms of the Settlement Agreement as described in Paragraph 4(b) therein.

3.    All class members are deemed to have released Rite Aid from all claims for injunctive relief that were or could have been asserted that arise from the advertising labeling, and marketing of the Rite Aid Gelcaps. However, the release does not affect class members' rights to bring claims for monetary damages.

**C.    Plaintiffs' Enforcement of the Injunction**

Class counsel is authorized to enforce the terms of the Settlement to ensure that Defendants comply with the terms of the injunction. (SA ¶ 4(b).)

**D.    Class Notice**

Since the Settlement Agreement provides for injunctive relief only and requires no release of any monetary claims by any member of the Settlement Class, (SA ¶ 7), the Parties agree that class notice and opt-out rights are not necessary. (Breit Decl. ¶ 21.)

**E.    Class Member Release**

As stated in Section III(B)(3) above, in exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released Rite Aid from all claims for injunctive relief that were asserted, or could have been asserted, that relate to the advertising, labeling, and marketing of the Rapid Release Gelcaps. (SA ¶ 7). However, Settlement Class Members do not release any claims for monetary relief. (*Id.*) The release is appropriately tailored in that it is co-extensive with the legal and factual claims of the Settlement Class in this Action.

**F.    Attorneys' Fees and Costs and Service Awards**

For the past four years, class counsel, Milberg Coleman Bryson Phillips Grossman PLLC and Simmons Hanly Conroy, has worked on this case on a purely contingency basis. (Breit Decl. ¶ 33.) The Parties negotiated a cap on Attorneys' Fees and Costs and a Service Award only after they had agreed on the relief for the Settlement Class. (*Id.* ¶ 34.) Moreover, the Settlement is not contingent on the award of Attorneys' Fees and Costs or the Service Award, which is indicative of a fair and arm's-length settlement process. *See* Fed. R. Civ. P. 23 advisory committee's note;

*see also Sadowska v. Volkswagen Grp. of Am., Inc.*, 2013 WL 9600948, at *8 (C.D. Cal. Sept. 25, 2013) (approving settlement and finding agreed fees and costs reasonable where "[o]nly after agreeing upon proposed relief for the Class Members, did the Parties discuss attorneys' fees, expenses, and costs").

On July 13, 2022, class counsel filed a motion for an award of attorneys' fees and costs in the amount of $361,666.66, which represents less than 32% of class counsel's total lodestar of $1,142,670.70. Class counsel has also incurred $135,643.48 in litigation costs on this case. (ECF 171.) Pursuant to the Settlement Agreement, LNK, on behalf of Rite Aid, will pay the amount of Attorneys' Fees and Costs awarded by the Court within 7 days, following the conclusion of all appeals, if any. (SA ¶ 3). Plaintiffs' motion also requested payment of $5,000.00 to Plaintiff Bailey as a service award for his participation and assistance in this lawsuit. (ECF 171.) If the Court approves a Service Award, payment shall be made within 21 days of Final Approval. (Breit Decl. ¶ 41.)

## IV.    Legal Standard for Final Approval

The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020); *Free Range Content, Inc. v. Google, LLC*, 2019 WL 1299504, at *8 (N.D. Cal. Mar. 21, 2019). Indeed, the promotion of fair, adequate and reasonable settlements is a fundamental tenet of litigation in the federal courts. The Fifth Circuit, among others, has succinctly summarized the underlying principles:

> The very uncertainty of outcome in litigation, as well as the avoidance of wasteful litigation and expense, lay behind the congressional infusion of a power to compromise. This is recognition of the policy of the law generally to encourage settlements.

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981) (internal citation and quotations omitted).

When assessing a proposed settlement, "'the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the

7

extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'" *Rodriguez v. West Publ'g Corp*., 563 F.3d 948, 965 (9th Cir. 2009) (quoting *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1020 (9th Cir. 1998)).

Rule 23(e)(2) establishes specific factors that a district court must consider in order to ensure that the proposed class settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see also Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at *5 (N.D. Cal. Apr. 19, 2021). The Ninth Circuit has held that the district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: "'(1) the strength of the plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of the class members to the proposed settlement.'" *In re Bluetooth Headset Products Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen. Elec*., 361 F.3d 566, 575 (9th Cir. 2004)). "This list is not exclusive and different factors may predominate in different factual contexts." *Perks v. Activehours, Inc.*, No. 5:19-cv-5543-BLF, 2021 WL 1146038, at *4 (N.D. Cal. Mar. 25, 2021). Further, this District has established specific factors that guide whether a proposed settlement should be preliminarily or finally approved. *See* Procedural Guidance for Class Action Settlements.[3]

## V.    ARGUMENT

### A.    The Settlement Agreement Warrants Final Approval

The Settlement, which is the result of good-faith, informed, arm's-length negotiation between competent counsel, satisfies each factor for final approval under Rule 23(e), Ninth Circuit case law, and this District's Procedural Guidance for Class Action Settlements.

---

[3]    *Available at* https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements (last visited Sept. 13, 2022).

1

      **i.**      **Factors 1 and 2: The Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Litigation Favor Settlement.**

2

3

4

5

6

7

8

9

10

11

      Courts often address the first two *Churchill* factors together, as they require the court to assess the plaintiff's "likelihood of success on the merits and the range of possible recovery" versus the risks of continued litigation and maintaining class action status through trial. *See Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). However, the Court need not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for J. v. Civ. Serv. Commn. of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). These factors weigh in favor of approving settlement when, as here, even a successful day at trial for Plaintiffs would likely result in little financial benefit to the class. (Breit Decl. ¶ 31.)

12

13

14

15

16

17

18

19

20

21

      The Settlement here appropriately balances the costs, risks, and likely delay of further litigation against the benefits provided, on the other hand. While confident in the strength of their claims, the lack of significant damages borne out by the conjoint survey supports resolution of this matter on an injunctive relief basis. If the Court does not approve the Settlement, the Parties would incur the expense to prepare expert disclosures and reports, prepare for trial, finalize all pretrial filings, and conducting the trial (and potential appeals). Even if Plaintiffs were to succeed on the merits at trial, any recovery would likely be delayed by appeals and the litigation could take years to resolve. (Breit Decl. ¶ 30.) And even if trial and the inevitable appeal were to be decided in favor of the class, any financial award obtained by the class would be significantly eroded by the additional costs and fees.

22

23

24

25

26

27

      By reaching this Settlement, the Parties avoid further protracted and uncertain litigation and will establish a means for prompt, streamlined resolution of Class Members' claims against Rite Aid. Given the alternative of long and complex litigation before this Court, the risks involved in such litigation, and the possibility of further appellate review, the availability of prompt relief under the Settlement is highly beneficial to Class Members, and here, the relief is substantial. Given the nominal damages demonstrated by Plaintiffs conjoint survey, and inherent risks

28

9

Plaintiffs face with respect to their claims, the substantial injunctive relief benefits the Settlement provides clearly favor its final approval.

### ii.      Factor 3: The Risk of Maintaining Class Action Status Through the Trial.

Rite Aid vigorously opposed class certification, which the Court previously granted only in part under Rule 23(b)(3), finding that Plaintiff Bailey did not meet the typicality requirement for a 23(b)(2) class. (ECF 129.) Rite Aid moved for reconsideration, which the Court denied. (ECF 133-134.) Rite Aid then sought permission before the Ninth Circuit to appeal this Court's class certification order pursuant to Federal Rule of Civil Procedure 23(f). *See* Case No. 21-80061. The Ninth Circuit denied that petition for permission to appeal. *Id.*

With regard to the 23(b)(3) class, it has now been decertified at the request of the Parties, (ECF 169), for reasons explained above. The Court conditionally certified a Rule 23(b)(2) class only after Plaintiffs amended their complaint to add Mr. Erakat as a class representative. (ECF 169.) Without settlement, Rite Aid would likely seek to depose Plaintiff Erakat and move for decertification in this case. In negotiating the Settlement, Plaintiffs took into account the uncertainty of class certification and believe that in light of the risks, the settlement is fair, reasonable, and adequate.

### iii.      Factor 4: The Settlement Benefits are Substantial.

"'In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 4 Newberg on Class Actions, § 11:50 at 155 (4th ed. 2002)). Courts consider "'the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.'" *Id*. (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)).

The injunctive relief Plaintiffs negotiated substantially outweighs the possibility of no relief at all. Rite Aid has agreed to discontinue any and all advertisements, labels, and other forms

1    of marketing which describe the Rite Aid Gelcaps as "Rapid Release," a primary goal of this

2    litigation. Injunctive relief is important to Plaintiffs and Class Members and, in light of the results

3    of Plaintiffs' fielded conjoint analysis, will provide the Settlement Class with the best possible

4    outcome.

5              iv.    **Factor 5: The Discovery, Research, and Analysis Performed by Class**
              **Counsel is adequate to assess the Settlement and the Strengths and**
6              **Weaknesses of Plaintiffs' Claims.**

7              Class settlements are presumed fair when they are reached "following sufficient discovery

8    and genuine arms-length negotiation." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528; 4

9    NEWBERG at § 11:24. Plaintiffs conducted investigation before filing the lawsuit and conducted an

10   extensive amount of formal discovery before entering into settlement negotiations. (Breit Decl. ¶

11   4, 8.) Among other things, Plaintiffs reviewed thousands of pages of documents, including Rite

12   Aid's marketing materials and sales data, completed the Fed. R. Civ. P. 30(b)(6) depositions of

13   Rite Aid's representative and third-party manufacturer's representatives, and worked with

14   experienced damages experts to field a comprehensive conjoint analysis analyzing data from

15   nearly 1,000 respondents. (*Id.* ¶¶ 8, 31.)

16             In addition, the Parties' legal and factual positions were extensively litigated, including on

17   Rite Aid's motion to dismiss, and with regard to Plaintiffs' motion for class certification. (*Id.* ¶¶

18   6, 9-10.)  The breadth of information reviewed, extensive investigation efforts and analyses

19   performed by class counsel, has enabled counsel to weigh the likely success of Plaintiffs' claims,

20   the risks and uncertainties described above, and to estimate potential damages associated with

21   Plaintiffs' claims. Accordingly, Plaintiffs and class counsel had sufficient information to make an

22   informed decision about the Settlement and to determine that it represented a favorable and fair

23   result for the Class Members.

24             v.    **Factor 6: Experienced Class Counsel Recommends Final Approval.**

25             In assessing the adequacy of the terms of the settlement, the trial court is entitled to and

26   should rely upon the judgment of experienced counsel for the parties. *See Nat'l Rural Telecomms.*

27

28

*Coop.*, 221 F.R.D. at 528 (internal quotations and citations omitted) (stating that "great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation"). The basis for such reliance is that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Principe v. Ukropina (In re Pac. Enters. Sec. Litig.)*, 47 F.3d 373, 378 (9th Cir. 1995). Indeed, when evaluating the proposed settlement, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel. *See Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528.

After thorough consideration, class counsel, who have significant experience litigating these types of class actions, concluded that the Settlement terms are fair, adequate, and reasonable and in the best interests of the Class as a whole, and recommend that it be granted final approval. (Breit Decl. ¶¶ 28-32.) The Settlement provides an immediate benefit to the Class and the public. Based upon their diligent investigation of the facts and law applicable to this Action, their evaluation of the case and potential class wide damages, and their extensive experience in the prosecution of class actions, class counsel believe that the Settlement is a fair, adequate and reasonable resolution of the litigation, and is preferable to continued litigation and the costs and uncertainties associated therewith.

### vi.    Factor 7: No Government Participant Is Present.

To date, no governmental entity has intervened or voiced any objection to the Settlement.[4]

### vii.    Factor 8: The Response from Class Members Favors Final Approval.

As discussed above, since the proposed Settlement involves a certified class under Rule 23(b)(2), and there is no release of any monetary claims, no opt-out rights or notice is required. *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2558 (2011) (Rule 23 "provides no opportunity

---

[4] Plaintiffs have been informed that notice to the required state and federal authorities pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, will be sent contemporaneously with this filing. Therefore, the Parties will seek a continuance of the Final Fairness Hearing in order for Rite Aid to comply with the required notice provision.  Upon the expiration of the notice period, Plaintiffs' then-pending Motion for Final Approval will be updated as necessary.

for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action."). In its order granting preliminary approval, the Court agreed that class notice was not necessary here as the Settlement "provide[s] for injunctive relief only and further expressly preserve[s] the rights of the class to bring claims for monetary relief." (ECF 169 at 9 (citing Settlement Agreement ¶ 7).) Therefore, the reaction of the Settlement Class is not a relevant factor in the final settlement approval's analysis. (Breit Decl. ¶ 21.)

### viii.   Factor 9: Lack of Collusion Between the Parties.

"Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *13 (N.D. Cal. Apr. 22, 2010). That presumption should clearly apply here.

The Settlement is the product of hard-fought, arms-length negotiations between the Parties. The case was fully and aggressively litigated by the Parties through class certification and was only resolved after certification and additional expert workup. (Breit Decl. ¶¶ 4-11.) Thus, Plaintiffs and class counsel were well apprised of the salient legal and factual issues before reaching the decision to settle the Action. (*Id.*) Given that this case was subject to extensive discovery prior to resolution, class counsel was well informed regarding the merits and damages of the disputed claims. The Parties negotiated a cap on Attorneys' Fees and Costs and a Service Award only after they had agreed on the relief for the Settlement Class. (Breit Decl. ¶ 34.) Thus, the Settlement is as presumptively fair and reasonable as it is objectively fair and reasonable.

### B.  Class Action Treatment Is Appropriate

"Parties seeking class certification must satisfy each of the four requirements of Rule 23(a) — numerosity, commonality, typicality, and adequacy[.]" *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017). In its Preliminary Approval Order, the Court found that, for settlement purposes, the Class could preliminarily be certified as defined in the Settlement Agreement. (ECF 169.) In doing so, the Court found that Plaintiff Erakat satisfied Rule 23(a)

requirements, and that Settlement class counsel were adequate representatives of the Class. (*Id*.)

There is no reason for the Court to depart from its previous conclusion that certification of the Class is warranted, and no party argues otherwise.

### i.    The Class is Sufficiently Numerous

Rule 23(a)(1) is satisfied when "the class is so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is generally satisfied when the class exceeds forty members. *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000). "A specific minimum number is not necessary, and [a] plaintiff need not state the exact number of potential class members." *Richie v. Blue Shield of Cal.*, 2014 WL 6982943, at *15 (N.D. Cal. Dec. 9, 2014) (class of 140 members meets numerosity requirement). Here, the Court has found that the numerosity requirement is satisfied (ECF 169) since Rite Aid's sales data indicates that from 2014 through 2019 it sold over 600,000 units of Rite Aid Gelcaps in the state of California. Numerosity is thus clearly established.

### ii.    There Are Common Questions of Both Law and Fact

Rule 23(a)(2) "conditions class certification on demonstrating that members of the proposed class share common 'questions of law or fact.'" *Stockwell v. City & County of San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014). Courts routinely find commonality where class claims arise from a defendant's uniform course of conduct. *Spalding v. City of Oakland*, 2012 WL 994644, at *3 (N.D. Cal. Mar. 23, 2012) (finding commonality where plaintiffs "alleged a common course of conduct that is amenable to classwide resolution"). Here, as this Court recognized on Preliminary Approval, the issues in this case are common to the members of the proposed class. (ECF 169.)  There are common issues of law and fact that affect the Class uniformly and satisfy the commonality requirement.

### iii.    Class Representative Erakat Claims Are Typical of Other Class Members' Claims

 "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class

---

14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

members have been injured by the same course of conduct.'" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012). As this Court recognized in the Preliminary Approval Order, "Mr. Erakat satisfies the typicality requirement of Rule 23(b)(2)." (ECF 169.) Nothing has changed since then. Plaintiff Erakat and Class Members' claims arise from the same nucleus of facts and are based on the same alleged defect and legal theory. Typicality is therefore satisfied.

1

2

### iv.    Class Representative and Class Counsel Fairly and Adequately Protect the Interests of the Class

A determination of adequacy of representation requires that "two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000), *as amended* (June 19, 2000) (citing *Hanlon*, 150 F.3d at 1020).

Here, Plaintiffs seek the same remedy as all Class Members: addressing the misrepresentations on the Rite Aid Gelcaps packaging. Further, Class Counsel have extensive experience litigating and settling class actions, including unlawful business practices claims on behalf of consumers. They have demonstrated expertise in handling all aspects of complex litigation and class actions and are qualified to represent the Class. (ECF 169.)

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the proposed Settlement, certify the Settlement Class for settlement purposes, appoint Plaintiff Jamal Erakat as Settlement Class Representative, appoint Plaintiffs' counsel, Milberg Coleman Bryson Phillips Grossman, PLLC and Simmons Hanly Conroy, as Settlement Class Counsel, enter judgment dismissing with prejudice all individual and class claims asserted in the litigation, and grant Plaintiffs' Motion for Attorney Fees, Costs and Service Payments.

*Signature on following page*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED:  September 16, 2022

Respectfully submitted,

/s/ *Mitchell M. Breit*

Mitchell M. Breit (*pro hac vice*)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
405 East 50th Street
New York, New York 10022
Phone: (347) 668-8445
mbreit@milberg.com

Gregory F. Coleman (*pro hac vice*)
Adam A. Edwards (*pro hac vice*)
Mark E. Silvey (*pro hac vice*)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel.: (865) 247-0080
Fax: (865) 522-0049
gcoleman@milberg.com
aedwards@milberg.com
msilvey@milberg.com

Crystal Foley (SBN 224627)
**SIMMONS HANLY CONROY**
100 N. Sepulveda Blvd., Suite 1350
El Segundo, California 90245
Telephone: (310) 322-3555
Facsimile:  (310) 322-3655
cfoley@simmonsfirm.com

*Attorneys for the Proposed Settlement Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2022, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

/s/ *Mitchell M. Breit*
Mitchell M. Breit