1
2
3
4

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

6
7
8

**THOMAS BAILEY AND JAMAL ERAKAT,** on behalf of themselves and all others similarly situated**,**

9              Plaintiffs**,**

10        vs.

11   **RITE AID CORPORATION,**

12             Defendant**.**

13

CASE NO.  4:18-cv-6926-YGR

**ORDER:**
**GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD; AND**

**JUDGMENT**

Dkt. Nos. 171, 173

14        The Court previously granted plaintiffs' Motion for Preliminary Approval of Class Action

15   Settlement in this matter on June 15, 2022. (Order Granting Preliminary Approval of Class Action

16   Settlement ("Preliminary Approval Order"), Dkt. No. 169.)  As directed by the Preliminary

17   Approval Order, on July 13, 2022, plaintiffs filed their Motion for Attorneys' Fees, Costs, and

18   Service Award. (Dkt. No. 171.)

19        Having considered the motion briefing, the arguments of counsel, the relevant law, and the

20   terms of the settlement agreement, as well as the record in this case, and based on the reasons and

21   terms set forth herein, the Court **GRANTS** plaintiffs' Motion for Final Approval.  In general, the

22   Court finds the settlement fair, adequate, and reasonable. The provisional appointments of the

23   class representatives and class counsel are confirmed. The Motion for Attorneys' Fees, Costs, and

24   Service Award is **GRANTED**.  The Court Orders that Class Counsel shall be paid $361,666.66 in

25   attorneys' fees and litigation costs, and named plaintiff Thomas Bailey shall be paid $5,000 as a

26   service award.

27   ///

28   ///

## I.    BACKGROUND

Plaintiffs filed their Second Amended Complaint ("SAC") on June 15, 2022 against defendant Rite Aid alleging that Rite Aid "misled and continues to mislead consumers about the nature, quality, and effectiveness" of the Rite Aid Gelcaps through its labeling. (SAC ¶ 7.)  The SAC alleges the following: that Rite Aid Gelcaps term "'rapid release' does not actually mean that the drug works faster for consumers than non-rapid release products," as studies show that "traditional, non-rapid release acetaminophen products can be equally effective in the same, if not faster, time period than its Rite Aid rapid release products." (*Id.* ¶¶ 9-11.)  Rite Aid nevertheless charges a premium for its rapid release Gelcaps, and it markets the Rite Aid Gelcaps with "false, misleading, unfair, deceptive labeling and marketing in an effort to dupe consumers into purchasing these Gelcaps for prices that exceed their true value." (*Id.*)

Rite Aid's labeling misled plaintiffs into believing that the Rite Aid Gelcaps they purchased would provide faster relief than other, cheaper Rite Aid acetaminophen products. (*Id.*)  Had plaintiffs known that the Rite Aid Gelcaps did not act any faster than traditional, cheaper Rite Aid products, they would not have been willing to pay the premium that they paid for the Rite Aid Gelcaps. (*Id.* ¶¶ 78,87.)

In the SAC, plaintiffs assert claims for violations of (1) the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500; (2) the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; and (3) the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761; and for (4) unjust enrichment.

Following class discovery, plaintiffs moved for class certification on October 19, 2020. (Dkt. No. 92-3.)  On April 28, 2021, the Court granted in part plaintiffs' motion for class certification. (Dkt. No. 129.)  After extensive negotiations, the parties reached a settlement, and plaintiffs moved for preliminary approval of the class settlement on April 29, 2022. (Dkt. No. 157.)  On June 15, 2022, the Court granted plaintiffs' Motion for Preliminary Approval of the Class Settlement.

///

///

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## II.     KEY TERMS OF THE SETTLEMENT AGREEMENT

### A.     Injunctive Relief for the Class

Pursuant to the settlement agreement, within three (3) months after the effective date of the settlement agreement, the unqualified term "Rapid Release" will not be included on the labeling on the front of the product's packing.  Nothing in the settlement agreement shall prohibit or limit Rite Aid's right or ability to continue to compare its products to Tylenol Rapid Release Gels Active Ingredient or use or permit others to use, in accordance with all applicable laws and regulations, its licenses, logos, taglines, products descriptors, or registered trademarks.  Nothing in the settlement agreement shall cause or be construed as requiring Rite Aid to initiate a recall of products already in the stream of commerce.  The settlement also does not prohibit Rite Aid or its supplier, LNK International Inc. ("LNK"), from selling any remaining inventory of the products with the prior labeling, and the parties contemplate and expressly agree that all remaining inventory of the product with the prior labeling can be sold by Rite Aid and LNK pursuant to the settlement agreement.

### B.     Class Members Release

In exchange for the benefits conferred by the settlement, all class members would be deemed to have released Rite Aid from all claims for injunctive relief that were or could have been asserted that arise from the advertising labeling, and marketing of the Class Rapid Release Gels. The release does not affect class members' rights to bring claims for monetary damages.

### C.     Attorneys' Fees and Costs

Under the settlement agreement, Rite Aid agrees to pay the total sum of Three Hundred Sixty-One Thousand Six Hundred Sixty-six Dollars and Sixty-Six Cents ($361,666.66) for full and complete resolution and release of the lawsuit.

## III.    FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A.     Legal Standard

A court may approve a proposed class action settlement of a class proposed to be certified only "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class certification. Fed. R. Civ. P. 23(e)(2).  In reviewing the proposed settlement,

a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998), o*verruled on other grounds by Dukes*, 564 U.S. at 131.  The *Hanlon* court identified the following factors as relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement.  *Id.* at 1026 (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Settlements that occur before formal class certification also "require a higher standard of fairness."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).  In reviewing such settlements, in addition to considering the above factors, a court also must ensure that "the settlement is not the product of collusion among the negotiating parties."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

**B.    Class Definition and Basis for Conditional Certification**

The Settlement Class consists of only a Rule 23(b)(2) class defined as:

All persons who purchased the Class Rapid Release Gelcaps in the United States within the applicable statute of limitations established by the State of California through the final disposition of this action.

("the Settlement Class").  (Dkt. No. 173, Motion for Final Approval, ("Mot.") at 4.)

The Settlement Class and the class previously certified are different.  The Court previously granted in part and denied in part plaintiff Bailey's motion for class certification. (Dkt. No. 129, Class Certification Order, "Class Cert. Order".)  Specifically, and by contrast to the definition above, the Court granted plaintiff's motion to certify a damages class defined as:

All persons who purchased the Class Rapid Release Gelcaps in the *State of California* within the applicable statute of limitations established by the State of California through the final disposition of this action.

(*Id.*; difference italicized.)

The difference between the two classes is appropriate given the specifics of this case.  The

4

1    parties previously briefed class certification.  During briefing, class counsel learned that a Rule

2    23(b)(3) damages class would not be beneficial to class members and that the price premium paid

3    by the proposed class was minimal, leaving class members at risk of receiving only nominal

4    damages—with no assurance of receiving protection from deceptive marketing of the products

5    continuing into the future.  Thus, class counsel determined that the best possible outcome for class

6    members would come in the form of injunctive relief.  To that end, plaintiffs moved to terminate

7    the previously certified Rule 23(b)(3) class and requested approval of settlement as to a Rule

8    23(b)(2) injunctive relief class.

9        The Court finds that, for purposes of settlement, plaintiffs have satisfied the requirements

10   of Rule 23(a) as well as the requirements for certification under Rule 23(b)(2).

11       With respect to numerosity under Rule 23(a)(1), plaintiffs argue that this requirement is

12   satisfied because "Rite Aid's sales data indicates that from 2014 through 2019 it sold over 600,000

13   units of Class Rapid Release Gelcaps in the state of California." (Mot. at 14.)  Rite Aid does not

14   dispute this.  Accordingly, the Court finds that the numerosity requirement is met.

15       Rule 23(a)(2) commonality requires "questions of fact or law common to the class,"

16   though all questions of fact and law need not be in common.  *Hanlon*, 150 F.3d at 1026.  The

17   focus of this action—whether a reasonable consumer is likely to be deceived by Rite Aid's alleged

18   conduct, and whether a reasonable consumer would have found the "rapid release" statement to be

19   material—is common to all class members.

20       Rule 23(a)(3) requires that the plaintiff show that "the claims or defenses of the

21   representative parties are typical of the claims or defenses of the class."  *Id*. at 1020.  Here, the

22   Court previously found that Mr. Bailey did not satisfy the typicality requirement with respect to

23   his request to seek prospective injunctive relief on behalf of a Rule 23(b)(2) because Mr. Bailey

24   previously testified in his deposition that he would be unwilling to purchase the product again

25   even if Rite Aid fixed its labeling. (Preliminary Order of Approval, at 6-7.)

26       However, unlike Mr. Bailey, Mr. Erakat satisfies the typicality requirement of Rule

27   23(b)(2).  Mr. Erakat represents in the Second Amended Complaint that he would purchase the

28   Class Rapid Release Gelcaps again in the future if properly labeled. (SAC ¶ 80.)  Accordingly,

United States District Court
Northern District of California

1    Mr. Erakat's claims and defenses would be typical of those of the proposed injunctive relief class.

2        With respect to Rule 23(a)(4), the Court's views with respect to Mr. Bailey's adequacy of

3    representation of the proposed class aligns with that set forth in the section on typicality.  With

4    respect to Mr. Erakat, no conflicts of interest appear as between plaintiff and the members of the

5    Settlement Class. Further, Mr. Erakat assisted counsel in this case by reviewing the pleadings,

6    drafting the Second Amended Complaint, and reviewing the settlement agreement. (Dkt. No. 173-

7    1, Declaration of Mitchell Breit, "Breit Decl.", ¶ 24.)  Class Counsel have demonstrated that they

8    are qualified and have experience with prosecuting class actions of this kind and therefore

9    adequate to represent the Settlement Class as well.

10        The Settlement Class further satisfies Rule 23(b)(2) in that "the party opposing the class

11    has acted or refused to act on grounds that apply generally to the class, so that final injunctive

12    relief . . . is appropriate respecting the whole class." Fed. R. Civ. P. 23(b)(2).  The injunctive relief

13    described in the settlement agreement would prohibit Rite Aid from engaging in the unlawful

14    conduct, making Rule 23(b)(2) certification appropriate.  *See Parsons v. Ryan*, 754 F.3d 657, 688

15    (9th Cir. 2014) (explaining that Rule 23(b)(2) certification is "unquestionably satisfied when

16    members of a putative class seek uniform injunctive or declaratory relief from policies or practices

17    that are generally applicable to the class as a whole").

18        Based on the foregoing, the proposed class is certified pursuant to Rule 23(c).

19        **C.    Settlement Agreement Appears Fair and Reasonable**

20        The settlement agreement, a copy of which is attached hereto as **Exhibit A**, is granted final

21    approval pursuant to Rule 23(e)(2).  Based upon the information submitted, and the *Hanlon*

22    factors, the settlement here is fair and reasonable. Absent the settlement, the parties would have to

23    proceed to trial.  This would require the parties to incur the expense to prepare expert disclosures

24    and reports, finalize all pretrial filings, conduct the trial (and potential appeals), all with little

25    potential benefit to the class.  Even if plaintiffs were to succeed on the merits at trial, any financial

26    award obtained by the class would be significantly eroded by the additional costs and fees.

27    However, the settlement provides immediate, meaningful benefits to the class in the form of

28    nationwide injunctive relief.

1   Further, importantly, although the class members are releasing their injunctive right claims

2   against Rite Aid, the release does not cover any claims for monetary damages.  Given the fact that

3   class members can still seek damages against Rite Aid, the settlement for injunctive relief only

4   provides value to the class members.

5   The settlement agreement appears to have been the product of arm's length and informed

6   negotiations.  This case was fully and aggressively litigated by the parties through class

7   certification and was only resolved after the Court issued its order on class certification.  Thus, the

8   parties have vetted their claims and know the strengths and weaknesses of their case.

9   In addition, the parties negotiated a cap on attorneys' fees and costs and a service award

10  only after they agreed on the relief for the Settlement Class. (Breit Decl., ¶ 34.) Accordingly, the

11  Court finds that the record does not indicate collusion or self-dealing.  *See In re Bluetooth*, 654

12  F.3d at 946-47.

13  The relief provided for the class appears to be adequate, taking into account:

14  (i) the costs, risks, and delay of trial and appeal;

15  (ii) the relief provided to the class;

16  (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

17  (iv) any agreements required to be identified under Rule 23(e)(3).

18  Moreover, the settlement agreement appears to treat Class members equitably relative to each

19  other.

20  Based on the foregoing, the Court certifies the class and appoints Milberg Coleman Bryson

21  Phillips Grossman, PLLC and Simmons Hanly Conroy as class counsel, and plaintiff Jamal Erakat

22  as the class representative.

23  **D.     Other Findings**

24  **Notice to Government Agencies:**  The parties confirmed on the record that the required

25  notice to federal and state attorneys general under the Class Action Fairness Act ("CAFA"), 28

26  U.S.C. § 1715(b), was provided. Notice occurred more than 90 days before the date of this order, as

27  required by 28 U.S.C. § 1715(d).

28  ///

7

### E.    Certification is Granted and the Settlement is Approved

After reviewing all of the required factors, the Court finds the settlement agreement to be fair, reasonable, and adequate, and certification of the settlement class as defined therein to be proper.  Accordingly, the Court grants class certification to the following settlement class:

> All persons who purchased the Class Rapid Release Gelcaps in the United States within the applicable statute of limitations established by the State of California through the final disposition of this action.

## IV.   MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

### A.    Attorneys' Fees and Class Representative Awards

Attorneys' fees and costs may be awarded in a certified class action under Federal Rule of Civil Procedure 23(h).  Such fees must be found "fair, reasonable, and adequate" in order to be approved.  Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).  To "avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id.*  "[T]he members of the class retain an interest in assuring that the fees to be paid class counsel are not unreasonably high," since unreasonably high fees are a likely indicator that the class has obtained less monetary or injunctive relief than they might otherwise. *Id.* at 964.

The Court analyzes an attorneys' fee request based on either the "lodestar" method or a percentage of the total settlement fund made available to the class, including costs, fees, and injunctive relief.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  The Ninth Circuit encourages courts to use another method as a cross-check in order to avoid a "mechanical or formulaic approach that results in an unreasonable reward." *In re Bluetooth*, 654 F.3d at 944–45 (citing *Vizcaino,* 290 F.3d at 1050–51.)

Under the lodestar approach, a court multiplies the number of hours reasonably expended by the reasonable hourly rate.  *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate.  A reasonable hourly rate is ordinarily the 'prevailing market rate [] in the relevant community.'").  Under the percentage-of-the-fund method, courts in the Ninth Circuit

United States District Court
Northern District of California

1    "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing

2    adequate explanation in the record of any 'special circumstances' justifying a departure." *In re*

3    *Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d

4    1301, 1311 (9th Cir. 1990)).  The benchmark should be adjusted when the percentage recovery

5    would be "either too small or too large in light of the hours devoted to the case or other relevant

6    factors." *Six (6) Mexican Workers*, 904 F.2d at 1311.  When using the percentage-of-recovery

7    method, courts consider a number of factors, including whether class counsel "'achieved

8    exceptional results for the class,' whether the case was risky for class counsel, whether counsel's

9    performance 'generated benefits beyond the cash settlement fund,' the market rate for the

10   particular field of law (in some circumstances), the burdens class counsel experienced while

11   litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled

12   on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir.

13   2015) (quoting *Vizcaino*, 290 F.3d at 1047-50. "[T]he most critical factor [in determining

14   appropriate attorneys' fee awards] is the degree of success obtained." *Hensley v. Eckerhart*, 461

15   U.S. 424, 436 (1983).  The Ninth Circuit has made clear that in "megafund" cases, courts may

16   "employ the lodestar method instead" of the percentage-of-recovery method if rote application of

17   the 25% benchmark "would yield windfall profits for class counsel in light of the hours spent on

18   the case." *In re Bluetooth, 654 F.3d* at 942.

19       Here, counsel requests a fee award of $361,666.66, which is the maximum authorized in

20   the settlement agreement.  The attorneys' fees sought reflects a negative lodestar, which includes

21   reimbursement of reasonable out-of-pocket expenses and costs. Class Counsel's actual lodestar is

22   approximately $1,142,670.70. (Breit Decl., ¶¶ 24, 25.)

23       The Court has reviewed Class Counsel's submission regarding their fee request. (Dkt. No.

24   171.)  The hourly rates commensurate with their experience and with the legal market in this

25   district.  The Court finds that Class Counsel represented plaintiff and the proposed class with skill

26   and diligence in obtaining the settlement for the class, taking into account the possible outcomes

27   and risks of proceeding trial.  Moreover, given the nature of the work performed, the Court finds

28   the request for $361,666.66 to be fair, reasonable, and adequate

1      Based on the foregoing, the Court awards class counsel $361,666.66 in attorneys' fees and

2  costs.

3      **B.      Service Awards**

4      The district court must evaluate named plaintiffs' requested award using relevant factors

5  including "the actions the plaintiff has taken to protect the interests of the class, the degree to

6  which the class has benefitted from those actions . . . [and] the amount of time and effort the

7  plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977.  "Such awards are

8  discretionary . . . and are intended to compensate class representatives for work done on behalf of

9  the class, to make up for financial or reputational risk undertaken in bringing the action, and,

10 sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West*

11 *Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009).  The Ninth Circuit has emphasized that

12 district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the

13 adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163

14 (9th Cir. 2013).

15     Here, Class Counsel requests payment of $5,000 to plaintiff Bailey as a service award for

16 his participation and assistance in this lawsuit. The Court notes that Bailey was named plaintiff

17 from the onset of this litigation and devoted substantial time to litigating this action. While he does

18 not have standing to represent the injunctive relief class, his participation in this lawsuit was still

19 important to securing the relief obtained. He participated in discovery which assisted counsel in

20 development of the theory of the case.  Thus, the Court **GRANTS** the requested incentive award

21 payment for plaintiff Thomas Bailey.

22 **V.      CONCLUSION**

23     Based upon the foregoing, the motion for final approval of class settlement is **GRANTED**.

24 The motion for attorneys' fees, costs, and service awards is **GRANTED** as follows: Class Counsel is

25 awarded $361,666.66 in attorneys' fees and costs and plaintiff Thomas Bailey is awarded $5,000 as

26 an incentive award.

27     Without affecting the finality of this order in any way, the Court retains jurisdiction of all

28 matters relating to the interpretation, administration, implementation, effectuation, and enforcement

United States District Court
Northern District of California

10

of this order and the Settlement.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that final judgment is **ENTERED** in accordance with the terms of the settlement, the Preliminary Approval Order issued on June 15, 2022, and this Order.  This document will constitute a final judgment (and a separate document constituting the judgment) for purposes of Rule 58, Federal Rules of Civil Procedure.

This terminates Docket Nos. 171 and 173

**IT IS SO ORDERED.**

Dated: December 16, 2022

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California

# EXHIBIT A

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement") is entered into as of the date last signed below between and among Plaintiffs Thomas Bailey ("Bailey") and Jamal Erakat ("Erakat") (collectively "Plaintiffs"), and their counsel, Milberg Coleman Bryson Phillips Grossman LLC ("Milberg") and Simmons Hanly Conroy LLC (collectively "Plaintiffs' Attorneys") and Rite Aid Inc., ("Defendant" or "Rite Aid") and LNK International Inc. ("LNK") Rite Aid's supplier of the products in question.  Plaintiffs and Defendant and LNK are collectively referred to as the "Parties" or individually as a "Party."

### RECITALS

A.     On November 11, 2018, Plaintiffs filed a purported class action against Rite Aid Corporation which is currently captioned *Thomas Bailey v. Rite Aid Corporation* alleging that the marketing and sale of certain Rapid Release Gelcaps (the "Products") was false and misleading (the "Lawsuit").  The Complaint was amended on January 4, 2019.

B.     Shortly thereafter, Rite Aid requested and LNK agreed to indemnify Rite Aid with respect to the claims made in the Lawsuit.

C.     Defendant and LNK deny all of the allegations set forth in the Lawsuit that the sale and marketing of the Products was or is false or misleading in any way, and denies that Defendant is liable to Plaintiffs or any other putative class member for its marketing and sales of the Products and/or that the case can proceed as a class action.

D.     The Plaintiffs and Defendant have already filed, briefed, and argued a motion to certify a class, which the Court granted pursuant to Rule 23(b)(3) and denied without prejudice as to Rule 23(b)(2).  However, no class notice was issued in part because the Parties were interested in exploring settlement. The Parties have now agreed to enter into this Settlement Agreement to

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement") is entered into as of the date last signed below between and among Plaintiffs Thomas Bailey ("Bailey") and Jamal Erakat ("Erakat") (collectively "Plaintiffs"), and their counsel, Milberg Coleman Bryson Phillips Grossman LLC ("Milberg") and Simmons Hanly Conroy LLC (collectively "Plaintiffs' Attorneys") and Rite Aid Inc., ("Defendant" or "Rite Aid") and LNK International Inc. ("LNK") Rite Aid's supplier of the products in question. Plaintiffs and Defendant and LNK are collectively referred to as the "Parties" or individually as a "Party."

### RECITALS

A.     On November 11, 2018, Plaintiffs filed a purported class action against Rite Aid Corporation which is currently captioned *Thomas Bailey v. Rite Aid Corporation* alleging that the marketing and sale of certain Rapid Release Gelcaps (the "Products") was false and misleading (the "Lawsuit"). The Complaint was amended on January 4, 2019.

B.     Shortly thereafter, Rite Aid requested and LNK agreed to indemnify Rite Aid with respect to the claims made in the Lawsuit.

C.     Defendant and LNK deny all of the allegations set forth in the Lawsuit that the sale and marketing of the Products was or is false or misleading in any way, and denies that Defendant is liable to Plaintiffs or any other putative class member for its marketing and sales of the Products and/or that the case can proceed as a class action.

D.     The Plaintiffs and Defendant have already filed, briefed, and argued a motion to certify a class, which the Court granted pursuant to Rule 23(b)(3) and denied without prejudice as to Rule 23(b)(2). However, no class notice was issued in part because the Parties were interested in exploring settlement. The Parties have now agreed to enter into this Settlement Agreement to

avoid the further expense of litigation, and to be completely free of any claims and disputes regarding the Products.

D.      The Parties now desire to reach a settlement of all existing or potential claims or disputes between them relating to the Lawsuit and any matters relating to the Products, in accordance with the below terms.

<u>AGREEMENT</u>

NOW, THEREFORE, in consideration of the recitals and mutual promises contained in this Settlement Agreement, the receipt and adequacy of which are hereby acknowledged, the Parties agree as follows:

1.      <u>Recitals</u>.  The Recitals set forth above are expressly incorporated herein by reference as though fully set forth herein.

2.      <u>The Basic Settlement Terms</u>.  As explained in greater detail in the balance of this Settlement Agreement, in return for the payment of a portion of the attorneys' fees and expenses accrued in prosecuting the Lawsuit and Rite Aid's agreement to change the label on the Products, individual class representative Plaintiffs Bailey and Erakat agree to forego any claim for damages or other monetary relief, and agree to dismiss the Lawsuit with prejudice.

3.      Payment.  LNK, on behalf of Rite Aid, agrees to pay the total sum of Three Hundred Sixty - One Thousand One Hundred Sixty-Six Dollars and Sixty Six Cents ($361,666.66) (the "Payment") for full and complete resolution and release of the Lawsuit, including the conversion of the existing (b)(3) class into a (b)(2) settlement class. Following full and complete execution of the Settlement Agreement LNK shall make the Payment within seven (7) days of the  time that the Court (i) grants final approval to the Settlement,  converts, terminates and/or decertifies the  (b)(3) class pursuant to an

2

unopposed motion to be filed, and dismisses the case and (ii) the time for any appeal or petition for review or writ of certiorari has expired or, if an appeal or petition for review is taken and dismissed, or the Settlement is affirmed, the time period during which further petition for hearing, appeal, or writ of certiorari can be taken has expired, (the "Effective Date").For the avoidance of doubt, if any one of the listed components in this section 3 is not given final approval or is modified in any way, the Effective Date will not be reached and this Settlement Agreement will not be effective. LNK may make payment by CHECK to the address below:

MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN LLC
Mitchell Breit
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929

4.   <u>Label Change.</u>

(a)   Within three (3) months after the Effective Date, the unqualified term "Rapid Release" will not be included on the labeling on the front of the Products' packaging. Said modifications are hereby deemed acceptable and sufficient to Plaintiffs and Plaintiffs' Attorneys and are part of the consideration for this Settlement Agreement. Nothing in this Settlement Agreement shall prohibit or limit Rite Aid's right or ability to continue to compare its products to Tylenol Rapid Release Gels Active Ingredient or use or permit others to use, in accordance with all applicable laws and regulations, its licenses, logos, taglines, product descriptors, or registered trademarks. Nothing in this Settlement Agreement shall cause or be construed as requiring Rite Aid to initiate a recall of Products already in the stream of commerce. This Settlement Agreement does not prohibit Rite Aid or LNK from selling any remaining inventory of the Products with the prior labeling, and

the Parties contemplate and expressly agree that all remaining inventory of the Product with the prior labeling can be sold by Rite Aid and LNK pursuant to this Settlement Agreement.

(b)   If, after the expiration of the time period discussed in Paragraph 4(a) above, Plaintiffs or Plaintiffs' Attorneys believe that the labeling of the Products does not comply with the terms discussed in Paragraph 4(a), they shall provide Rite Aid with written notice of the specific facts and circumstances of any alleged noncompliance; Rite Aid will thereafter have ninety (90) days after notice to bring its practices in compliance with  Paragraph 4(a) and will not be deemed to be in breach of this Agreement if it does so within that ninety-day period.  If Rite Aid does not bring its practices in compliance within the ninety-day period, Plaintiffs retain the right to notify the Court in which this action is presently pending of their intention to reopen their claims for injunctive relief.

5.   <u>No Admission of Liability</u>.  The Parties acknowledge that Defendant and LNK deny any wrongdoing whatsoever in connection with their dealings with Plaintiffs or other consumers of the Products and that this Settlement Agreement is made solely for the purpose of compromising the Lawsuit and avoiding the time and expense of litigation and appeals.  It is expressly understood and agreed by the Parties that nothing contained in this Settlement Agreement shall constitute or be treated as an admission of any wrongdoing or liability on the part of Defendant or LNK.  The Settlement Agreement shall not be offered or received in evidence or requested in discovery in any action or proceeding as evidence of an admission or concession by Defendant or LNK.

6.   <u>Covenant Not To Sue</u>.

(a)   Plaintiffs agree that they and their agents, successors, assigns, personal representatives, heirs, executors, trustees, and administrators will forever refrain from

instituting, maintaining, collecting, proceeding, cooperating, or assisting in the prosecution against Rite Aid or LNK, or any of their respective parents, subsidiaries, or affiliates, and each of their respective agents, principles, officers, directors, members, shareholders, employees, former employees, representatives, attorneys, insurers, successors and assigns, and each of them, any claim, demand, action, cause of action, or liability arising out of or related to the Lawsuit and/or the Products, whether or not now known, suspected or claimed, which they have ever had, now have, or hereafter may have against any such entities or individuals.  In addition, Plaintiffs' Attorneys agree and hereby represent that they do not represent, nor have any knowledge of, any other potential claimant with claims similar to those at issue and released herein.

(b)    Plaintiffs also agree that unless requested to do so by Defendant or LNK, they will not testify or otherwise participate in any legal proceeding brought by others against Rite Aid or LNK, or any of their parents, subsidiaries, or affiliates, including any case in a court of law or before any administrative agency or arbitration panel, unless compelled to do so by subpoena or court order.  In the event Plaintiffs are subpoenaed or compelled to testify or otherwise participate in any legal proceeding against Defendant or LNK, they or their counsel will immediately provide a copy of the subpoena or notice to Defendant and LNK via Defendant's counsel of record in the Lawsuit, indicating the matter in which such subpoena or notice is issued.

7.    <u>Release</u>.  In consideration of the above referenced label change**,** the payment referenced in paragraph 2 above, and for the mutual avoidance of further costs, inconvenience, and uncertainties relating to this Lawsuit, Plaintiffs, on behalf of themselves and  the class, hereby release and forever discharge each of Rite Aid and LNK and all of their officers, directors, members, owners, partners, servants, agents, attorneys, employees, and other

representatives, including any parents, direct and indirect subsidiaries and/or affiliated entities ("collectively the Rite Aid/LNK Releasees"), from any and all injunctive relief claims with the exception of retention of the right set forth in Paragraph 4(b) to reopen their claims for injunctive relief if Rite Aid fails to comply with Paragraph 4(a). Plaintiffs likewise release and on behalf of themselves and their family members, predecessors, successors, heirs, assigns, related persons and other representatives any and all individual claims for damages against the Rite Aid/LNK Releasees (including liabilities, actions, causes of action, obligations, costs, attorneys' fees, damages, losses and demands of every character, nature, kind and source, whether legal, equitable or otherwise, which are or could be asserted related to the Lawsuit or the Products. This Release does not affect whatever rights the class members have to bring claims for monetary relief.

Rite Aid and LNK on behalf of themselves, and on behalf of their officers, directors, owners, partners, servants, agents, attorneys, employees, and other representatives, including any parents, subsidiaries and/or affiliated entities, hereby release and forever discharge Plaintiffs and their family members, predecessors, successors, heirs, assigns, related persons and other representatives, from any and all claims (including liabilities, actions, causes of action, obligations, costs, attorneys' fees, damages, losses and demands of every character, nature, kind and source, whether legal, equitable or otherwise) which are or could be asserted related to the Lawsuit or Products.

Finally,  for the consideration involved in resolving this case, Rite Aid and LNK release each other with respect to any claims (including liabilities, actions, causes of action, claims for indemnity, obligations, costs, attorneys' fees, damages, losses and demands of every character, nature, kind and source, whether legal, equitable or otherwise) they or their respective officers, directors, owners, partners, servants, agents, attorneys,

employees, and other representatives, including any parents, subsidiaries and/or affiliated entities may have regarding the Lawsuit or the labeling of the Products. Nothing in this Settlement Agreement modifies or amends LNK's indemnification obligations or the other terms contained in the supplier agreement, between Rite Aid and LNK.

Upon the Effective Date, Plaintiffs expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights, and benefits of § 1542 of the California Civil Code, which provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

Upon the Effective Date, the Lawsuit will be deemed dismissed with prejudice.

8.   Confidentiality.

(a)   The Parties and their counsel agree not to disclose, divulge, publish, or broadcast, or state to anyone, non-public information relating to the Lawsuit or the terms and conditions of or relating to this Settlement Agreement.  The Parties and their counsel agree not to use any information or work product generated in the course of preparing to commence the Lawsuit, including without limitation any and all drafts of pleadings or motions or factual or investigative research, for purposes of any matter adverse or potentially adverse to Defendant, other than to enforce this Agreement.

(b)   Notwithstanding Section 8(a) above, nothing herein shall prohibit or restrict the Parties and their counsel from informing their accountants or tax preparers and others for reasonable business purposes, of the terms of this Settlement Agreement, or, if required by law, disclosing to any governmental or regulatory authority the amount paid in settlement, provided that the Parties and their counsel advise their accountants or tax preparers of, and obtain assurances they will comply with, the confidentiality provisions of this Settlement

Agreement.  The Parties and their counsel may also disclose this Settlement Agreement and its terms for the purpose of enforcing this Settlement Agreement.

(c)    Nothing herein shall prohibit the Parties and their counsel or their counsel's counsel, from complying with a valid subpoena or court order, or any other legal process, requiring disclosure of material covered by the confidentiality provisions of this Settlement Agreement.  However, upon receiving such a subpoena, process, court order, or other legal process, the subpoenaed Party shall immediately give notice via counsel of record in the Lawsuit (identified in Section 10, below), and identify the matter in which such subpoena, process, court order, or other legal process is issued, identifying the subpoena, process, court order, or other legal process and the time in which production or disclosure is required so as to afford the Party the opportunity to obtain an order barring such production or disclosure.

(d)    Notwithstanding Sections 8(a) and 8(c) above, Defendant and LNK, in their discretion, may disclose the terms of this Settlement Agreement or anything else covered by the confidentiality provisions of this Settlement Agreement in the event a claim, demand, lawsuit or other legal claim or demand (hereinafter "Future Claim") is made or filed against them with respect to the Products to counsel and/or the party making the claim for the purpose of negotiating or attempting to negotiate a resolution of such Future Claim.

9.    <u>Representations and Warranties</u>.

(a)    Each person executing this Settlement Agreement warrants he or she has obtained the authority to so execute this Settlement Agreement.

(b)    Each Party has carefully read and reviewed this Settlement Agreement and understands it fully, and each Party specifically does not rely upon any statement, representation, legal or accounting opinion, or promise of any other Party or any person

representing such other Party in executing this Settlement Agreement or in making the settlement provided for herein, except as expressly stated in this Settlement Agreement.

(c)    Each Party has made such an investigation of the law and facts pertaining to this Settlement Agreement and of all matters pertaining hereto as it deems necessary.  Each Party has been represented by competent counsel of that Party's own choosing, which counsel has provided such Party with any and all advice on this Settlement Agreement as such counsel and such Party deem necessary or appropriate.  This Settlement Agreement has been carefully read by, the contents hereof are known and understood by, and is signed freely by, each Party executing this Settlement Agreement.

(d)    This Settlement Agreement is the result of arms' length negotiation between the Parties.

(e)    Each Party represents and warrants that he or it has not assigned to any third party any actual or potential claim or any portion of any actual or potential claim against any other Party to this Settlement Agreement.

(f)    Plaintiffs' Attorneys represent and warrant on behalf of themselves, and all others acting on their behalf, that they (a) have not been retained by any other individuals with claims against Rite Aid or LNK involving the Products; (b) are not aware of, nor been informed of, any other plaintiff, class, class member or attorney who intends to bring litigation against Rite Aid or LNK involving the Products; and (c) are not actively soliciting and will not actively solicit other persons to bring claims against Rite Aid or LNK involving the Products.  This Section is not intended, nor shall it be construed to, restrict Plaintiffs' Attorneys from practicing law.

9

10. <u>Notices</u>.  All notices under this Settlement Agreement shall be sent via email and overnight or hand delivery as follows (subject to the right of each Party to change this notice designation by written notice to the other):

To Plaintiffs:

Mitchell Breit
Milberg Coleman Bryson Phillips
Grossman LLC
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
MBreit@milberg.com

To Rite Aid or LNK:

Jay N. Varon
David A. Hickerson, Esq.
Foley & Lardner LLP
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C. 20007
JVaron@foley.com
DHickerson@foley.com

11. <u>Construction of Settlement Agreement</u>.  This Settlement Agreement shall be construed as a whole according to its fair meaning.  The language of this Settlement Agreement shall not be construed for or against any Party.  No provision of this Settlement Agreement shall be construed against any Party by virtue of the activities of that Party or such entities' attorneys.  The headings used in this Settlement Agreement are for reference only and shall not affect the construction of the Settlement Agreement.

12. <u>Integration</u>.  This Settlement Agreement constitutes a single integrated, written contract expressing the entire agreement of the Parties hereto relative to the subject matter hereof. No recitals, covenants, agreements, representations, or warranties of any kind whatsoever have been made or have been relied upon by any Party hereto, except as specifically set forth in this Settlement Agreement.  All prior discussions and negotiations have been or are merged and integrated into, and are superseded by, this Settlement Agreement.  There shall be no amendment, modification, or waiver of any provision of this Settlement Agreement except in a writing signed by each Party to be bound by such amendment, modification, or waiver.

13.  <u>Severability</u>.  The Parties hereto covenant and agree that in the event that any provision of this Settlement Agreement should be held by a court of competent jurisdiction to be void, voidable, illegal, or unenforceable in any respect, the remaining portions and provisions hereof shall nevertheless remain in full force and effect as if such void, voidable, illegal, or unenforceable provision had never been contained in this Settlement Agreement.

14.  <u>Governing Law And Conflict Resolution</u>.  This Settlement Agreement shall be construed in accordance with, and governed by, the laws of the State of California.  Venue for enforcement of this Settlement Agreement shall be in the federal or state courts located in the City, County, and State of California.

15.  <u>Execution in Counterparts</u>.  This Settlement Agreement may be executed and delivered in counterparts, each of which, including, but not limited to, pages transmitted by facsimile or e-mail, when so executed and delivered shall be deemed to be an original.

16.  <u>Costs and Expenses</u>.  Each Party is to bear its own costs and expenses incurred in connection with the Lawsuit, negotiation of settlement and this Settlement Agreement.

17.  <u>Damages</u>.  If a Party breaches the terms of this Settlement Agreement, the breaching Party shall be liable to the non-breaching and injured Party or Parties for actual damages, injunctive relief, attorney's fees and costs, and any other remedy and sanction as may be determined and imposed by a court.

18.  <u>Non-Disparagement</u>.  Plaintiffs agree that they will not at any time knowingly defame, disparage, or impugn the reputation of Rite Aid or LNK, or any of their parents, subsidiaries, or affiliates, and each of their respective agents, principles, officers, directors, members, shareholders, employees, former employees, representatives, attorneys, insurers, successors and assigns, or each of them.  "Disparage" as used in this Settlement Agreement means to make any statement, written or oral, that casts an entity or individual in a negative

11

light, or attributes any negative quality to the entity or its products or services.  Nothing in this Section affects the obligations of confidentiality set forth in Section 8, above.

19.   <u>Successors and Assigns</u>.  This Settlement Agreement shall be binding upon the heirs, executors, administrators, legal representatives, successors, and assigns of the respective Parties.

IN WITNESS WHEREOF, the Parties hereto each have approved and executed this Settlement Agreement effective as of the last date signed below.

I have read the foregoing agreement and understand its terms.  The CONFIDENTIAL SETTLEMENT AGREEMENT AND MUTUAL RELEASE consists of twelve (12) pages inclusive of the signature page.

**Thomas Bailey**                                      **Jamal Erakat**

_____          _____

Date: _____              Date:: _____

**Rite Aid Corporation**                            **LNK International,  Inc.**

_____          _____

By: _____                By: _____

Date: _____              Date: _____

_____

**APPROVED AS TO FORM AND CONTENT AND
CONFIDENTIALITY PROVISION AGREED TO BY:**

**Milberg Coleman Bryson Phillips Grossman     Foley & Lardner LLP
LLC**

By: _____                By: _____

12

Mitchell Breit                                    Jay N. Varon
Attorney for Plaintiffs                           .
                                                  Attorneys for Rite Aid Corporation and LNK
                                                  International Inc.


Simmons Hanly Conroy LLC.


By: _____
      Jason O. Barnes
      Attorney for Plaintiffs

13